**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

<table>
<tr><td>
ROBERT OLSZEWSKI JR and JULIE<br>OLSZEWSKI<br><br> <em>Plaintiffs,</em> <br>v.<br><br>BARRY HUTCHINS OF DOVER-<br>FOXCROFT IN HIS INDIVIDUAL<br>CAPACITY AND AS<br>FORMER SELECTMAN, and TOWN OF<br>DOVER-FOXCROFT<br><br> <em>Defendants.</em>
</td>
<td>
Case number: 1:24-cv-00209-LEW
</td></tr>
</table>

<u>**DEFENDANTS' MOTION TO DISMISS**</u>
<u>**WITH INCORPORATED MEMORANDUM OF LAW**</u>

Defendants Barry Hutchins ("Mr. Hutchins") and the Town of Dover-Foxcroft (the "Town"), (collectively, "Defendants"), move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' First Amended Complaint (ECF Doc. 5) (the "FAC"). The reason for this motion, as set forth more fully below in the incorporated memorandum of law, is that the FAC fails to state a claim upon which relief may be granted and it should therefore be dismissed.

<u>**INCORPORATED MEMORANDUM OF LAW**</u>

<u>**INTRODUCTION**</u>

This case arises out of Plaintiff Robert Olzewski's belief that Mr. Hutchins, a former Select Board member, and the Town have wronged him because he has spoken out about Town issues and because he is disabled. In an attempt to remedy those perceived wrongs, Mr. Olzewski filed a complaint that includes everything but the kitchen sink. While daunting to file a motion to

dismiss on such a complaint, after sifting through the factual allegations they are simply insufficient, and do not allow for the plausible inferences necessary, to state claims for relief.

## FACTS

The FAC alleges the following facts, which must be taken as true for the purposes of this motion. Mr. Olzewski is an individual with disabilities. FAC ¶ 10. Mr. Olzewski's "mental disability symptoms" include, among other things, "the inability to converse and communicate in real time" and "heightened irritability, frustration, and agitation." FAC ¶ 10. He often copes with his disability by recording conversations for the purpose of listening to and making sense of them later. FAC ¶ 10. The Town and Mr. Hutchins were on notice of Mr. Olzewski's disability at all times relevant to the complaint. FAC ¶¶ 11, 13.

On March 19, 2022, Mr. Hutchins communicated to Town officials that Mr. Olzewski was "unstable and clearly showing himself has a threat, a danger and threat to the community." FAC ¶ 15. At a Select Board meeting on April 11, 2022, Mr. Olzewski shared information related to the roads, and during the meeting, Mr. Hutchins stated that Mr. Olzewski had sent him harassing and aggressive emails and offered to share the emails. FAC ¶ 18. On April 13, 2022, Mr. Olzewski sent Mr. Hutchins a Freedom of Access Act ("FOAA") request and also sent the Town Clerk a FOAA request. FAC ¶ 19. According to Mr. Olzewski, Mr. Hutchins "responded by threats to have Plaintiff jailed and subsequently taking action attempting to have the Plaintiff jailed." FAC ¶ 20. Thereafter, Mr. Hutchins's informed Mr. Olzewski: "If you choose to come at me aggressively, you will get it right back" and stated "[f]or the last time Sir[,] Do not send me another means of communications . . . ." FAC ¶ 24.

On April 27, 2022, Mr. Olzewski petitioned the Select Board to ask Mr. Hutchins to resign. FAC ¶ 27. Again, according to Mr. Olzewski, at the end of the meeting, Mr. Hutchins

"moved from his chair and toward Plaintiff" in an aggressive manner. FAC ¶ 27. On May 9, 2022, at a Select Board meeting, Mr. Olzewski asked Mr. Hutchins for an apology and the Board indicated that it did not have authority to take any action against Mr. Hutchins. FAC ¶ 28. According to Mr. Olzewski, Mr. Hutchins then tried to provoke him in the parking lot. FAC ¶ 29. On June 10, 2022, Mr. Hutchins communicated with Mr. Olzewski in writing, which communications Mr. Olzewski alleges targeted his disabilities. FAC ¶¶ 32-33. On June 11, 2022, Mr. Hutchins contacted Mr. Olzewski on Facebook and Mr. Olzewski complained to Police Officer Ober that it was disability abuse and the Officer did an investigation. FAC ¶¶ 34-35, 38.

On June 6, 2022, Mr. Olzewski referred the Dover Foxcroft Select Board to several issues including, among other things, the roads and government expenditures, FAC ¶ 53, but later retreated from attending Select Board meetings, FAC ¶ 55. Also, in June 2022, both Mr. Olzewski and Mr. Hutchins petitioned the Dover Foxcroft District Court for protection from harassment orders against the other, and each was granted a protection from harassment order against the other. FAC ¶¶ 39-42. The protection from harassment order for Mr. Hutchins against Mr. Olzewski indicated that the Dover-Foxcroft Town Office was Mr. Hutchins's place of employment. FAC ¶ 44. Through the protection from harassment order, "the court imposed a no contact provision, which legally barred Plaintiff from attending meetings of the Select Board or going to the Town Office at all during the time period of the harassment order." FAC ¶ 45. "While Plaintiff was not allowed in the Town Office because of this order, [t]he Town made no provision for Plaintiff to conduct Town [O]ffice business, vote in elections, or attend Town Select Board meetings." FAC ¶ 45.

On December 13, 2022, Mr. Olzewski "went to the Town Office and discussed, with Police Chief Grant, the court's order, and whether he could legally attend the upcoming

controversial Select Board meeting," which he wanted to attend because it was about the Town's recently posted no recording sign on the Town Office's front door. FAC ¶ 47. In March 2023, Mr. Hutchins attempted to pursue a contempt charge against Mr. Olzewski for being in the Town Office on December 13, 2024. FAC ¶ 50.

After the protection from harassment order ended, Mr. Olzewski resumed attending Select Board meetings. FAC ¶ 56. On October 23, 2023, Mr. Olzewski attended the Select Board meeting and was limited to five minutes during the public comment period pursuant to the Town's five-minute speaking rule. FAC ¶ 56. At that meeting, one of the Select Board members stated that Mr. Olzewski was threatening her and she would sue him. FAC ¶ 56. Mr. Olzewski claims he then retreated from attending Select Board meetings. FAC ¶ 56.

The Town has disallowed private audio and video recording of Town business in the Town Office, FAC ¶ 58, and the Town has not adopted a remote meeting policy, FAC ¶ 59.

## ARGUMENT

### I.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The court conducts a two-step analysis test to evaluate the sufficiency of a complaint. *Guadalupe-Báez v. Pesquera,* 819 F.3d 509, 514 (1st Cir. 2016). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quoting *Morales-Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

4

(quoting *Morales-Cruz,* 676 F.3d at 224). "This plausibility standard is 'not akin to a

"probability requirement"' but it 'demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.,* 4 F.4th 63, 70 (1st

Cir. 2021) (quoting *Iqbal,* 556 U.S. at 678). "'If the factual allegations in the complaint are too

meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture,' dismissal is proper." *Alston v. Spiegel,* 988 F.3d 564, 571 (1st Cir. 2021) (quoting

*SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010)). In evaluating the sufficiency of the

complaint, the Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678).

## II. Plaintiffs Have Failed to Adequately Plead a Claim Under 42 U.S.C. § 1983 (Count I) and a Constitutional Violation (Count II)[1]

Plaintiffs have failed to adequately plead a section 1983 claim against the Town and Mr.

Hutchins. "Section 1983 establishes a civil cause of action for the deprivation of constitutional

rights." *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014). "In order to prevail

on a § 1983 claim, a plaintiff must demonstrate: '(i) that the conduct complained of has been

committed under color of state law, and (ii) that the alleged conduct worked a denial of rights

secured by the Constitution or laws of the United States.'" *Id.* (quoting *Cepero–Rivera v.

Fagundo,* 414 F.3d 124, 129 (1st Cir.2005)). Thus, section 1983 serves as a "method for

vindicating federal rights elsewhere conferred by those parts of the United States Constitution

and the federal statutes that it describes," but does not in and of itself create a substantive right.

---

[1] The Plaintiffs in the FAC are Robert Olzewski, Jr., and his wife, Julie Olzewski. Each Count of the FAC appears to be brought by both Plaintiffs; however, there are not any factual allegations about Ms. Olzewski in the FAC that would support any claims on her behalf. The only references to Ms. Olzewski in the FAC are entirely conclusory. FAC ¶¶ 65, 101, and the prayers for relief for each Count. Because there are no facts that state a plausible claim for relief for Ms. Olzewski, all of her claims against Defendants must be dismissed at the outset. *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570. Separately, because Section 1983 is a mechanism for bringing a constitutional violation and not a standalone claim, this motion addresses dismissal of Counts I and II of the FAC together in this section.

*Baker v. McCollan*, 443, U.S. 137, 145 (1979). A plaintiff bringing a section 1983 claim must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The law is well settled that an entity cannot be held vicariously liable under section 1983 for its employees' actions; it can only be held responsible for its own acts. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick,* 563 U.S. at 60 (quoting *Monell,* 436 U.S. at 691). In other words, "the plaintiff must prove a constitutional violation resulting from a 'policy statement, ordinance, regulation or decision officially adopted and promulgated by' those in charge of the [Town]." *Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005) (quoting *Monnell*, 436 U.S. at 690). While it is true that "[a] custom or practice may suffice to show such a policy if it is so widespread or pervasive that the policymakers must have had actual or constructive notice of it, yet did nothing to modify it," it is also true that "a section 1983 plaintiff ordinarily must show that the [municipality], 'through its deliberate conduct . . . was the moving force behind the alleged injury.'" *Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).[2]

> *i. Plaintiffs' have not sufficiently pled a constitutional violation.*

In this case, Mr. Olzewski alleges that Defendants violated his First and Fourteenth Amendment rights under the United States Constitution and, specifically, his rights to freedom of

---

[2] A municipality can also be liable for a deprivation of rights on a failure to train theory if the failure amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (internal citations omitted). The FAC does not contain any allegations of a failure to train and, thus, such a failure cannot serve as the basis for municipal liability in this case.

expression and freedom to petition. FAC ¶¶ 65, 70-71.[3]

       To establish a plausible claim for a First Amendment violation, Plaintiffs must allege facts that show: (1) they engaged in a constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) their protected activity was a substantial factor in the Defendants' conduct. *See Currier v. Town of Gilmanton,* 621 F. Supp. 3d 233, 259 (D.N.H.) (quoting *D.B. ex rel. Elizabeth B. v. Esposito,* 675 F.3d 26, 43 (1st Cir. 2012)); *see also Goldstein v. Galvin,* 719 F.3d 16, 30 (1st Cir. 2013). As the United States Supreme Court recently observed, "[a]t the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). With respect to government officials, "[a] government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead. . . . What she cannot do, however, is use the power of the State to punish or suppress disfavored expression." *Id.* (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995) (explaining that governmental actions seeking to suppress a speaker's particular views are presumptively unconstitutional)).

       In the instant case, aside from one conclusory allegation (FAC ¶ 63 ("due to the content of Plaintiff's speech and petitioning activity")), there are no factual allegations that the Defendants took any action against Mr. Olzewski because of a particular viewpoint he expressed. Instead, he alleges that he raised run-of-the-mill issues, such as road conditions, lead remediation, and government expenditures, FAC ¶¶ 11, 13, 18, 69, and there are no allegations to

---

[3] Where the allegations in the FAC refer specifically to a violation of Mr. Olzewski's rights to freedom of expression and to petition, it appears that the reference to his Fourteenth Amendment rights is simply because the Fourteenth Amendment adopted and applied the First Amendment to the states. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964).

support a plausible inference that the Defendants took any action to suppress his particular viewpoint on any of these issues.

The other allegations that he relies upon relate to his supposed FOAA request to Mr. Hutchins, FAC ¶¶ 63, 69, which presumably goes to his freedom to petition claim. After Mr. Hutchins "accused Plaintiff of sending harassing and aggressive emails," Mr. Olzewski sent Mr. Hutchins a request for the harassing and aggressive emails. FAC ¶¶ 18-19. Mr. Olzewski alleges that Mr. Hutchins threatened to have him jailed, FAC ¶ 20, and sent him an email warning "If you choose to come at me aggressively, you will get it right back . . . For the time Sir[,] Do not send me another means of communication or I will pursue criminal charges against you," FAC ¶ 24. These allegations make clear that this was a situation where Mr. Hutchins was protecting himself and his actions did not prevent Mr. Olzewski from petitioning the Town. Indeed, under FOAA, a request is properly made to the Town's Freedom of Access Officer who then coordinates the response. 1 M.R.S. §§ 402(5), 413(1).

Contrary to what the Plaintiffs may think, the law does not require that a member of the public have unlimited access to Town government, or any particular person in Town government. This concept was explained in *Roussel v. Mayo*, No. 1:22-CV-00285-JAW, 2022 WL 17338877, at *3 (D. Me. Nov. 30, 2022): "Plaintiff does not assert that Defendants imposed any restrictions on his ability to correspond with government officials by alternate means, including at other physical locations or through regular or electronic mail. Without additional facts, therefore, there is no basis to conclude that the loss of physical access to one particular property (evidently in a different town than Plaintiff's residence) constitutes an infringement on Plaintiff's First Amendment rights.") (quoting *Myers v. Loudoun Cnty. Sch. Bd.*, 500 F. Supp. 2d 539, 546-47 (E.D. Va. 2007)). The *Myers* court further explained that "[t]he First Amendment

guarantees the right of the people to petition the government for a redress of grievances. …
However, the right to communicate is not limitless, and does not grant unlimited access to
government officials." *Myers*, 500 F. Supp. at 546 (internal citations omitted).

To the extent the freedom to petition claim is based on the protection from harassment
order, the Court should take judicial notice of the order dated September 1, 2022 from the Dover
Foxcroft District Court, Docket No. DOV-DC-PA-2022-39. *See, e.g.*, *Hamilton v. Fed. Home
Loan Mortgage Corp.*, No. 2:13-cv-00414-JAW, 2014 WL 12726327, at *1 (D. Me. July 30,
2014); *Parente v. Town of West Warwick*, 868 F.2d 522, 523 (1st Cir. 1989); Fed. R. Evid.
201(b). The order shows that the Plaintiff was Barry Hutchins—not Barry Hutchins on behalf of
the Town or Barry Hutchins in his capacity as a Select Person—and that Mr. Olzewski was
"restrained from, repeatedly and without reasonable cause, being at or in the vicinity of the
plaintiff's home, school, business, or place of employment . . . ." There is nothing in the order
that, for its one-year duration, prevented Mr. Olzewski from being in the Town offices with
reasonable cause or from exercising his First Amendment rights in a variety of ways other such
as writing letters, publishing articles, or calling Town officials or select board members other
than Mr. Hutchins. Moreover, public officials have the right to seek redress in the court system
and, where as in this case, the Dover Foxcroft District Court had a full hearing on the merits and
awarded the protection order, it would subvert justice to allow Mr. Olzewski to use a lawfully
issued court order as the basis for a claim against the Defendants.

Finally, while the FAC includes conclusory allegations that Mr. Olzewski retreated from
his engagement in Town affairs, the alleged facts show that he remained steadily involved in
Town affairs, including speaking out on different topics and attending meetings. For these

reasons, Plaintiffs have failed to adequately allege a First Amendment violation and, thus, cannot prevail on a section 1983 claim.

      *ii. Plaintiffs have failed to plead municipal liability under section 1983.*

Even if Plaintiffs adequately alleged a violation of Mr. Olzewski's First Amendment rights, they have not sufficiently pled municipal liability under section 1983. As set forth above, a municipality is only liable for the conduct of its employees if the conduct was pursuant to an official policy or a result of a failure to train. *See Connick,* 563 U.S. at 60 (2011) (quoting *Monell,* 436 U.S. at 691). As this Court recently explained, "[a] municipal entity cannot be held liable for a constitutional harm inflicted by its employee absent a showing that the harmful conduct of the employee occurred as the result of a municipal policy or custom." *Tait v. Lake Region Sch. Dist. (M.S.A.D. #61)*, No. 2:23-CV-00329-LEW, 2024 WL 3691673, at *5 (D. Me. Aug. 7, 2024). It is also true that "a section 1983 plaintiff ordinarily must show that the [municipality], 'through its deliberate conduct . . . was the moving force behind the alleged injury.'" *Surprenant*, 424 F.3d at 19 (quoting *Bd. of County Comm'rs*, 520 U.S. at 404).

      The conduct at issue in this case is primarily Mr. Hutchins's conduct and then there are a handful of other allegations involving the Police Department and two other members of the Select Board. What is missing from the FAC is any allegations that Mr. Hutchins's conduct or the conduct of others was done pursuant to a policy or custom of the Town. The allegations against Mr. Hutchins reduce to a couple of emails, a parking lot encounter, comments at a public meeting, and a protection from harassment order, all of which consist of Mr. Hutchins asking Mr. Olzewski to essentially leave him alone and in no way implicate official Town policy. *See, e.g.*, FAC ¶¶ 24, 32, 42. Consistent with this, Mr. Olzewski alleges that another Select Board member told him that the Select Board did not have authority to take action against Mr. Hutchins

for his conduct. FAC ¶ 28. Additionally, the allegations do not establish that Mr. Hutchins was himself, outside of the Select Board, an official with final authority to establish municipal policy or custom. The same is true for the allegations relating to the police department—that the police department looked into both Mr. Hutchins's and Mr. Olzewski's concerns when raised, and that another member of the Select Board told Mr. Olzewski that he was threatening her and that she would take action against him—does not plausibly allege violations pursuant to official policy or custom. *See, e.g.*, FAC ¶¶ 12, 30, 36, 38, 47, 56. Absent a basis for municipal liability, the section 1983 claim must be dismissed against the Town.

> *iii. Mr. Hutchins is entitled to qualified immunity.*

Even if this Court were to hold that Mr. Olzewski adequately pled a constitutional violation under section 1983, Mr. Hutchins is entitled to dismissal because he is protected by qualified immunity. Qualified immunity is an issue that should be resolved at the earliest possible stage of a case. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001). It "provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldano v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). A constitutional right is clearly established if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct. *Taylor v. Barkes,* 575 U.S. 822, 135 (2015).

While it is true that citizens have First Amendment rights to freedom of expression and freedom to petition, not every reasonable public official would have understood that sending two pointed emails, warning about future legal action, or seeking and obtaining a protection from

harassment order against a constituent, would violate a constituent's First Amendment rights, especially where Mr. Olzewski had access to all other Town officials. Here, Mr. Hutchins did not criticize particular beliefs or suppress particular viewpoints; instead, he was opposed particular conduct that rose to the level of harassment under Maine law. No reasonable public official would expect that standing up for himself, and pursuing his rights in court on a demonstrably meritorious claim, would result in a constitutional violation. More and more public officials are finding themselves under attack and their rights must be balanced with their constituents' rights.

For all of these reasons Plaintiffs' section 1983 and constitutional violation claims should be dismissed for failure to state a claim.

### III.    Plaintiffs Have Failed to State a Claim for Disability Discrimination or Retaliation under the Maine Human Rights Act (Counts III, IV, and V)

As an initial matter, the Maine Human Rights Act ("MHRA") claims in Counts III, IV, and V must be dismissed as to Mr. Hutchins because individuals are not subject to suit under the MHRA. *Quiron v. L.N. Violette Co. Inc.*, 897 F. Supp. 18, 21 (D. Me. 1995); *Lerman v. Mt. Sinai Cemetery Ass'n, Inc.*, No. CIV.A. 99-613, 2001 WL 1711516, at *9 (Me. Super. Feb. 28, 2001). As set forth below, these claims must also be dismissed as to the Town because Plaintiff has failed to adequately plead a claim under the MHRA.

> i.    The FAC does not state a claim for failure to provide accommodations or auxiliary aids in a place of public accommodation.

Count III alleges disability discrimination in public accommodations pursuant to 5 M.R.S. § 4591, which requires equal access to places of public accommodations, and pursuant to 5 M.R.S. § 4592, which prohibits unlawful public accommodations discrimination.[4] To state a

---

[4] Count IV alleges disability discrimination in the form of harassment in violation of the Maine Human Rights Act based on 5 M.R.S. § 4553. Section 4553 is the definitions section of the Maine Human Rights Act. To the extent that Plaintiffs want to pursue discrimination claims under the MHRA, such claims are brought in Count III as public

claim for public accommodations discrimination, a plaintiff must allege that: "(1) the party charged is 'the owner, lessee, proprietor, manager, superintendent, agent or employee' of a place of public accommodation who (2) refuses or withholds to any person, on account of … physical or mental disability' (3) 'any of the accommodations, advantages, facilities or privileges of public accommodation.'" *Maine Hum. Rts. Comm'n v. Le Club Calumet*, 609 A.2d 285, 286 (Me. 1992) (quoting 5 M.R.S. § 4592). Here, there are no allegations that the Town excluded Mr. Olzewski from any of the accommodations, advantages, facilities or privileges of the Town offices because of his physical or mental disability. The only time he was arguably excluded from the Town offices was during the duration of the protection from harassment order, which was not an exclusion the Town itself imposed nor was it because of Mr. Olzewski's disability.

Relatedly, to establish a denial of reasonable accommodation or modification by a public accommodation, a plaintiff must show that he: (1) has a disability within the meaning of the MHRA; (2) the defendant operates a place of public accommodation under the MHRA; (3) the defendant has in effect a policy, practice or procedure that, because of plaintiff's disability, results in plaintiff's inability to access defendant's services, facilities, privileges, advantages, or accommodations; (4) plaintiff requested a reasonable modification to the policy, practice or procedure which, if granted, would have afforded plaintiff access; (5) the requested modification was necessary to afford access; and (6) defendant nonetheless refused to modify the policy, practice or procedure. *See* 5 M.R.S. § 4592(1) & 1(c); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003). As referenced above, a place of public accommodation is only required to provide a reasonable accommodation if the plaintiff requests one. *See also Reed v. Lepage*

---

accommodations discrimination claims under 5 M.R.S. §§ 4591, 4592. Therefore, Count IV is not a standalone claim and should be dismissed.

*Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (holding in analogous employment context that a defendant is only required to provide a reasonable accommodation if the plaintiff requests one.)

Nowhere in the complaint does Mr. Olzewski allege that he ever requested disability aids or accommodations from the Town. Instead, he alleges that the Town and Mr. Hutchins should have known to provide him with aids or services. FAC ¶¶ 13, 76, 79. The fact that he never requested an accommodation from the Town, is fatal to his failure to accommodate claim.

Moreover, the FAC fails to allege that the requested accommodation was necessary to afford access.  Plaintiff acknowledges that "Plaintiff's mental disability symptoms … cause plaintiff to become agitated and unable to constructively process and engage" with Town officials. FAC ¶ 77. However, even if he had requested an accommodation, the allegations do not support a plausible inference that, for example, being allowed to record Town meetings or participate remotely would have afforded Mr. Olzewski access, or that such an accommodation was necessary for him to receive equal access. This is because he continued to engage with Town officials and attend public meetings without having requested or received an accommodation. For example, the FAC alleges that the no recording policy went into effect in or after December 2022 and, once the protection from harassment order expired, he resumed attendance at the Select Board meetings. FAC ¶¶ 47, 56. For all of these reasons, Count III must be dismissed.

ii.    *Plaintiffs Have Failed to State a Claim for Retaliation under the MHRA*

Count V alleges retaliation in violation of the Maine Human Rights Act pursuant to 5 M.R.S. § 4633. Section 4633 provides that "[a] person may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under this Act

14

or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Act."

The only allegation in the complaint relating to protected activity under the MHRA is that Plaintiff filed a complaint with the Maine Human Rights Commission that was served on the Town on March 6, 2023. FAC ¶ 49. The FAC alleges two incidents that occurred after that date, neither of which amounts to discrimination or retaliation. Mr. Olzewski alleges that Mr. Hutchins and the Dover Foxcroft Police Chief conspired "in an attempt to renew criminal charges against Plaintiff," FAC ¶¶ 50-52, yet there is no allegation that criminal charges were actually filed. Similarly, Plaintiff alleges that Mr. Hutchins's decision to pursue a contempt motion in connection with his protection from harassment order constituted retaliation for the MHRC complaint. FAC ¶ 57. Where Plaintiff admits to being at the Town office when the protection from harassment order was in effect, Mr. Hutchins's decision to pursue contempt was not frivolous and should not be viewed as retaliatory. The other incident occurred on March 23, 2023 during a Select Board meeting at which Mr. Olzewksi was asked to abide by the five minute public comment rule. FAC ¶ 56. Thereafter, he alleges that a Select Board member, other than Mr. Hutchins, said Plaintiff was threatening her and that she would sue him. FAC ¶ 56. This allegation is simply not enough to state a claim for retaliation under the MHRA. Accordingly, the claim for retaliation under the MHRA should be dismissed.

## IV.    The Tort Claims for Intentional Infliction of Emotional Distress (Count VI), Negligent Infliction of Emotional District (Count VII), and for Defamation and Invasion of Privacy (Count VIII) Fail to State a Viable Claim

The Town is immune from liability for the alleged tort claims. The Maine Tort Claims Act ("MTCA") provides a broad grant of governmental immunity from tort claims. "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on

15

any and all tort claims seeking recovery of damages. 14 M.R.S. § 8103(1); *see also Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 8, 145 A.3d 1030. The MTCA provides four limited exceptions to the general grant of immunity where the governmental entity is negligent in: (1) the ownership, maintenance, or use of vehicles, machinery and equipment; (2) the construction, operation, or maintenance of a public building or the appurtenances to a public building; (3) the discharge of pollutants; and (4) the construction or repair of a road. 14 M.R.S. § 8104-A. Additionally, if a governmental entity has insurance in an area where it is otherwise immune, it creates an exception to immunity. 14 M.R.S. § 8116. The exceptions to immunity are strictly construed. *Lightfoot v. Sch. Admin. Dist. No.35,* 2003 ME 24, ¶ 7, 816 A.2d 63; *Thompson v. Dep't of Inland Fisheries and Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674. Plaintiff has not alleged any facts implicating any one of these exceptions to immunity and none of the MTCA's exceptions are applicable in this case. Accordingly, Counts VI, VII, and VIII must be dismissed as to the Town.

Additionally, under the MTCA, a plaintiff must file a written notice of claim setting forth specific information related to the alleged tort within 365 days after any claim or cause of action accrues. 14 M.R.S. § 8107(1). The FAC states "Plaintiff also sent Notics [sic] of Tort Claim to Hutchins and the Town of Dover-Foxcroft." FAC ¶ 49. The FAC does not allege any facts to establish that the notices were sent in accordance with the time or substance requirements of section 8107(1). Failure to plead compliance with the Maine Tort Claims Act is a valid grounds for dismissal of a tort claim. *See, e.g.*, *Porter v. Phibrick-Gates*, 2000 ME 35 ¶ 4, 745 A.2d 996. For this reason, the Counts VI, VII, and VIII must also be dismissed as to the Town and Mr. Hutchins.

16

To the extent that the Court does not dismiss the tort claims based on failure to plead compliance with the MTCA, the tort claims against Mr. Hutchins must be dismissed for failure to plead facts sufficient to state a claim for relief.

To state a claim for negligent infliction of emotional distress, the plaintiff must first prove that the defendant violated a duty of care owed to the plaintiff. *LaMarche v. Metro. Life Ins. Co.*, No. CIV. 01-123-BS, 2002 WL 989479, at *2 (D. Me. May 14, 2002). Maine recognizes a duty of care in three instances: bystander liability, special relationship, and when the actor has committed another tort. *Id.* (citing *Curtis v. Porter*, 784 A.2d at 25-26). A duty would only arise in this case if Mr. Hutchins committed another tort.

Thus, in Count VIII, Plaintiffs allege Defendants committed the torts of defamation and invasion of privacy. To state a defamation claim, plaintiff must allege: (1) Defendants made a false statement about Plaintiff; (2) that was published to a third person; (3) the Defendants knew the statement was false or made the statement with reckless disregard for whether it was false; and (4) publication of the false statement caused specific harm to the Plaintiff. *Ballard v. Wagner*, 2005 ME 86, ¶ 10; *Schoff v. York County*, 2000 ME 205, ¶ 9. The defamation claim appears to arise out of Mr. Hutchins's March 19, 2022 email to Town officials, including the Police Chief, Select Persons, Town Manager, and Town Clerk, that Mr. Olzewski was "unstable and clearly showing himself as a threat, a danger and threat to the community." FAC ¶ 15. There are no allegations to support that these statements were false (other than a conclusory allegation stating as much), that it was published outside of Defendants, that Mr. Hutchins's knew the statement was false or made it with reckless disregard, or that it caused specific harm to Mr. Olzewski. Instead, there are allegations in the FAC that suggest the statement was not made with reckless disregard but was made based upon Mr. Olzewski's conduct which he describes as

17

including "heightened irritability, frustration, agitation when interacting in certain situations . . . ." FAC ¶ 10. Mr. Olzewski himself alleges that Mr. Hutchins, "at all material times hereto, has in his electronic mail and internet activities, expressed his opinions" and that the Town was aware of Mr. Hutchins's "expression of opinions." FAC ¶¶ 6-7. The allegations that these were opinions is fatal to the defamation claim.

Count VII also alleges the tort of invasion of privacy based on the same March 19, 2022 email. To state a claim for invasion of privacy, a plaintiff must allege: (1) Defendants publicized a matter concerning Plaintiff; (2) it placed Plaintiff before the public in a false light that would be highly offensive to a reasonable person; and (3) Defendants knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed. *Cole v. Chandler*, 2000 ME 104, ¶ 17. Mr. Hutchins's email to Town officials about his safety concerns relating to Mr. Olzewski was arguably not published and, in any event, there is no plausible inference that such a concern shared with Town officials would be highly offensive to a reasonable person or was made with reckless disregard. Because Plaintiff cannot state a claim for defamation or invasion of privacy, he cannot establish a duty and, thus, his negligent infliction of emotional distress claim must fail. *See Supra*, p. 17.

Finally, Plaintiff cannot establish a claim for intentional infliction of emotional distress. To state such a claim, the plaintiff must adequately allege that: (1) Mr. Hutchins engaged in conduct that intentionally or recklessly causes severe emotional distress; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered severe emotional distress as a result of defendant's conduct. *Lyman v. Huber*, 2010 ME 139, ¶ 16 (citing *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18). "The determination of whether the facts alleged are sufficient to

establish that the defendant's conduct is 'so extreme and outrageous to permit recovery' is a question of law for the court to decide." *Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842).

This claim is based on Mr. Hutchin's March 19, 2022 email to Town officials expressing his safety concerns about Mr. Olzewski, FAC ¶ 94, and his June 10, 2022 email to Mr. Olzewski about getting into Mr. Olzewski's head, FAC ¶¶ 32-33, 93. These two emails are insufficient as a matter of law to meet the requirements of an intentional infliction of emotional distress claim. *See, e.g.*, *Argereow*, 2018 ME 140, ¶ 27, 195 A.3d 1210 (citing *Lyman v. Huber,* 2010 ME 139, ¶¶ 19, 24-26, 10 A.3d 707 for the proposition that "the 'serious' emotional distress resulting from fifteen years of emotional abuse inflicted by a domestic partner is not sufficient for a claim for intentional infliction of emotional distress"). For these reasons, the tort claims must be dismissed.

## V.     Plaintiffs' Request for a Preliminary Injunction Should be Denied

Plaintiffs made a preliminary injunction request as part of their FAC and stated that a supporting affidavit would follow in due course. FAC ¶¶ 108-113. Based on the FAC, and without a motion establishing the four elements necessary for a preliminary injunction or a supporting affidavit, the request for preliminary injunction must be denied. *See* Fed. R. Civ. P. 65; *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015) (setting forth the elements that must be satisfied for a preliminary injunction to issue).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Barry Hutchins and the Town of Dover-Foxcroft respectfully request that this Court dismiss Plaintiffs' Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.

DATED at Portland, Maine this 2nd day of October, 2024.

*/s/ Jeana M. McCormick*

Jeana M. McCormick, Esq.
*Attorney for Defendants*
*Barry Hutchins and Town of Dover Foxcroft*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, Maine 04101
Tel. 207-772-1941
jmccormick@dwmlaw.com