IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Case number: 24-cv-00209-LEW

| | |
|---|---|
| ROBERT OLSZEWSKI ) | |
| JULIE OLSZEWSKI ) | |
| Plaintiffs ) | PLAINTIFFS' OPPOSITION TO |
| ) | DEFENDANTS' |
| V ) | MOTION TO DISMISS |
| ) | |
| BARRY HUTCHINS et al ) | |
| Defendants ) | |

NOW COME ROBERT OLSZEWSKI JR AND JULIE OLSZEWSKI, through counsel, and respond in opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (hereinafter "Motion") as follows:

Defendants state that Plaintiffs' First Amended Complaint (hereinafter "Am. Complaint") should be dismissed for failure to state a claim upon which relief may be granted (Motion 1) Defendant has not, however, established that Plaintiffs are entitled to no relief under any set of facts that might be proven in support of their claims. *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996). Further, Plaintiffs' averments present a sufficient complaint as a matter of law and legal principles applied. *Sargent v. Buckley*, 1997 ME 159, P10, 697 A.2d 1272, 1275.

Defendants state in their Motion that the case arises out of *a mere belief,* held by Plaintiff Olszewski, regarding the Defendants' motivations (Motion 1.) Plaintiffs' averments of fact, however, go far beyond a statement of belief. The Amended

Complaint presents both direct and circumstantial evidence, which if assumed as true, states, plausibly, that the Town Government, by it's supervisory policy making agents, the Select Board, engaged in a campaign of wanton disability discrimination harassment against Plaintiff resulting in the Plaintiff's being denied the right to civic engagement, such as conducting business in the Town Office, voting, and the attendance of Select Board meetings. (Am. Complaint ¶¶ 8-59.) Plaintiff's ability to attend was not only "cooled" due to Plaintiff's fear of the harassment, but The Town Government managed, through false and inaccurate representations to the Court, to get an order against Plaintiff which the Town used to deny Plaintiff's constitutionally protected rights to civic interactions. (Am. Complaint ¶¶41-46.) The conduct of the Town Government and its Officers against Plaintiff Olszewski was in direct retaliation for his petitions and civic action. The civic actions and petitions in question were hardly "run of the mill" as Defendants contend (Motion page 7) but were expertly presented and drew attention to and criticized the competency, integrity and lawfulness of the Select Board's supervision and management of Town business and services. The issues included, but were not limited to misappropriation of Town funds (Am. Complaint ¶¶ 18, 23, 53(f)) destruction of Town roads (id ¶53(a)) tolerance and adoption of unlawful intimidation and threats (id ¶¶ 28, 30, 52, 54) each of which Town actions in themselves and together as course of conduct and custom or policy constitute elements of the claims stated.(Am. Complaint ¶¶ 61-107.)

      Plaintiff has further averred and stated persuasively that the Defendant Hutchins'

harassment of Plaintiff, (Am. Complaint Count #6, ¶¶24, 32, 33, 91-96) )[1] acting both individually and on behalf of the Town as its spokesperson (id ¶24, 32, 33, 60-107) reflected, was directed at, was a direct result of and was motivated by Robert's disabilities. (Am. Complaint ¶24, 32, 33, 82-86.)

Plaintiffs have also averred sufficient facts that the Town acquiesced in, adopted and participated in Hutchins discriminatory conduct, and also failed to act itself when it had a duty to act to prevent discriminatory conduct (Am. Complaint ¶¶ 7, 15, 21, 22, 28, 38, 42, 45, 46, 50-52, 54, 56-59). Plaintiffs Robert and Julie Olszewski have suffered severe injury because of the actions of the Town and its Selectman Hutchins, not any mere particular belief held by the Plaintiff.[2]

In their Motion to Dismiss, Defendants also argue eloquently that Plaintiffs have thrown into the Amended Complaint "everything but the kitchen sink" (Motion 1.) On the contrary, Plaintiffs pleading' actions have shown moderation. The practice of the Defendant Town is to disregard many legal restraints, including violation of 18 U.S.C.§ 249, violation of the Freedom of Access law, etc., and other laws not yet plead.

Plaintiff submits that each Count of the Amended Complaint, with the exception of Negligence Count seven, presents a factual and legally plausible claim, although in

---

[1] The fact that the Town and Hutchins are represented by the same counsel demands the conclusion that Hutchins and the Town have no claims against each other, Maine Bar Rule 1.7(c)(2). The Town apparently attempts to insulate Hutchins from his conduct as an individual notwithstanding, taking Plaintiff's averments at their best, public policy presumably would prevent even the Town of Dover-Foxcroft from assumption of million dollar liability for Hutchins' conduct. Therefore, Plaintiffs aver consistent with Civil Rule 8, in Count #6 Hutchins as acting totally *ultra vires* and not protected by defenses applicable to his actions in an official capacity.

[2] Defendants allege that Julie Olszewski has not provided enough detail in her assertions of loss of consortium. Such detail is not required and the loss should be obvious. *See Feighery v York Hosp.,* 38 F.Supp. 2d 142 USDC (Me 1999). It can of course be presented in detail if needed.

some instances Plaintiffs would further amend their averments.

**COUNT ONE** : DENIAL OF CIVIL RIGHTS, 42 U.S.C.A. §§1983, 1988

Plaintiffs aver denial of Olszewski's civil rights by both Hutchins and the Select Board, under 42 U.S.C.A. §§1983, not stand alone but under Section 1983 because that is the vehicle for bringing consitutional claims. Specifically, the Amended Complaint avers denial of and retaliation for his exercise of the Constitutional right to speak, petition and to participate in governmental business (First Amendment, Am. Complaint ¶ 62), also denial of his rights to be free of unlawful outrageous and intimidating governmental coercion (Maine Civil Rights Act, Constitution and to be free of M.H.R.C. Discrimination. (Am Complaint Counts Two through Six.)

That Defendants' interactions with Plaintiff all occurred while Plaintiff was attempting to petition government regarding issues with Town roads, failure to record complaints of defects, unlawful expenditures, conflicts of interest, and environmental lead poisoning. Viewpoint discrmination and suppression against his viewpoint is the basic ground from which these averments spring.

The right to petition, also part of Count One, further avers legally cognizable rights (*Nicholson v. Moran*, 961 F.2d 996 (1st Cir. 1992) (First Amendment right to petition government for redress of grievances) and unlawful retaliation for their exercise. (Am Complaint ¶62-64).

The Monell Doctrine

Defendants argue that the actions of the Select Board and its members are not actionable as regards the Town under the doctrine of *Monell v. Dep't of Soc. Serv. of*

*City of New York*, 436 U.S. 658, 691 (1978). *See also Connick v. Thompson*, 563 U.S. 51, 60 (2011). (Motion page 6). Defendants' argument neglects the determinative fact that the Dover Foxcroft Select Board and the individual Select Board members, unlike the agents in *Monell,* constitute the highest level of policy making and executive administration in Dover Foxcroft. By Maine statute, the Select Board is empowered to deal with exactly the sort of issues to which Defendant Hutchins with, individually and evidently on behalf of the Board as a whole, was evidently assigned to take on in assisting Plaintiff (Am. Complaint ¶¶13-17).

> "...[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under §1983." (*Monell* at 694.)

The Board is authorized to "exercise all administrative and executive powers of the Town" 30-A MRSA §2635.) The Town Charter, in Article V, section 3, further delineates particular duties, such as the supervision of the road commissioner, and states that the delineated duties are not exclusive of other administrative and executive powers concerning the Town.  Maine Statute also declares that "the select board as a body shall exercise all administrative and executive powers of the town ..." (30-A M.R.S.A. §2635).

Significant also is that the Select Board, as a body, in dealing with Hutchins' public pronouncements stated, on Record, that Defendant Hutchins' "social media posts can be seen as a reflection of the opinion of Selectmen's Board as a whole" (Am. Complaint ¶14,) That stated, nowhere does the Town disavow Hutchins' actions.

Therefore, When dealing with Plaintiff as a Petitioner to the Town Government

(Am. Complaint ¶¶2-7, 13,) the actions of Defendant Select Person Hutchins stand as actions of the Town (Am. Complaint ¶¶4-9,13,14,17.)

<u>Connection Between Oszlewski Exercise of Rights and Town Retaliation</u>

Defendants also wrongly argue that there are no factual allegations that the Defendants took any action against Mr. Olzewski because of a particular viewpoint he expressed (Motion p7.) However, taking the facts in the light most favorable to Plaintiff, there is an immediate sequence in time (Am. Complaint ¶20-46, 49-54), plus both direct and circumstantial evidence of of cause and effect between Plaintiff's exercise of First Amendment rights and Town retaliation.   Motivation to suppress Olszewski on the part of the Board is entirely plausible.  Olszewski could not be shut up and was acting against the interests of the Select Board, which held the purse strings (30-A M.R.S.A. §2635).  Further, Hutchins held personal animus against Plaintiff as a member of the class of disabled persons. (Am Complaint ¶¶24, 32, 33).

Prior to Defendants' actions, Plaintiff Olszewski had publicly and officially directed the Town and the general public's attention to a number of issues. Olzewski's 2022 petition about the Town's use of gravel materials full of machine gun bullet lead on the roads leading to lead contamination in the town water is one example (Am. Complaint ¶¶11, 53.) The petition that directly preceded Hutchins' harassment of Plaintiff Olszewski was in January 2022 regarding the fact that certain roads, including the road on which Plaintiffs live, were not being taken care of properly, which had led to impassible road conditions that restrict emergency services and regular travel (Am. Complaint ¶13,) Plaintiff's subsequent April 2023 investigation of HIPPA violations (Complaint ¶19), and the April 2023 investigation of Town money misspent (Complaint

¶23)  were also among the causes of the Town's retaliation against Plaintiff Olszewski.

These complaints were all formally reiterated at the June 6, 2022 Select Board meeting,  (Am. Complaint ¶53) as well as Town Government misappropriation of large amounts of money, and impassible roads.

Far from being "run-of-the-mill issues", as asserted by Defendants (Motion p 7), these issues bespoke a Town Government fraught with essentially embezzlement of public funds and dangerous derelictions of duty. There is an unmistakable plausible inference of retaliation in the Town's actions toward Plaintiff afterward.

<u>Rights Upon Which Plaintiffs Rely</u>

Plaintiffs, contrary to Defendants' dismissive statement in footnote three, rely on rights from the First, Fourth, Fifth and, Fourteenth Amendments, the Maine Constitution and the Maine Civil Rights Act, and Maine Huan Rights Act. Plaintiff does not rely solely on the First Amendment.

The Fourth Amendment to the United States Constitution "safeguards the privacy and security of individuals against arbitrary invasions by government officials." *Camara v Mun Ct of City of San Francisco,* 387 U.S. 523 (1967).

While a plausible stand alone claim may be limited under the Fourth Amendment to require averment of a seizure, the Supreme Court has not given a comprehensive list of elements which may state a Fourteenth Amendment claim, largely leaving the question of elements to the lower courts.  See *Armstrong v Ashely,* 60 F.4th 262, 278 (5th Cir 2023)

Plaintiff submits that acts as horrendous as the coercive threats of Hutchins on it's face do support such a 14th Amendment substantive due process claim, and, as well

fall outside the mantle of qualified immunity. *See Cole v Garson*, 802 F.3d 752, 771 (5th Cir 2015), *(evidence fabrication) vacated sub nom Hunter v Cole*, 580 U.S. 994 (2016) *and opinion reinstated in part* 905 F3d 334, 342 (5th Cir 334, 342 (2018.) Hutchins' actions and toleration of, let alone plausible involvement in, these wrongs by Defendant Dover Foxcroft is wholly inconsistent with civil government. *See Albright v. Oliver*, 510 U.S. 266, 274, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994)

      Hutchins' coercive threats (endorsed by the Board) (Am Complaint ¶¶24, 28, 29, 31-33), are an express violation of rights secured by the Fourteenth Amendment U.S. Const'n, itself, and under the facts of this case and presented in opposition to a Rule 12(b)(6) motion, provide a stand alone claim. That is, Hutchins' conduct and the Board's failure to intervene - especially where Olszewski's complaints directly implicated matters of "the highest rung" of concern to the community, "official misconduct by incumbent officials" - should shock and does shock the conscience and offend any "sense of justice." *See Breithaupt v. Abram*, 352 U.S. 432, 435-36 (1957)). See Cole v Garson, 802 F.3d 752, 771 (5th Cir 2015), *vacated sub nom Hunter v Cole*, 580 U.S. 994 (2016) *and opinion reinstated in part* 905 F3d 334, 342 (5th Cir334, 342 (2018)

      The civil right to be free from deprivation of life and liberty by intimidation by petty dictators or autocrats posing as Government officials is also a fundamental right secured by the Maine Constitution, Article One, Sections 1.,4., 6A, 15 and the Maine Civil Rights Act, 5 M.R.S.A. §§ 4681 (1),(3),(5), 4684-A. *See Varney v Richards*, 2016 Me. Super. LEXIS 154

**COUNT TWO:** <u>VIOLATION OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, THE CONSTITUTION OF THE STATE OF MAINE AND OF THE MAINE CIVIL RIGHTS ACT.</u>

The complaint pleads a claim of violation of the U.S. Constitution, The Maine Constitution and The Maine Civil Rights Act, and provides factual basis and allegations of retaliation for the exercise of First and Fourteenth Amendment rights and retaliation for petitioning the government for the redress of grievances, listing *inter alia* six different things for which Defendants' actions were in retaliation (Complaint ¶ 67.)

The facts in the Amended Complaint showing plausible claims under Count Two are that the disabled Plaintiff approached the Town with significant issues, that the Defendant Select Person Hutchins presented himself as the representative of the Town Government through which Plaintiff could work toward resolution of the issues, that Defendant Hutchins' then claimed, with inferrably corrupt motive (*argument infra*), falsely that Mr. Olszewski had threatened him, then attempted to fulfil his fase prohecy by attempting to provoke Olszeski to violence, then himself threatened Olszewski with criminal prosecution, threatened Olszewski with mental torture, and falsely stated that Plaintiff behaved in a way that would make a reasonable person fear harm from Plaintiff ,(Am Complaint ¶¶13-25, 29, 31-34, 36, 42, 50).

Defendants incorrectly assert that the Town was in compliance with Freedom of Access laws, and that Plaintiff did not use the proper procedure in Plaintiff's FOAA requests, 1 M.R.S.A. §§ 400 *et seq* (Motion p. 8). The Amended Complaint makes it plain that, at the time of the communications in question, the Town was relying upon Select Persons to use their own personal email for the Select Persons' official Town communication, and that the Town was also relying upon the Select Persons to

personally field any FOA requests for the communications within those personal email accounts as the official Town information officer did not have access to those personal email accounts (Complaint ¶¶19, 22.) Defendant Hutchins and the Town were in flagrant and continuing defiance of the FOA, never providing Hutchins' personal Town business emails, requested by Plaintiff.

### Qualified Immunity

Defendants argue that because the Town Select persons, other Town personnel and Barry Hutchins himself are entitled to qualified immunity, the Complaint, which is based on their conduct, should be dismissed. The argument fails entirely but surely without more fact intensive inquire at this stage of the proceeding. Cf *Lindke v. Freed* 601 US 187 (2024).[3]

In order to prevail the Defendants would have to show that, taking the facts favorably to Olszewski, Plaintiff has *inter alia* shown no violation of a "clearly established" right by virtue of his showing of coercive threats from a government official, who seeks to have him arrested and kept out of Town meetings, to "break [him] down little by little at a time until I am ready to completely blow [him] apart." (Am Complaint ¶¶32,33). Not only that, Defendants would also have to show, contrary to Hutchins' own admissions, that the targeting of Olszewski because he was weak and disabled, was not part of his self professed successful history of targeting other disabled (Am.

---

[3] Defendants argue Plaintiff did not make FOAA requests correctly and that such requests only should go to the Town Office. Hutchins just was protecting himself. (Motion page 8) In fact as alleged in the Amended Complaint, Olszewski did go to the Town Freedom of Access Officer (Ronco) who could not provide Hutchins' emails reflecting policy and the way the Town did business. Am. Complaint ¶ 19, 22. Plaintiff did not, as alleged by Defedants, and there is no factual basis to infer that he did make unreasonable requests of unlimited access to the Government or any person (Motion, p8).

Complaint ¶¶32, 33), and, also, that Hutchins did not disfavor disabled individuals, as admitted by Hutchins himself (Am Comp ¶24).

First, Plaintiff questions the applicability of this Judge made doctrine of immunity at all to the facts of this case. The doctrine has found it's primary support in protecting police officers from liability in the context of Fourth Amendment cases for necessarily split-second made decisions. *See Graham v Connor* (1989) 490 US 386, 396-71 The facts of this case relate to decisions made, or not made, after ample time to be sure the decisions were constitutional.[4] Defendants suggest the court dismiss this claim as a matter of policy given that "More and more public officials are finding themselves under attack and their rights must be balanced with their constituents' rights." (Motion ¶24). On the contrary, as stated by Carlton W. Reeves, United States District Court, in *Green v Thomas*, 3:23-CV-126-CWR-ASH, Order denying Qualified Immunity filed 5/20/2024, p 41. "...At the end of the day, the Court's policy-based defense of qualified immunity is simply a choice to privilege government officials above all others. The justifications are less than persuasive...." (Id 54)

As the argument based on *Green* may be, Plaintiff should prevail against Defendants' argument of immunity because Plaintiff has established in the Amended Complaint *inter alia* violation of a "clearly established right" to speak and petition the Government without retaliation. Plaintiff exercised those rights (Am Complaint ¶¶13, 18, 19, 23, 26, 27, 30, 35, 39, 47, 49, 53, 56), and then not only was subject to immediate retaliation by Hutchins for exercise of those rights (id ¶¶ 20, 24, 25, 29, 32,

---

[4] In addition the conduct by the Board and Board members involved intentional acts characterized by malice which would be an exception to the Maine Tort Claims Act, 14 M.R.S.A. §8104), an argument not joined at this stage of the proceedings.

33), but when he asked the Board to correct Hutchins' misconduct instead of take corrective action, the Board refused to disavow Hutchins' conduct, but silently endorsed Hutchins' physical threats and threats of mental and physical torture aimed at Plaintiff's disability (Id ¶28, 54).

Even more egregiously, the Board gave Hutchins actual or apparent authority to seek a Protection Order against Olszewski based on Hutchins' false statements that the police had given Hutchins a no harassment order against Olszewski - when in fact the police had warned Hutchins that Plaintiff *had not* received any such order (Id ¶36, 37). The Town's obtaining of the Protection Order by Select person Hutchins against Plaintiff (id ¶¶41-46) based on known false information, despite it's unlawulness, essentially shut him up from making further statements embarrassing the Board and Board members at ensuing Selectmen's meetings (id ¶¶55-57). *Cf Caudra v Hous. Indep.Sch. Dist*, 626 F3d 808, 813 (5th Cir 2010) (discussing the independent-intermediary doctrine)

The contention is entirely plausible that failure of the Board to act when faced with the egregious nature of Hutchins' coercive threats toward Plaintiff and further the Protection Order reflected a course of action by the Board either acting as a whole or by authority delegated to Hutchins which violated Plaintiff's basic rights. See, e.g., *National Rifle Association v Vullo*, 602 U.S. (2024) at 190, 198. ( "[A] government official cannot do indirectly what she is barred from doing directly."), *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993) (permitting flag burners to be beaten up without official interference or reprisal, and of a failure by the officers to interrupt such beatings)

The facts of the Amended Complaint support plausible claims for violation of

"clearly established rights" even more central than First Amendment rights - most fundamentally the right of Plaintiff to be free from coercion, whether it be by State or individual action.

Defendants attempt, in closing, to make an end run around the horribleness of Hutchins' communications by minimization of Plaintiff's case (Motion p 20) simply ignores Hutchins' damning admissions in his third electronic communication regarding Plaintiff's mother (Am Complaint ¶ 24) and his numerous other flagrant attempts to get at Plaintiff including arrest and revival of dead harassment legal action (itself premised on false testimony) immediately after M.H.R.C. complaint was filed by Plaintiff (Id ¶¶25, 34, 37, 41, 42, 50-52).

The argument is taking the facts favorably to plaintif actually frightening that the conduct of Hutchins, who was at best plainly incompetent, would be permissible for any public official who is "just standing up for himself" (Motion p 12) as the Defendants argue by analogizing comparison of threats clothed in the sovereign power of the State to threats made in domestic dispute and by the Defendants' assertion that such governmental conduct would be insufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.

Taking the facts in the light most favorable to Plaintiff, a plaintiff must allege "[s]ufficient facts to show that he has a plausible entitlement to relief." *Sanchez v Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) *Guilefoile v Sheilds,* 913 F3d 176, 186 (1st Cir 2019) Olszewski has done so.

**COUNT THREE:** <u>UNLAWFUL DISABILITY BASED DISCRIMINATION IN FAILURE TO PROVIDE DISABILITY ACCOMMODATIONS AND AUXILIARY AIDS IN VIOLATION OF MAINE HUMAN RIGHTS ACT</u>

Plaintiff experienced Disability Discrimination at the Town Office and through the Town Officers and was not afforded the services and privileges that a non-mentally disabled person would have been afforded at the town office. (Amended Complaint ¶¶ 73-81) These facts support a viable claim under the Maine Human Rights Act, 5 M.H.R.A. §§ 4551 et seq for failure to provide disability accommodations and auxiliary aids. Initially one notes that for the disabled the Town Office is an accommadation in itself that for dubious motives Plaintiff was excluded. *Argument infra*

The burden was on the Board to make the accommodations. The Public Accommodations law, 5 MRSA §4592(1)(B) does not require the disabled to ask the public accommodation for the auxiliary aids that they need in order to have equal access to public accommodation; but the law does state that the modifications in policies, practices, and procedures, must be made when it is necessary in affording the services to the disabled.

Because of Plaintiff's prior relations with the Town, and provision of private medical records even in 2022 (which Hutchins threatened to reveal (Am. Complaint ¶18 ), the Selectmen were well aware of Olszewski's need for reasonable accommodation (Id ¶¶11, 12, 13, 15) and the Board was certainly in a position, if it chose, to accommodate Olszewski.  Instead The Town's response in the way of accommodation was**:**  a threat of arrest (Am Complain ¶20, 25), threats of publishing Town held private information about Plaintiff's handicaps (id ¶18), and mental torture (Am Complaint ¶¶

24, 32, 33), then preclusion of Oszlewski from being in the Town Office, which as noted above,, as the central place, the hub of communications and interaction, the only place, where people, especially the disabled, can communicate with the Town, is itself an accommodation,.

Defendants' Motion p12 also mischaracterizes Plaintiff's claim to be only about physical access to the Town Office.

The retaliation, which prevented Plaintiff as a legal matter from access to the Town Office, also is reflected the general intimidation and retaliatory refusal to allow recording needed by Plaintiff and otherw who were disabled, to overcome disability. (Am Complaint ¶¶10, 47,).

**COUNT FOUR**: UNLAWFUL DISABILITY BASED DISCRIMINATION, IN THE FORM OF HARASSMENT, IN VIOLATION OF MAINE HUMAN RIGHTS ACT.

Defendants do not address Count Four in the Motion to Dismiss. Nonetheless, we point out that every act of Hutchins in his capacity as Select Board Member, which are all of Hutchins' words and actions detailed in the Amended Complaint, reflect prejudice and harassment of Mr. Olszewski expressly because he is of a class of weak disabled individuals (Am. Complaint ¶¶84, 32, 15, 18-25, 27-29, 31-34, 38, 41-43, 45, 50-52, 54, 56, and 57.)

The MHRA definition of discrimination "includes, without limitation, segregate, separate or subject to harassment" (5 MRSA §4553(2).) Plaintiff, in seeking the "opportunity for every individual to have equal access to places of public accommodation" faced harassment as found by the Dover-Foxcroft District Court in fact. (PFH Order against Defendant Hutchins in favor of Plaintiff , DOVDC-PA-2022-

00035.) (Am. Complaint ¶20, 24, 25, 29, 31,32, 33, 34, 36, 39, 42 , 50.)

The Amended complaint further supports a reasonable inference that the failure to accommodate was based on the pretext made in Hutchins allegations that Plaintiff was a direct threat to the health or safety of others (Am Complaint ¶15) thus arguably not entitled to accommodation by the Board. Plaintiff's argument of such a continuing scheme also finds some corroboration in Select woman Conroy's actions (Am Complaint ¶ 56.)

**COUNT FIVE -** UNLAWFUL DISCRIMINATION, IN THE FORM OF RETALIATION, IN VIOLATION OF MAINE HUMAN RIGHTS ACT.

Defendants wrongly argue that there are no facts, in the Amended Complaint, where Plaintiff was discriminated against because of Plaintiffs complaint under the MHRA. Their position ignores the fact that Hutchins, within a matter of days after Plaintiff's filing of the March 2023 Maine Human Rights Act complaint against him individually and as Select Board member, and against the Town, attempted, with the connivance of Dover-Foxcroft Chief of Police Burns, to renew frivolous criminal charges against Plaintiff - and reopened the mooted harassment action, as a result subjecting Plaintiff to a meritless retaliatory contempt proceeding (Am. Complaint ¶50.)[5]   Further knowing that Plaintiff was dependent on a recording devices, after Plaintiff's complaints, in particular abut failure to record complaints of traffic hazards, the Town stopped allowing consituents to record in the Town Office, an act against the class of disabled people to which Plaintiff belonged.

---

[5]It is also plausible based on the well plead statements in the Amended Complaint that Hutchins' initial Protection from Abuse Petition was retaliatory but initially as a result of political complaints about road problems, too much Town money being spent, etc.

**COUNT SIX:** INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL DISTRESS BY DEFENDANT BARRY HUTCHINS

The complaint states a viable claim for Intentional Infliction of Emotional Distress. It simply is implausible that any governmental official should be allowed to threaten to blow a constitutent's brains out, let alone to provoke a constituent who suffered disability and whom he thought presented a risk to be violent did everything he could to provoke violence. (Am. Complaint ¶ 29) including actions he seems to have thought he could take with impunity regardless of his status as a Board member. (Id. ¶ 31) Hutchins further unabashedly admitted to the police that he went after Olszewski intentionally (Am Complaint ¶¶ 15, 36). It is also entirely plausible that the Towns failure to control Hutchins reflected a common intent with Hutchins to stifle Mr. Olszewski's criticisms so as not to have to accommodate his complaints. See Footnote 1.

The actions of Hutchins as plead further seem so outrageous that his actions must be outside the parameters of allowable governmental conduct and so *ultra vires* and subject to punitie damages.

**COUNT EIGHT**: DEFAMATION & INVASION OF PRIVACY

Plaintiff has made a plausible case for false light privacy defamation.

Although Defendants make much of reference at one point to Hutchins' attacks as "opinions," the actual statements referred to and Plaintiffs legal averments do not qualify Hutchins' statements that Plaintiff is "unstable and clearly show himself as a threat, a danger and threat to the community" (Am. Complaint ¶15) or that Hutchins "alleg[es] Plaintiff to be an immediate threat to the safety of Town employees" as simply opinion. (Am Complaint ¶¶ 103, 104). Hutchins' allegations were not idle opinion but

verbal action and serious attempts to trigger action against Plaintiff, all of which were in reckless disregard of the impact on Plaintiff and his family. (Id ¶106)

Defendants then characterization of Hutchins' statements as a matter of fact as "false" (id ¶ 104) as "conclusory. " Defendants' characterization is self serving, uncorroborated, and as a conclusion of law or fact does not meet up to the pleading standard on a 12(b)(6) Motion.  Plaintiffs' good conduct itself throughout this proceeding also gives the lie to Defendants' spurious characterizations.

Defendants' assertion that the false statements "were not published" is also incorrect.  Publication was made to the Board and entire Town Office directly impacting all government services and in particular the Board's obligation to provide accommodation to Oszlewski. 5 M.R.S.A.§4592.  Further publication occurred *inter alia* when In self defense Plaintiff brought Hutchins' false claims to the attention of the Board. (Id ¶ 53).

Defendant furtherat this stage must accept Plaintiff's averment that as a result of the publication he has met obloquy from the public. (Id ¶ 103, ¶ 48(b).  Plaintiff can provide significant additional evidence as to the consequences of Defendants' defamation, but should not have to at this stage of the proceedings.

Defendants' further allegation that no one would take serious offense to publication of a false characterization of them as "a danger to the community" is equally untenable. See *Garey v. Stanford Mgmt., LLC* 2024 ME 46.

CONCLUSION

Finally Defendants cite *Porter v Philbrick-Gates*, 2000 ME 35 ¶ 4 for the principle "Failure to plead compliance with the Maine tort Claims Act is a valid grounds or

dismissal of a tort claim." In fact *Porter* neither reasons nor holds failure to plead compliance as a bar but rather states "Failure to comply [with the notice requirement] bars the suit." Plaintiffs provided the Notice. *Attachment A*.

Plaintiffs at this time do not press but also do not waive Motion for Injunctive Relief. Under presently available information concerning insurance, Plaintiffs without prejudice withdraw Count Seven, but otherwise oppose Defendants' Motion to Dismiss and submit, without limitation that the rationald of *Green v Thomas*, 3:23-CV-126-CWR-ASH, requires denial of Defendants' Motion.

Date: October 23, 2024

Respectfully submitted,

/s/Andrews B Campbell
Andrews Bruce Campbell #1344
Attorney for Plaintiffs

ANDREWS BRUCE CAMPBELL, P.A.
919 Ridge Road, P.O. Box 119
Bowdoinham, ME 04008
207-666-5601; abc@207Legal.com

/s/ Wade McCall
Wade Alan McCall
AL Bar ID # 6976W46D
Pro Hac Vice
Attorney for Plaintiffs

Wade McCall Esq.
268 Center Minot Hill Road
Minot, Maine, 04258