UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT OLSZEWSKI, JR., et ux., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00209-JAW |
| | ) | |
| BARRY HUTCHINS, *individually and as former selectman*, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

A married couple sues the Town of Dover-Foxcroft and a municipal official for violating the husband's rights under the First and Fourteenth Amendments to the United States Constitution, Article One, Section 6-A of the Maine Constitution, the Maine Human Rights Act, and the Maine Tort Claims Act by retaliating against him for public advocacy. The husband seeks compensatory damages and a preliminary injunction; his wife seeks damages for loss of consortium.

Defendants jointly move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim. Concluding the plaintiffs have not plausibly pleaded their entitlement to relief on the federal claims, the court follows well-established precedent in declining to exercise supplemental jurisdiction over the remaining state-law claims at this early stage of the proceeding and dismisses without prejudice the amended complaint in its entirety, so that the plaintiffs, if they choose to do so, may proceed in state court with their state claims.

Having granted the defendants' motion to dismiss, the court does not reach plaintiffs' request for preliminary injunction.

## I.    PROCEDURAL HISTORY

On June 7, 2024, Robert Olszewski, Jr., and Julie Olszewski (jointly, the Plaintiffs), filed a complaint alleging that Barry Hutchins, individually and as former selectman of the town of Dover-Foxcroft, and the town of Dover-Foxcroft (the Town) (jointly, the Defendants) violated the First and Fourteenth Amendments to the United States Constitution, Article I of the Maine Constitution, the Maine Civil Rights Act (MCRA) (Count One), 42 U.S.C. § 1983 (Count Two), the Maine Human Rights Act (MHRA) (Counts Three, Four, and Five), and are liable for intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven), and defamation and invasion of privacy (Count Eight). *Comp. Including Req. for Declaratory and Injunctive Relief* at 9-17 (ECF No. 1) (*Compl.*). On August 2, 2024, Plaintiffs filed an amended complaint, revising their allegations to assert violations of 42 U.S.C. § 1983 (Count One), the First and Fourteenth Amendments to the U.S. Constitution, Article I, Section 6-A of the Maine Constitution, and the MCRA (Count Two), the MHRA (Counts Three, Four, and Five), and raising allegations of intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven), and defamation and invasion of privacy (Count Eight). *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* at 10-20 (ECF No. 5) (*Am. Compl.*). Plaintiffs' amended complaint also requests a preliminary injunction. *Id.* at 20-21.

On October 2, 2024, the Defendants filed a joint motion to dismiss the amended complaint, including its request for injunctive relief, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. *Defs.' Mot. to Dismiss* (ECF No. 9) (*Mot. to Dismiss*). Plaintiffs responded in opposition to dismissal on October 23, 2024. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13) (*Pls.' Opp'n*). The Defendants replied on November 6, 2024. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14) (*Defs.' Reply*).

On February 19, 2025, Chief Judge Lance E. Walker recused himself and this case was randomly reassigned to this Judge. *Order of Recusal* (ECF No. 15).

## II.    MOTION TO DISMISS FACTUAL RECORD[1]

### A.    The Parties

Robert Olszewski, Jr. is a resident of Dover-Foxcroft, Maine. *Am. Compl.* ¶ 2. Julie Olszewski is also a resident of Dover-Foxcroft, Maine and is married to Mr. Olszewski. *Id.* ¶ 3.

The town of Dover-Foxcroft is a municipality and subdivision in the state of Maine. *Id.* ¶ 4. At all times relevant to this dispute, the Town acted through its agents, Town Manager Jack Clukey, Town Clerk Lisa Ronco, its Board of Selectmen (the Board or the Select Board), including Elwood Edgerly, Cynthia Freeman Cyr,

---

[1]    Consistent with the motion to dismiss standard, the Court relied on the amended complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

Barry Hutchins, Thomas Lizotte, Mike Sutton, Jane Conroy, and Stephan Grammont; and Dover-Foxcroft police officers Tyson Ober and Sergeant Graef Garib, former Chief of Police Matthew Grant, and current Chief of Police Seth Burns. *Id.*

Unlike the other members of the Select Board, Barry Hutchins is separately named as a Defendant, both individually and as a former Selectman. *Id.* ¶ 5. Selectman Hutchins was formerly a chief of police in New Hampshire. *Id.*

### B.    Mr. Olszewski's Disability

Mr. Olszewski has a mental disability from being struck by a motor vehicle and suffering a brain injury in 1989. *Id.* ¶ 10. As a result of his disability, he is unable to converse and communicate in real time, and he struggles to process new information quickly enough to comprehend answers to his questions or formulate his own answers to questions addressed to him. *Id.* His symptoms also include heightened irritability, frustration, and agitation in certain situations, including conversations at public offices and conversations with public officials, that would not be a source of such symptoms for someone without his disability. *Id.* Mr. Olszewski copes with his disability by recording conversations with the purpose of listening to and making sense of them later. *Id.*

Mr. Olszewski was issued a notification of classification as a disabled individual from the Social Security Administration on May 2, 2020, effective as of December 15, 2018. *Id.*

4

### C.    Mr. Olszewski's Communications with Dover-Foxcroft Regarding his Disability

The town government of Dover-Foxcroft became aware of Mr. Olszewski's mental disability in 2007, after he reported a lead contamination issue in the Town's gravel pit to the Town Manager of Dover-Foxcroft and the Maine Department of Environmental Protection. *Id.* ¶ 11. A newspaper article was published about the contamination and listed Mr. Olszewski as a concerned citizen and, on the same day, the Dover-Foxcroft Police Department charged him with a felony, although a grand jury unanimously ruled in his favor. *Id.* Also on the same day, the Town made a "notable raised section in the gravel road in front of Plaintiff's property," causing "massive runoff . . . whenever it rained sufficiently." *Id.* Mr. Olszewski perceived both his prosecution and the "road mismanagement" as retaliation for his "public advocacy" regarding the Town's "lead problems." *Id.* As these events transpired, Mr. Olszewski "discussed his disabilities in full detail with the Dover-Foxcroft Town Manager, effectively putting the whole of Town government on notice of [his] disabilities." *Id.* He did not stop campaigning for improved roads and the remediation of the lead problem throughout the ensuing years. *Id.*

The Dover-Foxcroft Police Department also received notice of Mr. Olszewski's disabilities when, on November 9, 2020, he called the Maine State Police for a copy of the Governor's COVID-19 policies regarding a private business requiring mask compliance. *Id.* ¶ 12. The call was passed onto the Piscataquis County Sherriff's Office and Mr. Olszewski discussed his disabilities on this call. *Id.* Tysen Ober, a Dover-Foxcroft police officer, was sent to interview Mr. Olszewski after this phone

call. *Id.* Mr. Olszewski explained his disabilities during this recorded video interview. *Id.* Also during the interview, Officer Ober lunged at Mr. Olszewski and arrested him. *Id.* Dover-Foxcroft Chief of Police Grant subsequently viewed the video and discharged Mr. Olszewski from arrest. *Id.* Mr. Olszewski later participated in several discussions with various local and non-local police officers and other officials concerning his disabilities. *Id.*

In approximately January 2022, Mr. Olszewski petitioned the Town's government about impassible road conditions restricting emergency services. *Id.* ¶ 13. He met with Selectman Hutchins, then a sitting member of the Select Board. *Id.* Mr. Olszewski provided a detailed explanation of his disabilities to Selectman Hutchins via email. *Id.*

### D. Mr. Olszewski's Further Communications with Select Board Members

In a March 14, 2022 Select Board meeting, Selectman Hutchins formally and publicly acknowledged before the Board that he had made social media posts that reflected upon the Board and the Town, and acknowledged, on the record, his new understanding that social media posts can be seen as a reflection of the opinion of the Board as a whole. *Id.* ¶ 14.

On or about March 19, 2022, Selectman Hutchins wrote the Dover-Foxcroft Police Chief, Board members, the Town Manager, Town Clerk, and other Town officials that Mr. Olszewski was "unstable and clearly showing himself as a threat, a danger and threat to the community" and proceeded to continue badgering Mr. Olszewski throughout the month with an apparent intention to agitate him. *Id.* ¶ 15.

6

Also in March of 2022, Selectman Hutchins requested Mr. Olszewski communicate with him via email instead of through the Maine public online forum, "so that I don't embarrass you here in public further." *Id.* ¶ 16. Selectman Hutchins also asked Mr. Olszewski for his personal phone number. *Id.*

Selectman Hutchins requested that Mr. Olszewski provide him with reports regarding the quality of the materials the Town used in the road that was restricting emergency service access. *Id.* ¶ 17. Mr. Olszewski e-mailed to Selectman Hutchins copies of some Maine Department of Transportation (Maine DOT) reports having to do with road materials. *Id.* ¶ 17. At an April 11, 2022 Select Board meeting, Mr. Olszewski gave each member of the Board a report from the town of Richmond concerning road materials used in Richmond, Maine and their cost, provided to him by Maine DOT Director Peter Coughlin. *Id.* ¶ 18. Mr. Olszewski had emailed the same report to Selectman Hutchins the prior week. *Id.* At the meeting, Selectman Hutchins took the floor and accused Mr. Olszewski of sending him harassing and aggressive emails, and falsely complained to the Select Board and members of the public present at the open meeting that Mr. Olszewski had sent him over 400 threatening and aggressive emails. *Id.* Selectman Hutchins also offered to forward the emails to those in attendance at the meeting, without exception of emails Mr. Olszewski had sent him regarding confidentially shared answers to questions about his medical diagnoses. *Id.* Selectman Hutchins stated "anyone who wanted to view them can at their request. Emails are public record." *Id.*

### E.    Mr. Olszewski's Maine Freedom of Access Act Requests

On April 13, 2022, Mr. Olszewski sent Selectman Hutchins a Maine Freedom of Access Act (FOAA) request for email and text messages. *Id.* ¶ 19. Mr. Olszewski sent this request to Selectman Hutchins rather than the Town Office because the selectman used a private email for government business that the Town Clerk did not have access to. *Id.* Mr. Olszewski sent the same FOAA request to Town Clerk Ronco, expressing concern about Selectman Hutchins's possible HIPAA[2] violations and notifying the Town that Selectman Hutchins had threatened him for sending a FOAA request.[3] *Id.* Selectman Hutchins responded to Mr. Olszewski's FOAA request by threatening to have Mr. Olszewski jailed and subsequently attempting to have him jailed. *Id.* ¶ 20. Neither Selectman Hutchins nor the Town provided Mr. Olszewski the emails he requested at this time. *Id.* ¶ 21.

Also in April of 2022, Mr. Olszewski submitted to the Town a FOAA request for the reports from the Town concluding that Town Manager Clukey had paid Select Board Chairman Edgerly over two hundred thousand dollars in what appeared to be bi-weekly grant fund payments. *Id.* ¶ 23. Mr. Olszewski also submitted a FOAA request for a vendor detail report which showed Town Office employees spent over

---

[2]    The amended complaint alleges Mr. Olszewski sought information about Selectman Hutchins's potential HIPPA violations, *see Am. Compl.* ¶ 19; the Court assumes this is a typo and the Plaintiffs intended to refer to violations of the Health Insurance Portability and Accountability Act (HIPAA) and corrects their reference accordingly.

[3]    Mr. Olszewski further states that "Dover-Foxcroft Select Board persons, at that time[] (2022) did Town business by personal email accounts held by the Select persons in their own name and/or the Town and/or its information officer, Ms. Ronco. Ms. Ronco, as a result did not and/or could not fully respond to Plaintiff's Freedom of Access requests for email communications Defendant Hutchins claimed to have received from Plaintiff." *Am. Compl.* ¶ 22.

8

ten thousand dollars of taxpayer funds on cake, pastries, and party supplies for personal celebrations. *Id.*

Selectman Hutchins responded to Mr. Olszewski's FOAA requests through the Facebook Messenger application, stating:

> Mr. Olszewski april 13 2022
> Let me make this crystal clear to you sir. I have told you hwo to go about getting all information that you want[. . ..] With regard to your doctors or any other person that is reading these emails. I DON'T GIVE A SHIT AS TO WHAT THEIR OPINION IS SIR. You are troubled. *I have dealt with countless persons like you throughout my life I do not continue to do it now.* If you choose to come at me aggressively, you will get it right back[.] Do not ever mistake me for a person that will simply roll over and take it. For the last time Sir. Do not send me another means of communication or I will pursue criminal charges against you. Barry G[.] Hutchins[] Town of Dover-Foxcroft.

*Id.* ¶ 24 (spelling, capitalization, formatting, and emphasis as recounted by Plaintiff). Selectman Hutchins then attempted to get the Dover-Foxcroft Police to arrest Plaintiff for sending the April 13, 2022 FOAA request, which Selectman Hutchins had earlier requested him to do. *Id.* ¶ 25.

On April 19, 2022, Mr. Olszewski created a Facebook forum called "The Dover-Foxcroft Voice" in reaction to Selectman Hutchins's negative posts about Mr. Olszewski and other persons on the Dover-Foxcroft Community page. *Id.* ¶ 26. The difficulty Mr. Olszewski faced in finding a reasonable online forum in which to discuss Town issues prompted Mr. Olszewski to create the Dover-Foxcroft Voice page. *Id.*

### F.   Plaintiff Pursues Selectman Hutchins's Termination

At a Select Board meeting on April 27, 2022, Mr. Olszewski petitioned the Board to request Selectman Hutchins's resignation. *Id.* ¶ 27. At the close of the

meeting, Selectman Hutchins moved from his chair and toward Mr. Olszewski in a manner that Mr. Olszewski and other witnesses perceived as aggressive. *Id.*

At a May 9, 2022 Select Board meeting, Mr. Olszewski and others asked Selectman Hutchins for an apology. *Id.* ¶ 28. The Board ignored Mr. Olszewski's request and denied responsibility, and Selectman Lizotte asserted that the Board lacks authority to take action against Selectman Hutchins. *Id.* ¶¶ 28, 54. Selectman Hutchins attempted to provoke a physical confrontation with Mr. Olszewski in the parking lot after the meeting through oppositional verbal exchange and sitting on the hood of Plaintiff's car and refusing to move. *Id.* ¶ 29.

Also in May of 2022, Mr. Olszewski formally complained to Dover-Foxcroft Police and the Select Board about Selectman Hutchins's attempted denial of what Mr. Olszewski perceived as a denial of his First Amendment rights when Selectman Hutchins sought his arrest and made false statements about him. *Id.* ¶ 30. Selectman Hutchins publicly maintained that he was within his First Amendment protections as a United States citizen to say what he pleased outside of Town meetings, stating that "[n]o action will be taken as my actions were after the meeting adjourned." *Id.* ¶ 31.

Mr. Olszewski attended a Board meeting on June 6, 2022, at which he raised several issues including: (1) "the continuing failing conditions of certain Town roads, and the toxicity of the gravel in the Town gravel pit's effect upon property around Town roads"; (2) "email exchanges with Hutchins, including Hutchins' threat to break Plaintiff down and blow him apart"; (3) "Hutchins' describing Plaintiff, to Chief

10

Grant, as an unstable threat to the community"; (4) "Hutchins' engagement in the parking lot of himself, one Sean Hadley and Karl Sturtzman, such that Select Board Chairman Edgerly felt compelled to intervene by restraining Hutchins"; (5) again raised his petition for the Board to seek Selectman Hutchins's resignation; (6) "Plaintiff further asked for the vendor detail report of a Town expenditure of some $200,000 allegedly to Edgerly"; (7) "Plaintiff presented [his] reasoning that [his] civil rights were violated through fear to speak up resulting from intimidation by Town officials [and] Select Board Chairman Edgerly . . . stated there was no reason to restrain anyone in the reported incident with Hutchins." *Id.* ¶ 53.

Mr. Olszewski retreated from involvement and stopped attempting to involve himself in Town affairs and attending Select Board meetings after the June 2022 meeting, because he believed he was being provoked and threatened by Selectman Hutchins and "had no course left to protect himself." *Id.* ¶ 55.

### G. Selectman Hutchins's Digital Communications with Mr. Olszewski

On June 10, 2022, Selectman Hutchins sent Plaintiff an email:

Am I in your head so damn dead that you can't sleep anymore Robert? How does it feel that your mother is actually having now to speak to your defense? How does it feel to live in Mommy's basement? I am so deep in your head that you will explode with anger before you figure out how to deal with me Robert. This is what I am exceptional at. Getting deep into the minds of persons who[] are weak. I then break them down little by little at a time until I am ready to completely blow them apart. This seat that I sit in is the least of my concerns.

*Id.* ¶ 32.

11

On the same day, Selectman Hutchins also messaged Mr. Olszewski: "Ask your buddy Sean BIG MISTAKE HUGE MISTAKE TO DO THIS TO ME YOU GENIUS." *Id.* ¶ 33.  Mr. Olszewski reports that "Sean" refers to Sean Hadley, a combat veteran, who he believes Selectman Hutchins knew to suffer from severe post traumatic stress and "as a result of 'Breaking Down' withdr[e]w from campaigning for Dover-Foxcroft Selectman and endorsed the Plaintiff." *Id.*

Mr. Olszewski proceeded to block Selectman Hutchins from his social media page. *Id.* ¶ 34.  However, on June 11, 2022, Mr. Olszewski received another message from Selectman Hutchins via a new Facebook Chat Group.  *Id.*

## H.    Mr. Olszewski Seeks Recourse Through the Police Department and the Courts

Also on June 11, 2022, Plaintiff contacted Officer Ober to complain that Selectman Hutchins's conduct amounted to "disability abuse."  *Id.* ¶ 35.  The police investigated Mr. Olszewski's complaint on June 11, 2022 and Selectman Hutchins admitted to Officer Ober that he was "trying to get into the Plaintiff's head," and that Selectman Hutchins knew that Plaintiff suffered from mental disabilities. *Id.* ¶ 36. After this informal investigation, Officer Ober denied that Selectman Hutchins's conduct was abuse and posited it might amount to harassment.  *Id.* ¶ 38.

On June 13, 2022, Mr. Olszewski petitioned the Maine District Court in Dover-Foxcroft alleging that Selectman Hutchins engaged in a continuing course of conduct to harass and injure Mr. Olszewski as retaliation for his exercise of his First

Amendment and civil rights, "with particular expressed intent to break Plaintiff down due to his disability."[4]  *Id.* ¶ 39.

## I.    Selectman Hutchins Obtains a Protection from Harassment Order

On June 14, 2022, Mr. Olszewski spoke with Sergeant Graef Garib in a recorded interview.  *Id.* ¶ 40.  Three weeks later and two days before a court date on Mr. Olszewski's petition for a protection from abuse or harassment order, Selectman Hutchins, on his own behalf and as a member of the Select Board, filed a complaint for his own protection from abuse or harassment against Mr. Olszewski, which Mr. Olszewski perceived as retaliatory.[5]  *Id.* ¶ 41.

During a protection from harassment hearing on June 30, 2022, Selectman Hutchins claimed that the cease harassment order or notice in his case had been given to Mr. Olszewski in April of 2022; Mr. Olszewski contests receipt of such notice or order at this time.  *Id.* ¶ 42.

Selectman Hutchins was represented by Benjamin Cabot, a Piscataquis County Probate Judge, during these proceedings.  *Id.* ¶ 43.  Judge Cabot did not disclose his professional relationship with the judges of the Piscataquis District Court and was required to recuse himself.  *Id.*  On January 19, 2023, the presiding judge "mooted all motions going forward."  *Id.* ¶ 44.

---

[4]    Plaintiff identifies his petition as appearing in "Dover-Foxcroft Maine District Court, DVDC PA 22-0035."  *Am. Compl.* ¶ 39.

[5]    Plaintiff identifies Selectman Hutchins's petition as in the case "Dover-Foxcroft Maine District Court, DVDC PA 22-0039."  *Am. Compl.* ¶ 41.

During the hearing, Selectman Hutchins characterized the Town Office as his place of employment. *Id.* ¶ 45. At the selectman's request, the presiding judge imposed a no-contact provision, legally barring Mr. Olszewski from attending meetings of the Select Board or going to the Town Office for the duration of the harassment order. *Id.* The Town made no provision for Mr. Olszewski to conduct Town Office business, vote in elections, or attend Select Board meetings. *Id.* Mr. Olszewski attributes the no-contact provision to the testimony and allegations of Selectman Hutchins on June 30, 2022. *Id.* ¶ 46.

On December 13, 2022, Mr. Olszewski went to the Town Office and discussed the court order with Police Chief Grant, inquiring whether he could legally attend the upcoming Select Board meeting. *Id.* ¶ 47. Mr. Olszewski was particularly interested in attending this meeting because of the recently posed "No Recording" sign in the Town Office front door, which he feared would interfere with his ability to record Town meetings and interact with the Town Office notwithstanding his communication disability. *Id.* Other disabled citizens who relied on recording interactions in the Town Office as a communication disability aid—namely Mr. Hadley, Dennis Allen, and Karl Stutzman—had in November 2022 also gone to the Town Office to request road hazard reports and been threatened at the time with arrest and removal from the Town Office for violating the new Town Office policy against recording. *Id.* The recording ban was to be discussed at the December 13, 2022 Select Board meeting and Mr. Olszewski thus wanted to attend. *Id.*

14

The Town subsequently took the position that the Town Office is not a public forum and disallowed private audio and video recording of any Town business in the Town Office. *Id.* ¶ 58. "At all times material to this Complaint the Town had not adopted a remote meeting policy." *Id.* ¶ 59.

### J.    Allegations Against Mr. Olszewski on Social Media

Also on December 13, 2022, a Facebook profile, which Mr. Olszewski impugns as libelous and fake, publicly accused Mr. Olszewski of being a pedophile. *Id.* ¶ 48. The profile was created by Christopher Johnson, Mr. Olszewski believes, at the behest of Selectman Hutchins. *Id.* Although Mr. Johnson denied knowing Selectman Hutchins upon inquiry by the Dover-Foxcroft police, Mr. Olszewski maintains: "[i]n [f]act, (a) Hutchins was an electrical services customer of Johnson; (b) Johnson later admitted the posting was in reaction to interactions of Plaintiff with Defendant Hutchins and Town officials[;] (c) Plaintiff saw a Facebook post showing a photo of Hutchins with Johnson from June 12, 2022[; and (d)] Hutchins'[s] son . . . had weekly contact with Johnson . . . during 2022 and 2023, and himself published a Facebook photographic message that bullets were the correct response to pedophiles." *Id.*

### K.    Plaintiff Petitions the Maine Human Rights Commission

Mr. Olszewski filed a petition with the Maine Human Rights Commission (MHRC) against the town of Dover-Foxcroft and Selectman Hutchins, which was served on the Town on March 6, 2023. *Id.* ¶ 49. Mr. Olszewski also sent notice of a tort claim to both Defendants. *Id.*

Subsequently, Selectman Hutchins attempted, "with the connivance of Dover-Foxcroft Chief of Police Burns, to reopen the mooted Harassment action and subjected Plaintiff to a merit[]less retaliatory contempt proceeding." *Id.* ¶ 50. The selectman's motion alleged contempt on December 13, 2022, an occasion when Plaintiff had spent thirteen seconds in the Town Office; the motion was denied. *Id.*

Chief Burns also cooperated with Selectman Hutchins in an attempt to renew criminal charges against Mr. Olszewski. *Id.* ¶ 51. Chief Burns was present at the prior protection from harassment hearing where allegedly false testimony regarding the warning was given, and knew that no warning or order had been issued against Mr. Olszewski. *Id.* Town policy called for an investigation into the allegations in Mr. Olszewski's MHRC complaint; however, instead of investigating the complaint, Chief Burns sought to establish ground to recommence prosecution of Plaintiff's appearance at the Town Hall on December 13, 2022. *Id.* ¶ 52.

## L.  The Expiration of the Protection from Harassment Order and Plaintiff's Attendance at the October 2023 Board Meeting

After the no-contact order expired on September 1, 2023, Mr. Olszewski attended the October 23, 2023 Select Board meeting. *Id.* ¶ 56. Mr. Olszewski spoke at the meeting and was interrupted by Selectwoman Conroy, who then imposed a five-minute speaking rule "whereas others spoke without interruption up to fifteen minutes and when due to his disability he should, if anyone, have been entitled to speak in excess of [fifteen]." *Id.* At the meeting, Selectwoman Conroy then stated that Mr. Olszewski "was threatening her and if he said anything about her actions[,] she would sue him." *Id.*

16

Mr. Olszewski perceived that he was being provoked and threatened and thus ceased his involvement with Town affairs and attendance of Select Board meetings. *Id.*

## III.    THE PARTIES' POSITIONS

### A.    The Plaintiffs' Amended Complaint

As amended, the Plaintiffs' complaint brings eight counts against the Defendants.

#### 1.    Count One: 42 U.S.C. § 1983

Plaintiffs argue that "Defendants' conduct, including but not limited to provocation and threats, outlined in this complaint constitute violations of Plaintiff's constitutional rights and are part of a continuing course of action that deprived and deprives Plaintiff of his constitutional and civil rights and were and are taken under color of state law." *Id.* ¶ 61.

Mr. Olszewski alleges his First and Fourteenth Amendment rights were violated when the Town attempted to have him arrested for seeking documents pursuant to Maine's Freedom of Access Act, and when he was "denied, and deterred, as a result of unlawful State action, threats, and failure by Defendant Dover[-]Foxcroft to secure Plaintiff against provocations aimed at him as disabled individual, from exercise of his rights to speak and to participate in governmental business." *Id.* ¶¶ 62, 63. He further argues that the Defendants' obtention and enforcement of a protection from harassment order prohibiting his presence in the Town Office or

17

Select Board meetings amounted to "retaliatory contempt" which unconstitutionally violated his rights to "speech and petitioning activity." *Id.* ¶ 64.

"As a direct and proximate result of the [Defendants' conduct], Plaintiffs . . . have been denied rights to freedom of expression and to petition the government, have suffered severe emotional distress, economic injury, medical psychological care, loss of life's enjoyment and damage to their respective reputations in the community." *Id.* ¶ 65. They seek to hold Defendants jointly and severally liable for compensatory and consequential damages totaling one million dollars, including severe emotional and mental distress, economic damages, punitive damages, and reasonable attorney's fees and costs. *Id.* at 11. Ms. Olszewski seeks damages jointly and severally against both Defendants for loss of consortium. *Id.*

### 2. Count Two: Constitutional Violations and the Maine Civil Rights Act

The Plaintiffs next allege violations of the United States Constitution, the Maine Constitution, and the MCRA, claiming Defendants retaliated against Mr. Olszewski for (1) exercising his First and Fourteenth Amendment rights; (2) petitioning the Town regarding Dover-Foxcroft's "historic and ongoing use of toxic and substandard materials in building and maintenance of Town roads [and] road conditions"; (3) raising the Town's "[f]ailure to engage in mandatory recording of unsafe condition road reports"; (4) "[c]omplain[ing] regarding improper expenditure of government funds"; (5) "filing of Discrimination charges against the Town"; and (6) "exerci[sing] [his] constitutional rights to record interactions with the government." *Id.* ¶ 67.

18

The Plaintiffs bring these claims against both Defendants, alleging as part of an ongoing course of conduct, Selectman Hutchins, individually and in his official capacity, and the Town, "by its own participation or acquiescence in the actions of Hutchins," provoked and threatened "violence and unreasonable conduct" against Mr. Olszewski which "would cause a reasonable person to suffer emotional distress or to fear death or bodily injury to that person or to a close relation as defined in Title 17 A, section 210 A, subsection 2, paragraph B and paragraph D, respectively." *Id.* ¶ 68.

Further, Plaintiffs allege "Defendants' provocations and threats of violence in reaction to [Mr. Olszewski]'s speech and [p]etitioning activity constitute a continuing course of action which intentionally interfered and interferes or attempts to intentionally interfere with [his] exercise or enjoyment of his civil rights" under the First and Fourteenth Amendments to the U.S. Constitution; Article One, Section 6-A of the Maine Constitution; and Title Five, sections 4681 through 4685, of the MCRA. *Id.* ¶ 69. Plaintiffs clarify that their allegations under this count refer to Selectman Hutchins's alleged efforts to have Mr. Olszewski arrested for seeking FOAA documents, the Defendants' obtaining and enforcement of a protection from harassment order, and the "attempted silencing of, and threat of prosecution against" Mr. Olszewski at the October 23, 2023 Select Board meeting. *Id.*

Mr. Olszewski seeks compensatory and consequential damages of one million dollars against both Defendants jointly and severally for "severe emotional and mental distress, economic damages, and punitive damages," as well as attorney's fees

and costs. *Id.* at 13. Ms. Olszewski seeks joint and several damages for loss of consortium. *Id.*

### 3. Count Three: The Maine Human Rights Act

Plaintiffs next seek to hold the Defendants liable for disability-based discrimination in violation of the MHRA for their failure to provide Mr. Olszewski with disability accommodations and auxiliary aids. *Id.* ¶ 72.

They aver that Mr. Olszewski qualifies as an individual with a disability under 5 M.R.S. § 4553, and that the Town Office and Select Board meetings constitute places of public accommodation pursuant to the same statute. *Id.* ¶¶ 73-74 (citing 5 M.R.S. § 4553).

Further, Plaintiffs allege "[t]he Town knew and should have known of Plaintiff's needs as a mentally and physically disabled person" because "Plaintiff expressly made known to the Town many times from 2007 to the present that Plaintiff was both physically and mentally disabled and the nature of his disability." *Id.* ¶ 75. Plaintiffs argue that the Town and its agents thus "should have provided auxiliary aids sufficient to allow Plaintiff to accomplish the same or similar things, at the Town Office and through interaction with Town Government as non-disabled individuals." *Id.* ¶ 76. "At times material to this Complaint," Mr. Olszewski says he "has tried to petition and interact with government and has been unable to do so because of Town Officers' reactions to Plaintiff's mental disabilities and due to Plaintiff's mental

disability symptoms which cause Plaintiff to become agitated and unable to constructively process and engage in communication [] with Town officers."[6] *Id.* ¶ 77.

He specifically alleges he should have been provided: (1) disability-based accommodations in the form of "actions by the Police to protect Plaintiff from Hutchins following the March 20, 2022 correspondence . . . where Hutchins declared that Plaintiff was unstable and showed himself as a threat, and danger to Town employees," (2) auxiliary aids and communications to help him communicate "the various options for better materials with which to make the Town roads" in March of 2022, (3) "disability aids" that would have helped Plaintiff with his FOAA requests, and (4) permission to record his communications with the Town. *Id.* ¶ 80.  Plaintiffs say Mr. Olszewski would have been able to "successfully utilize the Town Office and accomplish [his] desired interactions with Town government" if he had been allowed to record his interactions at the Town Office, the Town had trained staff at the Town Office in accommodation the needs of individuals with mental disabilities, and the Town had in place "policies relating to remote video communication." *Id.* ¶ 78.

The Plaintiffs allege this conduct amounts to violations of 5 M.R.S. §§ 4553, 4591, and 4592.  *Id.* ¶ 81.  Mr. Olszewski seeks compensatory and consequential

---

[6]     At various points in the amended complaint, Plaintiffs appear to have edited their writing using the strike-through function. At paragraph 77, for example, Plaintiffs say: "At times material to this Complaint, Plaintiff has tried to petition and interact with government and has been unable to do so because of Town Officers' reactions to Plaintiff's mental disabilities and due to Plaintiff's mental disability symptoms which cause Plaintiff to become agitated and unable to constructively process and engage in communication ~~conversation~~ with Town officers."  *Am. Compl.* ¶ 77.  Although this is certainly an unusual way of editing a submission to a court, the Court presumes Plaintiffs did not intend for it to consider the strike-through language and accordingly removes strike-through references in its recitation of the parties' allegations and arguments.

damages of one million dollars against the Defendants jointly and severally for severe emotional and mental distress, economic damages, and punitive damages. *Id.* at 15. Ms. Olszewski seeks joint and several damages for loss of consortium. *Id.*

### 4.  Count Four: The Maine Human Rights Act

Plaintiffs bring a second count under the Maine Human Rights Act, alleging Defendants' harassment constituted unlawful disability-based discrimination. *Id.* at 15.  They specifically assert the Defendants harassed Mr. Olszewski (1) "by actions found to exist as a basis for September 1, 2022[] harassment court order issued against Selectman Hutchins," (2) "April 13, 2022, Defendant Hutchins response to Plaintiff's FOAA request by threats to have Plaintiff jailed and actually seeking to have Plaintiff jailed," (3) Selectman Hutchins's April 13, 2022 Facebook Messenger response to the Plaintiff's FOAA request, (4) Selectman Hutchins's "aggressive conduct" towards Mr. Olszewski on April 27, 2022 and May 9, 2022, (5) Selectman Hutchins's June 10, 2022 message to Mr. Olszewski targeting his disabilities, and (6) the June 11, 2022 Facebook Messenger communications. *Id.* ¶ 84.

Plaintiffs claim that Mr. Olszewski "has been discriminated against in that he has been subjected to harassment including outright provocation and the threat of torture by Hutchins not only because Plaintiff is mentally and physically disabled but because he is a member of the class of mentally and physically disabled individuals." *Id.* ¶ 85.  As a proximate result of this discriminatory harassment, Plaintiffs say, Mr. Olszweski "has been denied the civil right of equal access to the Town Office of the Town of Dover[-]Foxcroft, a public entity and place of public accommodation, and to

the public forum of it[]s Select Board meetings, and to full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Town." *Id.* ¶ 86.

For these alleged violations, Mr. Olszewski seeks against both Defendants jointly and severally one million in compensatory and consequential damages based on severe emotional and mental distress, economic damages, and punitive damages; Ms. Olszweski seeks joint and several damages for loss of consortium. *Id.* at 17.

### 5. Count Five: Retaliation in Violation of the Maine Human Rights Act

Plaintiffs also bring a claim of retaliation pursuant to the MHRA, asserting "[t]he discrimination by harassment . . . previously described herein, was retaliation, toward [Mr. Olszewski], on the part of defendants." *Id.* ¶ 88. Specifically, Plaintiffs allege "Defendant Hutchins acted in retaliation over Hutchins's personal rancor which developed in the course of Plaintiff's attempts to enjoy the rights granted under the [MHRA], to avail Plaintiff's self of the public accommodations offered by the Town of Dover[-]Foxcroft at the Town office and through the Town officials, such as Hutchins." *Id.* Plaintiffs say that Mr. Olszewski "attempted to use the public accommodations of the Town office to influence local Town action through interactions with Hutchins," and the Town "retaliated by reason of Plaintiff's whistle blowing actions." *Id.* Plaintiffs allege this retaliation took the form of Selectman Hutchins's "interfer[ence], coerc[ion], and intimidat[ion]," in response to Mr. Olszewski's protected activities. *Id.* ¶¶ 89, 90. Specifically:

1. The filing, two days before the hearing and three weeks after Plaintiff's filing on June 13, 2022 in Dover[-]Foxcroft District Court, DOVDC-PH-22-35, for a court order against harassment by

Selectman Hutchins, instead of agreeing to cease the harassment, and provide disability accommodations to Plaintiff, filing by Hutchins of a Protection from Harassment Petition, DVDC PA 22-0039, against Plaintiff, which deterred Plaintiff from civic participation by and through the public accommodations offered by the Dover-Foxcroft Town Office and it[]s officers.

2. Failure to censure or otherwise rein in the abusive and outrageous behavior of Respondent Selectman Hutchins[.]

3. Seeking prosecution of Plaintiff for his attempts to participate in Town affairs rather than reasonable accommodations for his disabilities.

4. Seeking to hold Plaintiff in contempt of court without any probable cause or reason to do so based on a Protection from Harassment Order which was obtained through false allegations and further a moot and closed matter.

5. Denial of equal protection from the law in failure to protect Plaintiff's real property from flooding and dangerou[s] road conditions.

*Id.* ¶ 90 (enumeration revised by the Court).

Mr. Olszewski seeks to hold Defendants jointly and severally liable for compensatory and consequential damages totaling one million dollars "for his losses, including severe emotional and mental distress, economic damages, and punitive damage as may be recoverable, reasonable attorney fees, [and] his costs and interests." *Id.* at 18. Ms. Olszewski seeks joint and several damages for loss of consortium. *Id.*

24

### 6. Count Six: Intentional Infliction of Mental and Emotional Distress by Selectman Hutchins

Plaintiffs also bring a claim of intentional infliction of emotional distress[7] against Selectman Hutchins, arguing that Selectman Hutchins, despite awareness of Mr. Olszewski's disabilities and medical history, acted with malice to threaten and mentally torture the Plaintiff and "attempt to provoke him to violence." *Id.* ¶¶ 92, 93. Plaintiffs allege that Selectman Hutchins "portrayed [Mr. Olszewski] to be violent and a threat to Town employees and others" and assert this "conduct was intentional and outrageous and beyond [t]he scope of any conduct tolerable in a civilized society or community." *Id.* ¶¶ 94, 95. They claim both Plaintiffs "suffered injury, economic damage, severe and mental emotional distress, requiring medical attention, loss of life's enjoyment and damages" as a direct and proximate result of Selectman Hutchins's conduct. *Id.* ¶ 96. Mr. Olszewski seeks one million dollars in compensatory and consequential damages from Selectman Hutchins, as well as economic and punitive damages and attorney's fees, and Ms. Olszewski seeks joint and several damages from both Defendants for loss of consortium. *Id.* at 19.

### 7. Count Seven: Negligent Infliction of Mental and Emotional Distress

Plaintiffs bring a seventh count, negligent infliction of emotional distress,[8] claiming "[t]he conduct and actions or omissions to act when there has been a duty to

---

[7]    Plaintiffs assert a claim of "intentional infliction of mental and emotional distress." *Am. Compl.* at 18-19. The Court interprets this as a claim for intentional infliction of emotional distress.

[8]    Plaintiffs assert a claim of "negligent infliction of mental and emotional distress." *Am. Compl.* at 19. The Court interprets this as a claim for negligent infliction of emotional distress.

act by Defendant Dover-[]Foxcroft has been negligent, grossly negligent and reckless" and that "Plaintiffs were at all times in the exercise of reasonable care." *Id.* ¶¶ 98, 99. Further, they argue "Defendants' respective conduct, including but not limited to, in the case of Defendant Dover[-]Foxcroft, its omissions to act or action in f[a]iling to protect Plaintiffs from, and participation by Town officials in, the wrongful and outrageous conduct of Hutchins." *Id.* ¶ 100. They say Plaintiffs "suffered foreseeable injury, severe mental and emotional distress, economic damage, and loss of life's enjoyment, and in the case of Julie Oszlewski loss of consortium" as a direct and proximate result of Defendants' conduct. *Id.* ¶ 101. Mr. Olszewski again seeks one million dollars in compensatory and consequential damages, economic and punitive damages, and attorney's fees and costs, and Ms. Olszewski seeks joint and several damages for loss of consortium. *Id.* at 19.

### 8.    Count Eight: Defamation and Invasion of Privacy

Finally, Plaintiffs bring claims of defamation and invasion of privacy. They assert, first, that "Defendants' actions, including but not limited to Hutchins['s] emails alleging Plaintiff to be an immediate threat to the safety of Town employees, are false," and that Defendants' "failure . . . to correct these allegations have proximately resulted in and are proximately resulting in painting a picture of Plaintiff before the public in a false light which was and is highly offensive to a reasonable person, portraying him as not only mentally ill, but as a threat and danger to the public." *Id.* ¶¶ 103, 104.

Second, Plaintiffs claim "[t]he false light has foreseeably invaded the privacy of Plaintiffs' home life, subjected Plaintiffs to foreseeable obloquy, obscene characterization, and triggered and proximately caused threats of violence, including arson and being killed with a firearm, and other ongoing recriminations against the Plaintiffs." *Id.* ¶ 105. They aver "Defendants have acted recklessly and in complete disregard as to the consequences of the false light in which the[ ]Plaintiffs have been placed by Defendants' conduct," and as a proximate result Plaintiffs have suffered severe mental stress, fear of physical injury, loss of life's enjoyment, loss of reputation, and other damages." *Id.* ¶¶ 106, 107.

Mr. Olszewski again seeks one million dollars in compensatory and consequential damages, economic and punitive damages, and reasonable costs and attorney's fees; Ms. Olszewski seeks damages for loss of consortium. *Id.* at 20.

### 9.    Request for Injunctive Relief

In addition to their claims for damages, Plaintiffs also request a preliminary injunction, averring there is an actual controversy, Mr. Olszewski and the public are irreparably harmed by the status quo, Mr. Olszewski has no adequate remedy at law, and Mr. Olszweski is more likely than not to succeed on the merits of his claims. *Id.* ¶¶ 109-112. They report that an affidavit in support of their motion for injunctive relief "will follow in due course"; however, as of the date of this order, no such affidavit has been submitted. *Id.* ¶ 113.

### B.    The Defendants' Joint Motion to Dismiss[9]

Defendants jointly move to dismiss all counts in the amended complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Mot. to Dismiss* at 1.  Defendants assert that, despite "includ[ing] everything but the kitchen sink," the amended complaint's "factual allegations [] are simply insufficient, and do not allow for the plausible inferences necessary, to state claims for relief."  *Id.* at 1-2.  The motion to dismiss additionally asks the Court to deny the Plaintiffs' request for a preliminary injunction.  *Id.* at 19.

#### 1.    All Claims Brought by Ms. Olszewski

First, Defendants move to dismiss all claims brought against them by Ms. Olszewski because "there are not any factual allegations about [her] in the [amended complaint] that would support any claims on her behalf" and "[t]he only references to Ms. Olszewski in the [amended complaint] are entirely conclusory[,] [*Am. Compl.*] ¶¶ 65, 101, and [appear in] the prayers for relief for each Count."  *Id.* at 5 n.1 (citing Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The remainder of the Defendants' joint motion seeks the dismissal all claims brought on behalf of Mr. Olszewski.

#### 2.    Counts One and Two: 42 U.S.C. § 1983 and U.S. Constitutional Violations

Defendants address Count One, the 42 U.S.C. § 1983 claim, and Count Two, the alleged federal and state constitutional violations and MCRA claim, together

---

[9]    The motion to dismiss consistently misspells the Plaintiffs' last name as "Olzweski."  *See, generally, Mot. to Dismiss.*  The Court corrects all such misspellings in this order to "Olszewski."

"because Section 1983 is a mechanism for bringing a constitutional violation and not a standalone claim." *Id.* Defendants only address the claims Plaintiffs bring in Count Two pursuant to the First and Fourteenth Amendments to the United States Constitution; they do not address Article I, Section 6-A of the Maine Constitution or the MCRA. *See id.* at 5-12.

### a.    Alleged Constitutional Violation

Turning to the merits, Defendants contend Counts One and Two warrant dismissal because the Plaintiffs have not sufficiently pleaded any constitutional violation. *Id.* at 6. "To establish a plausible claim for a First Amendment violation," they say, "Plaintiffs must allege facts that show: (1) they engaged in a constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) their protected activity was a substantial factor in the Defendants' conduct." *Id.* at 7 (citing *Currier v. Town of Gilmanton*, 621 F. Supp. 3d 233, 259 (D.N.H. 2022) (in turn quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)); *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013)). They report that the United States Supreme Court has observed that protection against viewpoint discrimination is "[a]t the heart of the First Amendment's Free Speech Clause." *Id.* (quoting *NRA of Am. v. Vullo*, 602 U.S. 175, 187 (2024)). Defendants opine that, in this case, "aside from one conclusory allegation ([*Am. Compl.*] ¶ 63 ('due to the content of Plaintiff's speech and petitioning activity')), there are no factual allegations that the Defendants took any action against Mr. Olszewski because of a particular viewpoint he expressed." *Id.* Instead,

29

Defendants say the Plaintiffs allege that Mr. Olszewski "raised run-of-the-mill issues, such as road conditions, lead remediation, and government expenditures." *Id.* at 7-8 (citing *Am. Compl.* ¶¶ 11, 13, 18, 69).

Insofar as Plaintiffs bring a First Amendment claim based on their allegation that Selectman Hutchins threatened to have Mr. Olszewski jailed in response to his FOAA request, Defendants argue "this was a situation where Mr. Hutchins was protecting himself and his actions did not prevent Mr. Olszewski from petitioning the Town." *Id.* at 8 (citing *Am. Compl.* ¶¶ 18-20, 24, 63, 69). Further, Defendants argue the First Amendment does not afford a member of the public unlimited access to local government or local officials. *Id.* (citing *Roussel v. Mayo*, 1:22-cv-00285-JAW, 2022 U.S. Dist. LEXIS 215214, at *8 n.1 (D. Me. Nov. 30, 2022) ("Plaintiff does not assert that Defendants imposed any restrictions on his ability to correspond with government officials by alternate means, including at other physical locations or through regular or electronic mail. Without additional facts, therefore, there is no basis to conclude that the loss of physical access to one particular property . . . constitutes an infringement on Plaintiff's First Amendment rights") (citation amended)).

Next, insofar as Mr. Olszewski's freedom to petition claim is based on the protection from harassment order, Defendants opine this Court should take judicial notice of the September 1, 2022 Dover-Foxcroft District Court order in Docket Number DOV-DC-PA-2022-39 pursuant to Federal Rule of Evidence 201(b), which Defendants say shows that the Plaintiff was Barry Hutchins in his individual

30

capacity, and that Mr. Olszewski was "restrained from, repeatedly and without reasonable cause, being at or in the vicinity of the plaintiff's home, school, business, or place of employment."   *Id.* at 9 (citing FED. R. EVID. 201(b) and then collecting cases).  The motion was not brought by Selectman Hutchins in his official capacity, Defendants say, and "[t]here is nothing in the order that, for its one-year duration, prevented Mr. Olszewski from being in the Town offices with reasonable cause or from exercising his First Amendment rights in a variety of ways such as writing letters, publishing articles, or calling Town officials or select board members other than Mr. Hutchins."  *Id.*  Defendants also argue that public officials have the right to seek redress in the court system; this is not grounds for a First Amendment violation. *Id.*  Defendants also challenge Mr. Olszewski's allegation that he retreated from his engagement in Town affairs, observing that the factual allegations in the amended complaint "show that he remained steadily involved."  *Id.*

### b. Town of Dover-Foxcroft's Municipal Liability Under 42 U.S.C. § 1983

Next, Defendants argue that "[t]he law is well settled that an entity cannot be held vicariously liable under section 1983 for its employees' actions; it can only be held responsible for its own actions," and thus Plaintiffs have failed to plead a plausible claim against the Town pursuant to this statute.  *Id.* at 6 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978)).  "Plaintiffs who seek to impose liability on local governments under 1983 must prove that 'action pursuant to official municipal policy' caused their injury,'" Defendants say: "[i]n other words, 'the plaintiff must prove a constitutional violation resulting from a 'policy statement,

ordinance, regulation or decision officially adopted and promulgated by' those in charge of the [Town].'" *Id.* (first quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011); then quoting *Suprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005)).

Thus, Defendants argue, even if Plaintiffs adequately alleged a violation of Mr. Olszewski's First Amendment rights, Counts One and Two still warrant dismissal as to the town of Dover-Foxcroft because Plaintiffs' allegations do not establish that Selectman Hutchins's conduct "was done pursuant to a policy or custom of the Town" so as to create lability under 42 U.S.C. § 1983. *Id.* at 10 (collecting cases from the Supreme Court and this District). Defendants contend that the amended complaint's allegations against Selectman Hutchins "reduce to a couple of emails, a parking lot encounter, comments at a public meeting, and a protection from harassment order, all of which consist of Mr. Hutchins asking Mr. Olszewski to essentially leave him alone and in no way implicate official Town policy." *Id.* (citing *Am. Compl.* ¶¶ 24, 32, 42). They also point out that the amended complaint "alleges that another Select Board member told [Mr. Olszewski] that the Select Board did not have the authority to take action against Mr. Hutchins for his conduct," and "do not establish that Mr. Hutchins was himself, outside of the Select Board, an official with final authority to establish municipal policy or custom." *Id.* at 10-11 (citing *Am. Compl.* ¶ 28).

"Absent a basis for municipal liability," Defendants conclude, "the section 1983 claim must be dismissed against the Town." *Id.* at 11.

### c. Selectman Hutchins's Qualified Immunity

Turning to Selectman Hutchins, Defendants argue Counts One and Two must be dismissed against him on the basis of his qualified immunity as a public official. *Id.* "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate [] clearly established statutory or constitutional rights of which a reasonable person would have known," Defendants say, maintaining that "not every reasonable public official would have understood that sending two pointed emails, warning about future legal action, or seeking and obtaining a protection from harassment order against a constituent, would violate a constituent's First Amendment rights." *Id.* at 11-12 (first quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Based on the foregoing, Defendants move to dismiss Counts One and Two. *Id.* at 12.

### 3. Counts Three, Four, and Five: Maine Human Rights Act Claims

Turning to Plaintiffs' MHRA claims, Defendants argue Counts Three, Four, and Five must be dismissed against Selectman Hutchins because individuals are not subject to suit under the MHRA, and against the Town because Plaintiffs have failed to adequately plead a plausible claim to relief under the same statute. *Id.* (citing *Quiron v. L.N. Violette Co. Inc.*, 897 F. Supp. 18, 21 (D. Me. 1995); *Lerman v. Mt. Sinai Cemetery Ass'n, Inc.*, No. 99-613, 2001 Me. Super. LEXIS 19, at *24-25 (Me. Super. 2001) (citation amended)).

a.    **Counts Three and Four: Public Accommodations Discrimination**

In a footnote, Defendants observe that Plaintiffs bring Count Four pursuant to 5 M.R.S. § 4553, "the definitions section of the Maine Human Rights Act." *Id.* at 12 n. 4. They urge the Court to dismiss Count Four on this basis. *Id.*

Turning to Count Three, Defendants state that 5 M.R.S. § 4591 requires equal access to places of public accommodation and 5 M.R.S. § 4592 prohibits unlawful public accommodation discrimination. *Id.* To state a claim for public accommodation discrimination, Defendants report a plaintiff must allege "(1) the party charged is 'the owner, lessee, proprietor, manager, superintendent, agent or employee' of a place of public accommodation who (2) [']refuses or withholds to any person, on account of . . . physical or mental disability' (3) 'any of the accommodations, advantages, facilities or privileges of public accommodation.'" *Id.* at 12-13 (quoting *Me. Hum. Rts. Comm'n v. Le Club Calumet*, 609 A.2d 285, 286 (Me. 1992) (in turn quoting 5 M.R.S. § 4592)). In the case at bar, Defendants contend "there are no allegations that the Town excluded Mr. Olszewski from any of the accommodations, advantages, facilities or privileges of the Town offices because of his physical or mental disability." *Id.* at 13.

Defendants continue that to establish a denial of reasonable accommodation or modification, a plaintiff must show that he (1) has a disability within the meaning of the MHRA, (2) the defendant operates a place of public accommodation under the MHRA, (3) the defendant has in effect a policy, practice or procedure that, because of plaintiff's disability, results in plaintiff's inability to access defendant's services, facilities, privileges, advantages, or accommodations, (4) plaintiff requested a

reasonable modification to the policy, practice or procedure which, if granted, would have afforded plaintiff access, (5) the requested modification was necessary to afford access, and (6) defendant nonetheless refused to modify the policy, practice or procedure. *Id.* (citing 5 M.R.S. § 4592(1), (1)(c); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003)).   Defendants emphasize that a place of public accommodation is only required to provide a reasonable accommodation if the person with a qualifying disability requests one, and "[n]owhere in the complaint does Mr. Olszewski allege that he ever requested disability aids or accommodations from the Town[;] [i]nstead, he alleges that the Town and Mr. Hutchins should have known to provide him with aids or services." *Id.* at 13-14 (first citing *Dudley*, 333 F.3d at 307; *Reed v. Lepage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001), then citing *Am. Compl.* ¶¶ 13, 76, 79)).

In addition, Defendants also contend that the complaint fails to allege that Mr. Olszweski's desired modification was necessary to afford him access to the public accommodation.   *Id.* at 14.   Recognizing Plaintiff's allegation that his "mental disability symptoms . . . cause [him] to become agitated and unable to constructively process and engage" with Town officials, Defendants nonetheless insist that "even if he had requested an accommodation, the allegations do not support a plausible inference that, for example, being allowed to record Town meetings or participate remotely would have afforded [him] access, or that such an accommodation was necessary for him to receive equal access." *Id.* (citing *Am. Compl.* ¶ 77).   On this point, Defendants emphasize that Mr. Olszewski resumed attending public meetings

after the no-recording policy went into effect and when the protection from harassment order terminated. *Id.* (citing *Am. Compl.* ¶¶ 47, 56).

### b.    Count Five: MHRA Retaliation

Defendants also move to dismiss the MHRA retaliation claim, brought pursuant to 5 M.R.S. § 4633, in Count Five. Section 4633 provides that "[a] person may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under this Act or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Act." *Id.* at 14-15.

Defendants construe the alleged protected activity to be Mr. Olszewski's filing of a complaint with the MHRC that was subsequently served on the Town on March 6, 2023. *Id.* at 15 (citing *Am. Compl.* ¶ 49). They observe further that the amended complaint "alleges two incidents that occurred after that date, neither of which amounts to discrimination or retaliation": first, Plaintiffs allege Selectman Hutchins and the Dover-Foxcroft Chief of Police conspired "in an attempt to renew criminal charges against [him]," responding that "there is no allegation that criminal charges were actually filed." *Id.* (citing *Am. Compl.* ¶¶ 50-52). Defendants say that Plaintiffs similarly allege Selectman Hutchins's decision to pursue a contempt motion in connection with his protection from harassment order constituted retaliation for the MHRC complaint but respond that Selectman Hutchins's decision to pursue contempt "was not frivolous and should not be viewed as retaliatory." *Id.* (citing *Am. Compl.* ¶ 57). Defendants identify a second incident on March 23, 2023, when Mr. Olszewski

36

attended a Select Board meeting and, after being asked to abide by the five-minute public comment rule, alleged that a Select Board member said the Plaintiff was threatening her and that she would sue him. *Id.* (citing *Am. Compl.* ¶ 56). Defendants conclude this second allegation "is simply not enough to state a claim for retaliation under the MHRA." *Id.*

### 4.    Counts Six, Seven, and Eight: Maine Tort Claims

Defendants next address Plaintiffs' three tort claims, categorizing their responses with respect to particular parties and, for Selectman Hutchins, by each count.

### a.    The Town

First, they argue the Town holds sovereign immunity from all counts seeking damages pursuant to the Maine Tort Claims Act (MTCA), and there is no applicable exception to immunity in 14 M.R.S. § 8104-A. *Id.* at 15-16 (citing 14 M.R.S. §§ 8103(1), 8104-A; *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 8, 145 A.3d 1030).

### b.    Selectman Hutchins

Turning to Selectman Hutchins, Defendants argue that the MTCA requires a plaintiff to file a written notice of claim setting forth specific information relating to the alleged tort within 365 days after any claim or cause of action accrues. *Id.* at 16 (citing 14 M.R.S. § 8107(1)). While the amended complaint says "Plaintiff also sent Notic[e] of Tort Claim to Hutchins and the Town of Dover-Foxcroft," Defendants argue it contains no allegation of any facts to establish that the notices were sent in

accordance with the time or substance requirements of the MTCA. *Id.* (quoting *Am. Compl.* ¶ 49). Defendants argue "[f]ailure to plead compliance with the [MTCA] is a valid ground[] for dismissal of a tort claim" and submit Counts Six, Seven, and Eight warrant dismissal as to both Defendants on this basis. *Id.* (citing *Porter v. Phibrick-Gates*, 2000 ME 35, ¶ 4, 745 A.2d 996).

In the alternative, if the Court does not dismiss the tort claims on this basis, Defendants contend the same claims still warrant dismissal as against Selectman Hutchins for failure to plead facts sufficient to state a claim for relief. *Id.* at 17.

### i. Count Six: Intentional Infliction of Emotional Distress

Defendants argue for the dismissal of the Plaintiffs' intentional infliction of emotional distress claim. *Id.* at 18. To state a claim of intentional infliction of emotional distress, Defendants say, Mr. Olszewski must adequately allege that: (1) Selectman Hutchins engaged in conduct that intentionally or recklessly caused severe emotional distress, (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable, and (3) the plaintiff suffered severe emotional distress as a result of the Selectman Hutchins's conduct. *Id.* at 18 (citing *Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707). Emphasizing this high legal bar for relief, Defendants argue Selectman Hutchins's March 19, 2022 email to Town officials regarding the Plaintiff, and his June 10, 2022 email to Mr. Olszewski, are "insufficient as a matter of law to meet the requirements of an intentional infliction of emotional distress claim" and must be

dismissed. *Id.* at 19 (citing *Am. Compl.* ¶¶ 32-33, 93-94; *Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210) (case citation amended).

### ii.    Count Eight: Defamation and Invasion of Privacy[10]

#### aa.    Defamation

To state a claim of defamation under Maine law, Defendants report Mr. Olszewski must allege: (1) Defendants made a false statement about him; (2) that was published to a third person; (3) the Defendants knew the statement was false or made the statement with reckless disregard for whether it was false; and (4) publication of the false statement caused specific harm to the Plaintiff. *Id.* at 17 (citing *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083; *Schoff v. York Cnty.*, 2000 ME 205, ¶ 9, 761 A.2d 869) (citations amended). Here, Defendants observe that Plaintiffs' defamation claim against Selectman Hutchins arises from the selectman's March 19, 2022 email to Town officials, communicating that Mr. Olszewski was "unstable and clearly showing himself as a threat, a danger and a threat to the community." *Id.* (quoting *Am. Compl.* ¶ 15). Defendants argue "[t]here are no allegations to support that these statements were false (other than a conclusory allegation stating as much), that it was published outside of Defendants, that Mr. Hutchins[] knew the statement was false or made it with reckless disregard, or that it caused specific harm to Mr. Olszewski." *Id.* Further, they say Mr. Olszewski himself alleges he exhibited "heightened irritability, frustration, agitation when

---

[10]    Defendants' analysis of Count Seven is dependent on their analysis of Count Eight; the Court follows the Defendants' approach and addresses Count Eight before Count Seven.

interacting in certain situations" as a result of his disability.  *Id.* at 17-18 (citing *Am. Compl.* ¶ 10).

Finally, Defendants content that Mr. Olszewski himself alleges that Selectman Hutchins "at all times material hereto, has in his electronic mail and internet activities, expressed his opinion" and that the Town was aware of the selectman's "expression of opinion."  *Id.* at 18 (quoting *Am. Compl.* ¶¶ 6-7).  Defendants argue the Plaintiffs' allegations that these were opinions is fatal to the defamation claim.  *Id.*

### bb.    Invasion of Privacy

To state a claim for invasion of privacy, Defendants say, a plaintiff must allege: (1) defendants publicized matter concerning the plaintiff, (2) it placed plaintiff before the public in a false light that would be highly offensive to a reasonable person, and (3) defendants knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.  *Id.* (citing *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189) (citation amended).

Defendants argue Mr. Olszewski has failed to plead a plausible claim of invasion of privacy because Selectman Hutchins's email to Town officials about his safety concerns "was arguably not published and, in any event, there is no plausible inference that such a concern shared with Town officials would be highly offensive to a reasonable person or was made with reckless disregard."  *Id.*

### iii.    Count Seven: Negligent Infliction of Emotional Distress

Defendants say that a plaintiff complaining of negligent infliction of emotional distress "must first prove that the defendant violated a duty of care owed to the

plaintiff." *Id.* at 17 (citing *LaMarche v. Metro. Life Ins. Co.*, Civ. No. 01-123-B-S, 2002 U.S. Dist. LEXIS 9089, at *5-6 (D. Me. May 14, 2002) (citation amended).  Maine recognizes a duty of care in only three specific instances, Defendants say: bystander liability, a special relationship, and when the actor has committed another tort. *Id.* (citing *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18) (citation amended). Defendants claim a duty would only arise in the instant case if Selectman Hutchins committed another tort. *Id.*  Because they conclude Mr. Olszewski has not pleaded a plausible claim for defamation or invasion of privacy as explained above, they argue he cannot establish a duty based on the commission of another tort and, thus, his negligent infliction of emotional distress claim must fail. *Id.* at 18.

### 5.    The Request for a Preliminary Injunction

Defendants briefly respond to Plaintiffs' request for a preliminary injunction, arguing "[b]ased on the [amended complaint], and without a motion establishing the four elements necessary for a preliminary injunction or a supporting affidavit, the request for preliminary injunction must be denied." *Id.* at 19 (citing FED. R. CIV. P. 65; *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015)).

In conclusion, Defendants urge the Court to dismiss the amended complaint in its entirety. *Id.*

### C.    The Plaintiffs' Opposition

Plaintiffs oppose the motion to dismiss, contending "each Count of the Amended Complaint, with the exception of Negligence Count seven, presents a

factual and legally plausible claim." *Pls.' Opp'n* at 3. Their opposition later clarifies that they withdraw Count Seven. *Id.* at 19.

### 1.    Count One: 42 U.S.C. § 1983

Responding to the Defendants' argument that 42 U.S.C. § 1983 does not provide a stand-alone claim to relief, Plaintiffs clarify that they did not intend Count One (which only seeks relief pursuant to 42 U.S.C. § 1983) to be read in isolation; rather, they meant for Count One to provide "the vehicle for bringing constitutional claims" raised in Counts Two through Six. *Id.* at 4. They explain, "[s]pecifically, the Amended Complaint avers denial of and retaliation for [Mr. Olszewski's] exercise of the Constitutional right to speak, petition and to participate in governmental business (First Amendment . . .), also denial of his right to be free of unlawful outrageous and intimidating governmental coercion (Maine Civil Rights Act, Constitution and to be free of M.H.R.C. Discrimination)." *Id.* at 4 (first citing *Am. Compl.* ¶ 62, then citing *Am. Compl.* Counts Two through Six).

Plaintiffs proceed to respond to specific arguments raised within the motion to dismiss as to Count One.

### a.    The Town's Sovereign Immunity

Addressing first the defense that the Town enjoys sovereign immunity under *Monell*, Plaintiffs proffer that "Defendants' argument neglects the determinative fact that the Dover[-]Foxcroft Select Board and the individual Select Board members, unlike the agents in *Monell*, constitute the highest level of policy making and executive administration in Dover[-]Foxcroft," claiming that 30-A M.R.S. § 2635

42

empowers the Select Board "to deal with exactly the sort of issues to which Defendant Hutchins[], individually and evidently on behalf of the Board as a whole, was evidently assigned to take on in assisting Plaintiff." *Id.* at 4-5 (citing *Monell*, 436 U.S. at 691, 694; *Am. Compl.* ¶¶ 13-17; 30-A M.R.S. § 2635).  In support, Plaintiffs quote the *Monell* Court's holding that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." *Id.* at 5 (quoting *Monell*, 436 U.S. at 694).  They say this holding governs the instant case because the Dover-Foxcroft Select Board is, by statute, authorized to "exercise all administrative and executive powers of the Town," *id.* (quoting 30-A M.R.S. § 2635), and because the Board said that Defendant Hutchins's "social media posts can be seen as a reflection of the opinion of Selectmen's Board as a whole." *Id.* (quoting *Am. Compl.* ¶ 14).

### b.    Retaliation Claim

Plaintiffs turn to the Defendants' contention that the amended complaint's factual allegations do not support the claim that Defendants took action against Mr. Olszewski because of a particular viewpoint he expressed.  *Id.* at 6 (citing *Def.'s Mot.* at 7).  Plaintiffs challenge that "there is an immediate sequence of time ([*Am. Compl.*] ¶[¶][ ]20-46, 49-54), plus both direct and circumstantial evidence of [] cause and effect between Plaintiff's exercise of First Amendment rights and Town retaliation." *Id.* "Motivation to suppress [Mr.] Olszewski on the part of the Board is entirely plausible," they conclude, because "[Mr.] Olszewski could not be shut up and was

acting against the interests of the Select Board, which held the purse strings . . . [and Selectman] Hutchins held personal animus against Plaintiff as a member of the class of disabled persons." *Id.* (citing 30-A M.R.S. § 2635; *Am. Compl.* ¶¶ 24, 32-33).

Plaintiffs argue further that "[p]rior to Defendants' actions," Mr. Olszewski petitioned the Town about the "use of gravel materials full of machine gun bullet lead on the roads leading to lead contamination in the town water," "impassible road conditions that restrict emergency services and regular travel," investigations of alleged HIPAA violations, and investigations of "Town money misspent." *Id.* at 6-7 (citing *Am. Compl.* ¶¶ 11, 13, 19, 23, 53). Given this sequencing, Plaintiffs argue "[t]here is an unmistakable plausible inference of retaliation in the Town's actions toward Plaintiff afterward." *Id.* at 7.

### c.    Alleged Constitutional Violations

Next, Plaintiffs say the Defendants misread the constitutional violations they bring pursuant to 42 U.S.C. § 1983: "Plaintiffs, contrary to Defendants' dismissive statement . . . , rely on rights from the First, Fourth, Fifth[,] and[] Fourteenth Amendments, the Maine Constitution and the Maine Civil Rights Act, and Maine Hu[m]an Rights Act. Plaintiff[s] do[] not rely solely on the First Amendment." *Id.*

Regarding their Fourth and Fourteenth Amendment claims, Plaintiffs say simply that the Fourth Amendment "safeguard[s] the privacy and security of individuals against arbitrary invasions by government officials," and "[w]hile a plausible stand[]alone claim may be limited under the Fourth Amendment to require averment of a seizure, the Supreme Court has not given a comprehensive list of

elements which may state a Fourteenth Amendment claim." *Id.* (first quoting *Camara v. Mun Ct. of City of San Francisco*, 387 U.S. 523 (1967) (quotation and citation corrected), then citing *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (citation corrected)). Turning to the instant case, they assert "acts as horrendous as the coercive threats of Hutchins on [their] face do support such a 14th Amendment substantive due process claim, and . . . fall outside the mantle of qualified immunity." *Id.* at 7-8 (citing *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015) (citation corrected)).

Turning to the Maine Constitution, Plaintiffs assert "[t]he civil right to be free from deprivation of life and liberty by intimidation by petty dictators or autocrats posing as Government officials is also a fundamental right secured by the Maine Constitution, Article One, Sections 1[],[ ]4[], 6A, [and] 15 and the Maine Civil Rights Act, 5 M.R.S.[] §§ 4681[](1),[ ](3),[ ](5), 4684-A." *Id.* at 8 (citing *Varney v. Richards*, No. CV-14-164, 2016 Me. Super. LEXIS 154 (citation corrected)).

### 2.    Count Two: Constitutional Violations and Maine Civil Rights Act

Reasserting that Count Two "pleads a claim of violation of the U.S. Constitution, [t]he Maine Constitution[,] and [t]he Maine Civil Rights Act, and provides factual basis and allegations of retaliation for the exercise of First and Fourteenth Amendment rights and retaliation for petitioning the government for the redress of grievances," Plaintiffs urge the Court to reject the Defendants' motion to dismiss as to this count. Their opposition focuses on the Defendants' assertion of qualified immunity.

Plaintiffs argue, first, that Defendants' assertion of qualified immunity is inappropriate without a showing from the Defendants "that the targeting of [Mr.] Olszewski because he was weak and disabled, was not part of his self[-]professed successful history of targeting other disabled [individuals] . . ., and also, that Hutchins did not disfavor disabled individuals." *Id.* at 10-11 (citing *Am. Compl.* ¶¶ 24, 32-33).

Second, Plaintiffs "question[] the applicability of this Judge[-]made doctrine of immunity at all to the facts of this case." *Id.* at 11. They opine that, unlike this case, the doctrine "has found it[]s primary support in protecting police officers from liability in the context of Fourth Amendment cases for necessarily split-second . . . decisions," and direct the Court to a case from the Southern District of Mississippi denying qualified immunity to a police officer. *Id.* at 12 (citing *Green v. Thomas*, 734 F. Supp. 3d 532, 565 (S.D. Miss. 2024) (citation corrected)). Plaintiffs "submit, without limitation[,] that the rational[e] of[] *Green v[.] Thomas* . . . requires denial of Defendants' Motion." *Id.* at 19.

Third, Plaintiffs urge the Court to not credit Defendants' immunity arguments because "[t]he contention is entirely plausible that failure of the Board to act when faced with the egregious nature of Hutchins'[s] coercive threats toward [Mr. Olszewski] and further the Protection Order reflected a course of action by the Board either acting as a whole or by authority delegated to Hutchins which violated Plaintiff's basic rights." *Id.* at 12 (citing *Vullo*, 602 U.S. at 190, 198 (citation

corrected)).  By "basic rights," Plaintiffs clarify that they are referring to First Amendment rights and Mr. Olszewski's right "to be free from coercion." *Id.* at 13.

In sum, Plaintiffs argue they have alleged "sufficient facts to show that [they] ha[ve] a plausible entitlement to relief" on Count Two.  *Id.* (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (alteration made by Court)).

### 3.    Count Three: Maine Human Rights Act

Plaintiffs argue that Mr. Olszewski has "a viable claim under the Maine Human Rights Act, 5 M.H.R.A. §[] 4551 et seq[.] for failure to provide disability accommodations and auxiliary aids." *Id.* at 14.  They contend that "[t]he burden was on the Board to make the accommodations," and "[t]he Public Accommodations law, 5 [M.R.S.] §[ ]4592(1)(B) does not require the disabled [individual] to ask the public accommodation for the auxiliary aids that they need in order to have equal access to public accommodation; but the law does state that the modifications in policies, practices, and procedures, must be made when it is necessary in affording the services to the disabled." *Id.*

Here, Plaintiffs argue the Town knew of Mr. Olszewski's need for reasonable accommodation because of his "prior relations with the Town," and thus "the Board was certainly in a position . . . to accommodate Olszewski." *Id.* (citing *Am. Compl.* ¶¶ 11-13, 15, 18).  Based on the foregoing, they assert Defendants failed to provide him with a public accommodation as the MHRA requires by refusing him access to the Town Office and prohibiting recording of Town Office interactions.  *Id.* at 15.

47

### 4.    Count Four: Maine Human Rights Act

Responding to the Defendants' assertion that the Court should dismiss Count Four as predicated on only the definition section of the MHRA, Plaintiffs reassert their arguments from the amended complaint that 5 M.R.S. § 4553(2) defines discrimination to "include[], without limitation, segregate, separate or subject to harassment," and claim that Mr. Olszsewski faced harassment under the terms of this definition when he sought "opportunity for every individual to have equal access to places of public accommodation." *Id.* (first quoting 5 M.R.S. § 4553(2), then citing *Am. Compl.* ¶¶ 20, 24-25, 29, 31-34, 36, 39, 42, 50). Plaintiffs argue their amended complaint "further supports a reasonable inference that the failure to accommodate was based on the pretext made in Hutchins['s] allegations that Plaintiff was a direct threat to the health or safety of others . . . thus arguably not entitled to accommodation by the Board." *Id.* at 16 (citing *Am. Compl.* ¶ 15).

### 5.    Count Five: Maine Human Rights Act

Plaintiffs reallege that their amended complaint contains sufficient facts to allow the reasonable inference that the Defendants retaliated against Mr. Olszewski for his filing of a MHRA complaint in March 2023 by attempting "to renew frivolous criminal charges against Plaintiff . . . , as a result subjecting [Mr. Olszewski] to a meritless retaliatory contempt proceeding," and the decision to stop allowing constituents to record in the Town Office. *Id.* Plaintiffs aver the first allegedly retaliatory act was against Mr. Olszewski individually and the second act was "an act

against the class of disabled people to which Plaintiff belonged." *Id.* (citing *Am. Compl.* ¶ 50).

### 6. Count Six: Intentional Infliction of Emotional Distress Against Barry Hutchins

Plaintiffs reiterate that Selectman Hutchins tortiously and intentionally inflicted emotional distress on Mr. Olszewski, insisting "[i]t simply is implausible that any governmental official should be allowed to threaten to blow a constituent's brains out, let alone to provoke a constituent who suffered disability and whom he thought presented a risk to be violent did everything he could to provoke violence." *Id.* at 17 (citing *Am. Compl.* ¶ 29).

While the amended complaint brought Count Six solely against Selectman Hutchins, the Plaintiffs' opposition says "[i]t is also entirely plausible that the Town[']s failure to control Hutchins reflected a common intent with Hutchins to stifle Mr. Olszewski's criticism so as not to have to accommodate his complaints." *Id.*

### 7. Count Eight: Defamation and Invasion of Privacy

Turning to Count Eight, Plaintiffs contend they have pleaded "a plausible case for false light privacy defamation." *Id.*

First, they reject Defendants' contention that Selectman Hutchins's statements regarding Mr. Olszewski were not defamatory because they were both true and his opinion, insisting these statements were "not idle opinion but verbal action and serious attempts to trigger action against Plaintiff, all of which were in reckless disregard of the impact on Plaintiff and his family." *Id.* at 17-18 (citing *Am. Compl.* ¶¶ 15, 103-04, 106).

Second, Plaintiffs contend Defendants' assertion that Selectman Hutchins's statements were not published "is also incorrect," averring publication was made to the Select Board and Town Office and "[f]urther publication occurred . . . when [i]n self[-]defense Plaintiff brought Hutchins'[s] false claims to the attention of the Board." *Id.* at 18 (citing *Am. Compl.* ¶ 53).

Third, they reject Defendants' claim that no one would take serious offense to publication characterizing themselves as "a danger to the community," and relatedly assert that the Court at this stage must accept Plaintiffs' allegation that Mr. Olszewski, as a result of the publication, has met obloquy from the public. *Id.* (citing *Am. Compl.* ¶¶ 48(b), 103; *Garey v. Stanford Mgmt., LLC*, 2024 ME 46, 319 A.3d 1022 (case citation corrected)).

Finally, as to all tort claims brought in Counts Six and Eight, Plaintiffs inform the Court that they attached the notice of their intent to file a MTCA claim, sent to Selectman Hutchins and the Town, to their opposition to the motion to dismiss. *Id.* at 18-19 (citing *id.*, Attach. 1, *Notice to Governmental Entity of Intent to File Tort Claim Pursuant to Title 14 M.R.S.A. §[ ]8107 and Notice of Claim 14 M.R.S.A. § 1602*).

### 8. Preliminary Injunction

Plaintiffs briefly say "at this time [they] do not press but also do not waive Motion for Injunctive Relief." *Id.* at 19.

### D.    The Defendants' Joint Reply[11]

Defendants maintain that the Court should grant their motion to dismiss as to all counts raised in the amended complaint.  *Defs.' Reply* at 1.

#### 1.    Counts One and Two

Defendants reassert their argument that Counts One and Two should be dismissed because Plaintiffs have failed to sufficiently plead any constitutional violations and, in the alternative, because Plaintiffs have not established municipal liability under 42 U.S.C. § 1983.  *Id.*

Addressing Plaintiffs' Fourteenth Amendment substantive due process claim, raised for the first time in the opposition to the motion to dismiss, Defendants argue, first, that a substantive due process argument was not raised in the amended complaint and, further, that the factual allegations in the amended complaint fail to plausibly establish that Mr. Olszewski "suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that socks the conscience."  *Id.* at 2 (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)).

Turning to the Fourth Amendment claim, Defendants assert that Plaintiffs also bring this claim for the first time in their opposition and thus "any supposed Fourth Amendment violation cannot be used to avoid dismissal of Counts I and II."  *Id.*

---

[11]    Like the motion to dismiss, the Defendants' reply repeatedly misspells the Plaintiffs' last name as "Olzweski."  *See, generally, Defs.' Reply.*  As previously stated, the Court corrects all such misspellings in this order to "Olszewski."

51

Defendants concede that Plaintiffs raised their First Amendment claim in the amended complaint but argue the Court should nonetheless dismiss this claim on the merits because Plaintiffs fail to state a claim for viewpoint discrimination "for all of the reasons set forth in the Motion to Dismiss." *Id.* (citing *Mot. to Dismiss* at 53-54, 57-58). Neither Defendant prohibited the public discussion of an entire topic, they maintain, and to the extent there was any limitation on Mr. Olszewski's speech, "it was minimal in that he could not have direct or indirect contact with Mr. Hutchins based on the protection from harassment order" and there remained "many other ways Plaintiff could express his views, or discuss topics, with the Town, including other members of the Select Board." *Id.* at 2-3 (citing *Mot. to Dismiss* at 54-55).

They also reassert that Plaintiffs' allegations cannot support municipal liability against the Town on the First Amendment claim pursuant to 42 U.S.C. § 1983. *Id.* at 3 (collecting cases). They again raise that the protection order against Mr. Olszewski was obtained only by Selectman Hutchins in his individual capacity. *Id.* at 4 (citing *Mot. to Dismiss* at 9 (citation corrected)).

Responding to Plaintiffs' contention that the Court should not recognize Selectman Hutchins's qualified immunity based on a capital murder case involving a police detective from the Southern District of Mississippi, Defendants maintain this "citation to the court's criticism of the legal doctrine of qualified immunity[] does not change the fact that the doctrine of qualified immunity is still good law" and argue Selectman Hutchins is entitled to qualified immunity in the instant case. *Id.* at 5 (citing *Green*, 734 F. Supp. 3d 532).

52

### 2.    Counts Three, Four, and Five: Maine Human Rights Act Claims

First, Defendants point out that the Plaintiffs did not dispute their argument that individuals cannot be held liable under the MHRA and, thus, maintain Counts Three, Four, and Five must be dismissed against Selectman Hutchins. *Id.*

Second, Defendants dispute Plaintiffs' contention that he was not required to ask the Town for a public accommodation. *Id.* Defendants argue "[t]his is incorrect as a matter of law," and urge the Court to consider caselaw interpreting an analogous federal statute, which has required a plaintiff to request a reasonable modification. *Id.* (citing *Doyle v. Dep't of Hum. Servs.*, 2003 ME 61, ¶ 14 n.7, 824 A.2d 48) (citation amended); *Dudley*, 333 F.3d at 307). Defendants also proffer that the MHRC requires a plaintiff to prove that he requested a reasonable accommodation from a place of public accommodation to decide in his favor on a public accommodation discrimination claim. *Id.* at 5-6 (citing Me. Hum. Rts. Comm'n, Investigator's Rep. PA          12-0004          at          3-4          (Nov.          15,          2013), https://www.maine.gov/mhrc/sites/maine.gov.mhrc/files/pdfs/PA12-0004_Redacted.pdf). Defendants contend that, here, Mr. Olszewski did not request a reasonable accommodation from the Town and, therefore, cannot prevail on his claim of disability-based discrimination under the MHRA. *Id.* at 6. They also restate the argument raised in their motion to dismiss that this claim is unsuccessful because it was the protection order, and not disability-based discrimination, which temporarily prevented him from visiting the Town Office. *Id.*

### 3.    Counts Six and Eight: Intentional Infliction of Emotional Distress, Defamation, and Invasion of Privacy

Defendants next assert that Plaintiffs have failed to state a viable tort claim for intentional infliction of emotional distress, defamation, or invasion of privacy.  *Id.* As to the Town, Defendants first reassert their argument that the Court must dismiss the tort claims against the Town because the MTCA accords sovereign immunity to municipalities and no exception applies here.  *Id.*

#### a.    Defamation

As to Selectman Hutchins, Defendants restate that his communications with and regarding Mr. Olszewski were mere opinions, and, further, that these statements were neither false nor made with reckless disregard to their falsity because they were in fact truthful.  *Id.* (citing *Am. Compl.* ¶¶ 6-7, 10, 14-15; *comparing Am. Compl.* ¶ 10 (Mr. Olszewski stated his conduct is characterized by "heightened irritability, frustration, agitation when interacting in certain situations") *with id.* ¶ 15 (Selectman Hutchins's email to Town officials that Mr. Olszewski was "unstable and clearly showing himself as a threat, a danger and threat to the community")).

#### b.    Intentional Infliction of Emotional Distress

Defendants reassert that the claim for intentional infliction of emotional distress is ill-conceived as to Selectman Hutchins because the allegations in the amended complaint "are not so extreme and outrageous as to exceed all possible bounds of decency that they must be regarded as atrocious and utterly intolerable, as required by Maine law."  *Id.* at 7 (citing *Lyman v. Huber*, 2010 ME 139, ¶ 16).

### 4. Plaintiff Julie Olszewski

Finally, Defendants urge the Court to dismiss all claims raised by Ms. Olszewski seeking damages for loss of consortium. *Id.* Alternatively, they argue that any claim for loss of consortium "must be related to a mental or physical injury suffered by Mr. Olszewski," and "[t]hus, at the very least, any claim for loss of consortium arising out of Counts I through V . . . must be dismissed." *Id.* (citing *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 622 (Me. 1996)).

Defendants conclude that all claims raised in Plaintiffs' amended complaint warrant dismissal with prejudice and without costs pursuant to Rule 12(b)(6). *Id.*

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55);

*Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V. DISCUSSION

As a preliminary matter, the Court must clarify the scope of the counts currently before it. Count One of the amended complaint seeks relief pursuant to 42 U.S.C. § 1983, while Count Two raises violations of the First and Fourteenth Amendments to the U.S. Constitution and Article One, Section 6-A of the Maine Constitution, and also briefly refers to the MCRA. *Id.* ¶ 69. Counts Three to Eight allege state-law violations of the MHRA and the MTCA.

In response to the motion to dismiss, which correctly observed that § 1983 is not a stand-alone claim, Plaintiffs argue that they intended Count One to provide "the vehicle for bringing [the] constitutional claims" raised in Counts Two through Six. *Pls.' Opp'n* at 4. However, Count Two is the only claim in that list raising a federal cause of action, and 42 U.S.C. § 1983 provides a civil cause of action against any person who, under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities secured by the federal Constitution and federal laws. *See* 42 U.S.C. § 1983. Thus, by its plain language, § 1983 affords a pathway to relief for violations of federally protected rights alone; the Court therefore addresses the federal constitutional violations raised in Count Two alongside 42 U.S.C. § 1983, and then considers the state-law claims raised in Counts Two through Eight independently of that federal civil cause of action.

### A.    Federal Claims Raised in Counts One and Two

#### 1.    42 U.S.C. § 1983

As noted, 42 U.S.C. § 1983 provides a civil cause of action against any person who, under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities secured by the Federal Constitution and laws. Municipalities and local governments are "persons" within the meaning of § 1983. *Monell*, 436 U.S. at 690; *accord Fincher v. Town of Brookline*, 26 F.4th 479, 485 (1st Cir. 2022).

Therefore, municipalities and local governments "could be liable in certain cases when its agents and employees commit[] constitutional violations." *Young v.*

*City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005).  However, municipalities and local governments cannot be held liable merely under a theory of respondeat superior.  *Id.* (citing *Monell*, 436 U.S. at 691-95).  "Instead, it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be liable."  *Id.* (citing *Monell*, 436 U.S. at 694).

In other words, assessing liability against the Town "requires two basic elements: first, that the Plaintiffs' harm was caused by a constitutional violation, and second, that the [municipality] be responsible for that violation . . .."  *Id.* at 25-26 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  Assessing liability against Selectman Hutchins pursuant to § 1983 requires establishing that he committed a constitutional violation while acting under color of state law.

### 2.    Federal Constitutional Violations

### a.    Scope of Alleged Constitutional Violations

Before considering whether the Plaintiffs have plausibly pleaded a constitutional violation, the Court observes that the Defendants' reply correctly points out that the Plaintiffs' opposition to the motion to dismiss introduces numerous legal theories and factual allegations not in the amended complaint.  The most glaring is that the amended complaint raises federal constitutional violations pursuant only to the First and Fourteenth Amendments, whereas the opposition adds new claims under the Fourth and Fifth Amendments.  The Defendants are correct that the Plaintiffs "cannot, of course, add allegations or claims by furnishing them for the first

time in an opposition to a motion to dismiss." *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss")).  In line with this well-established precedent, the Court addresses the federal claims of First and Fourteenth Amendment violations as pleaded by Plaintiffs in their amended complaint, not the Fourth and Fifth Amendment claims appearing only in the opposition.

### b.    First Amendment Retaliation Claim

The amended complaint is not clearly pleaded, an issue exacerbated by the Plaintiffs' failure to cite any caselaw in support of their positions in that filing.  The crux of the Plaintiffs' First Amendment retaliation claim as raised in Counts One and Two of the amended complaint appears to be that Mr. Olszewski voiced concerns to the Town Office and its employees regarding local issues such as road repair, lead poisoning, and government expenditure, *see, e.g., Am. Compl.* ¶¶ 11, 13, 17-18, 23, 53, 67, and in response to this protected activity, Mr. Olszewski alleges that Selectman Hutchins, in his individual and official capacity, retaliated in various ways, including by threatening to have Mr. Olszewski jailed, refusing to give Mr. Olszewski certain emails he requested as part of his MHRC complaint, sending him aggressive e-mails and messages through online platforms, obtaining a protection from harassment order, and imposing a "no recording" policy at the Town Office. *Am. Compl.* ¶¶ 11, 20, 21, 25, 41, 45, 47, 58, 59, 64, 68, 69.  Plaintiffs argue, "[a]s a direct

59

and proximate result of the [Defendants' conduct], Plaintiffs . . . have been denied rights to freedom of expression and to petition the government." *Am. Compl.* ¶ 65.

The Court construes this as an allegation that Defendants retaliated against Mr. Olszewski for exercising his First Amendment rights, through various actions intended to deter, stop, and chill the Plaintiff's speech.

"As a general statement, '[c]laims of retaliation for the exercise of First Amendment rights are cognizable under [42 U.S.C.] § 1983.'" *Najas Realty, LLC v. Seekonk Water Dist.*, 68 F. Supp. 3d 246, 254 (quoting *Powell v. Alexander*, 391 F.3d 1, 16 (1st Cir. 2004)). The First Amendment protects freedom of speech, as well as "the right to petition all branches of the government, including the courts." *Powell*, 391 F.3d at 16. "To make out a First Amendment retaliation claim, the plaintiff must show that his conduct was in fact constitutionally protected," and that there was "a causal connection between the allegedly protected speech and the allegedly retaliatory response." *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) (internal quotations and citations omitted). "Causation is established by showing that the plaintiff's conduct was a 'substantial' or 'motivating' factor in bringing about the allegedly retaliatory action.'" *Id.* The Supreme Court has further interpreted the causation prong to mean that the alleged "retaliatory animus" was the "but-for" cause of the plaintiff's injuries; in other words, "the adverse action against [him] would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006)). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory

60

grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* at 398 (citing *Hartman*, 547 U.S. at 256).

Assuming without deciding that Mr. Olszewski's raising of local grievances to the Town Board was a protected activity under the First Amendment, and thus satisfies the first prong for a First Amendment retaliation claim, the Court determines the Plaintiffs' First Amendment retaliation claim must fail on causation. Simply put, the Plaintiffs have not plausibly pleaded that either Defendant's "retaliatory animus" was the "but-for" cause of Mr. Olszewski's injuries, "meaning that the adverse action against [him] would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399.

Here, Plaintiffs appear to argue the Defendants' retaliatory animus is evidenced by Selectman Hutchins's threats to have Mr. Olszewski jailed, refusal to provide certain emails the Plaintiff requested as part of his MHRC complaint, sending Mr. Olszewski aggressive e-mails and messages through online platforms, obtaining a protection from harassment order, and the imposition of a "no recording" policy at the Town Office. *Am. Compl.* ¶¶ 11, 20, 21, 25, 41, 45, 47, 58, 59, 64, 68, 69.

Recognizing the "problem of causation" in retaliatory prosecution claims, the Supreme Court in *Hartman* adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge. *Hartman*, 547 U.S. at 265-66; *see also Nieves*, 587 U.S. at 400 (applying *Hartman*). "Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce

the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.* at 261. Mr. Olszewski has failed to meet this showing regarding his allegations that the threats of arrest and prosecution constitute retaliatory animus. To the contrary, the Plaintiff himself alleges that an impartial judge granted Selectman Hutchins a protection from harassment order, *Am. Compl.* ¶¶ 45, 46, which establishes probable cause in the Defendants' favor regarding his contemplated prosecution and arrest.

Mr. Olszewski also argues the Defendants' retaliatory animus is evidenced by threatening emails and messages he received through social media platforms. The Court readily concedes that the content of these messages, as alleged by Mr. Olszewski in the amended complaint, is, in no uncertain terms, distasteful and unbecoming of a municipal leader. *See, e.g., Am. Compl.* ¶ 24 ("Let me make this crystal clear to you sir. I have told you how to go about getting all information that you want . . . With regard to your doctors or any other person that is reading these emails. I DON'T GIVE A SHIT AS TO WHAT THEIR OPINION IS SIR . . .. For the last time Sir. Do not sent me another means of communications or I will pursue criminal charges against you") (emphasis in original).

However, Mr. Olszewski has again failed to establish that Selectman Hutchins's retaliatory tone was proximately caused by Mr. Olszewski's protected activity. Indeed, the Plaintiffs' amended complaint alleges Selectman Hutchins "complained (falsely) . . . that Plaintiff had sent him over 400 threatening and

aggressive emails." *Am. Compl.* ¶ 18.  He also concedes Selectman Hutchins received a protection from harassment order against the Plaintiff.  *Id.* ¶¶ 45, 46.

Based on these facts, the Court cannot conclude the Plaintiff has established "retaliatory animus" was the "but-for cause" of his injuries.  *Nieves*, 587 U.S. at 399; *see also id.* at 398 ("If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim").  Even taking Mr. Olszewski at his word that the selectman's complaints of receipt of 400 threatening emails was false, the no-contact order provides an obvious "non-retaliatory ground[]."  *See id.* at 398.

The Court now turns to Plaintiffs' final allegation of retaliatory animus: the no-recording policy.  Simply put, the Plaintiffs have not argued or plausibly alleged facts which would support the conclusion that the town of Dover-Foxcroft instituted this Town-wide policy as retaliation against Mr. Olszewski's exercise of his First Amendment rights.  In fact, the Plaintiffs allege "the Town has resolved that the Town Office is not a public forum and has disallowed private audio and video recording of any Town business in the Town Office."  *Am. Compl.* ¶ 58.  It appears that the but-for cause of the policy change was not retaliation against Mr. Olszewski, but an alleged determination that the Town Office is not a public forum.[12]

---

[12]    This allegation piqued the Court's interest and it takes a moment to clarify the state of the law on this issue.  There are three types of public property for First Amendment purposes: traditional public forums, designated public forums, and public property which is not a forum either by tradition or designation.  *Perry Educ. Ass'n v. Petty Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983).  Traditional public forums "are streets and parks which 'have immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"  *Id.* at 45 (quoting *Hague v. CIO*, 307

Based on the foregoing, the Court concludes the Plaintiffs have not pleaded a constitutional violation of First Amendment retaliation containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Here, Plaintiffs claim of First Amendment retaliation fails to meet this bar. Their assertion of legal conclusions to the contrary does not, on its own, warrant denying the motion to dismiss, particularly in the glaring absence of any caselaw. *See García-Catalán*, 734 F.3d at 103 (in reviewing a complaint challenged with a motion to dismiss, "the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)'").

The Court proceeds to address whether Plaintiffs alleged a constitutional violation pursuant to the Fourteenth Amendment.

---

U.S. 496, 515 (1939). A designated public forum is "public property which the state has opened for use by the public as a place for expressive activity." *Id.* In both public forums and designated public forums, the government may enforce "[r]easonable time, place and manner regulations," but "a content-based prohibition[] must be narrowly drawn to effectuate a compelling state interest." *Id.* at 45-46; *see also Jones v. Town of Milo*, No. 09-CV-80-B-W, 2009 U.S. Dist. LEXIS 49311, at *39-40 (D. Me. June 5, 2009) ("Where access to a . . . public forum is at hand, a person may only be excluded when 'exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest'") (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

As to public property that has not been designated or recognized as a public forum, the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Greenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981). "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46.

Aside from the Plaintiffs' allegation that "the Town has resolved that the Town Office is not a public forum," *Am. Compl.* ¶ 58, the parties do not debate the Town Office's property designation for purposes of the First Amendment debate.

### c.    Fourteenth Amendment

As noted, Plaintiffs plead First Amendment retaliation and a Fourteenth Amendment violation in the same count and do not in the complaint raise separate legal arguments as to each constitutional violation.  At bottom, Plaintiffs appear to argue that Defendants violated their Fourteenth Amendment rights when Plaintiffs engaged in constitutionally protected activity and the Government retaliated against them.  Plaintiffs' opposition to the motion to dismiss clarifies they intended to bring a claim of substantive due process pursuant to the Fourteenth Amendment.  *Pls.' Opp'n* at 7-8.

Due process protections are both substantive and procedural.  Substantive due process "functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006); *accord Daniels v. Williams*, 474 U.S. 327, 331 (1986). Procedural due process guarantees that "before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Replay, Inc. v. Sec'y of Treas. of P.R.*, 778 F. Supp. 2d 207, 216 (D.P.R. 2011) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *accord Calderon–Garnier v. Rodriguez*, 578 F.3d 33, 38 (1st Cir. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976)).

To assert a valid substantive due process claim, plaintiffs "have to prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (emphasis in original).

As noted, the amended complaint does not mention due process, either substantive or procedural. In their opposition, Plaintiffs refer to their due process claim only in passing, to say: "Plaintiff submits that acts as horrendous as the coercive threats of Hutchins on [their] face do support such a 14th Amendment substantive due process claim, and . . . fall outside the mantle of qualified immunity," *id.*, and "Hutchins'[s] coercive threats . . . are an express violation of rights secured by the Fourteenth Amendment," *id.* at 8. Plaintiffs' reply provides no explanation of how their factual allegations support a substantive due process claim, nor which substantive due process right they allege the Defendants violated. Further, their amended complaint cites no caselaw and their opposition appends only one citation to the single sentence raising substantive due process, which comes from the Fifth Circuit and addresses fabricated evidence at a criminal trial. *Pls.' Opp'n* at 8 (citing *Cole*, 802 F.3d at 771). By the Court's read, *Cole* is inapposite to the present dispute, and the Plaintiffs do not explain otherwise. Without more, these references to the Fourteenth Amendment are conclusory legal allegations "which need not be credited." *García-Catalán*, 734 F.3d at 103.

"Despite the highly deferential reading . . . we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, . . . unsubstantiated

66

conclusions, or outright vituperation." *Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). A plaintiff "may not . . . rest on 'subjective characterizations' or conclusory descriptions of 'a general scenario which *could* be dominated by unpleaded facts.'" *Id.* at 53 (quoting *Dewey* v. *Univ. of N.H.,* 694 F.2d 1, 3 (1st Cir. 1982)) (emphasis added). "And though for pleading purposes the 'line between sufficient facts and insufficient conclusions "is often blurred,"' we nonetheless require that it be plotted." *Coyne v. Somerville*, 972 F.2d 444-45 (quoting *Correa-Martinez*, 903 F.2d at 53 (in turn quoting *Dartmouth Rev. v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir. 1989)). Here, "Plaintiff has failed to carry even this minimal burden." *Id.* at 445.

Having concluded the amended complaint does not allege a plausible constitutional violation under either the First or Fourteenth Amendment, the Court need not address whether the alleged constitutional violation took place under color of state law. 42 U.S.C. § 1983. The Court accordingly dismisses the federal claims raised in Counts One and Two of the amended complaint.

## B. State-Law Claims Raised in Counts Two through Eight

As the Court has determined the federal claims Plaintiffs raise pursuant to the First and Fourteenth Amendments warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the only remaining claims before the Court are brought under state law. The parties have advanced no allegations that there is diversity of citizenship, and the Court is independently aware of none. 28 U.S.C. § 1332. The Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over the

federal claims raised in Counts One and Two, and supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the state-law claims raised in Counts Two through Eight.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte." *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 (1st Cir. 2011). That is, issues of subject matter jurisdiction "can be raised sua sponte at any time" because they relate to the fundamental Article III limitations on federal courts. *McBee v. Delica Co.*, 417 F.3d 107, 127 (1st Cir. 2005).

Pursuant to 28 U.S.C. §1367(c) and *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims against Defendants. See *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). "As a general principle, the unfavorable disposition of a Plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Id.* (citing *Gibbs*, 383 U.S. at 725 ("If the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (citation amended) (affirming the dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed")). The First Circuit has held that "the exercise of supplemental jurisdiction in such circumstances is

68

wholly discretionary," but "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

After considering these factors, this Court follows well-established precedent and chooses to dismiss the remaining state-law claims without prejudice.[13]  *See id.; see also United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction.  They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects").  "The justification of this rule 'lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.'"  *Poole v. Newrez LLC*, No. 2:24-cv-00092-SDN, 2025 U.S. Dist. LEXIS 20270, at *12 (D. Me. Feb. 5, 2025) (quoting *Gibbs*, 383 U.S. at 726).  The dismissal of the Plaintiffs' federal lawsuit does not prevent them from reinitiating a lawsuit based on the state law claims in state court.

---

[13]    The First Circuit does not compel a district court to dismiss the pending state claims.  *See Rodriguez*, 57 F.3d at 1177 ("[T]his praxis is not compelled by a lack of judicial power . . . .  In an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims").  Here, however, once the federal law claims are dismissed, the Court concludes that it is appropriate to dismiss the state law claims without prejudice because the remaining claims potentially raise novel and complex issues of state law and the claims over which the Court has original jurisdiction have been dismissed.  *See* 28 U.S.C. § 1367(c); *see Crandall v. N. Light E. Me. Med. Ctr.*, No. 1:24-cv-00419-JAW, 2025 U.S. Dist. LEXIS 80733, at *6-7 (D. Me. Apr. 29, 2025).

### C.    Plaintiff Julie Olszewski

Ms. Olszewski's claims for loss of consortium do not lead the Court to a different conclusion.  There are no factual allegations relating to any harm done to her personally; she appears solely in the amended complaint in the damages sections, seeking redress for loss of consortium.  This is not enough to create federal jurisdiction over her claims.  "Loss of consortium relates to the 'loss of love, affection, care, services, companionship, society and consortium' from one's spouse," and requires the plaintiff "to show a separate and direct injury to his or her spouse." *Woodman v. United States*, 602 F. Supp. 3d 265, 295 (D.N.H. 2022).  The Plaintiffs have not alleged Ms. Olszewski suffered such a separate and direct injury, or argued that she experienced "loss of love, affection, care, services, companionship, society and consortium" from Mr. Olszewski.  *See id.*  There are no factual allegations in the amended complaint supporting such a conclusion, and the Court does not credit the Plaintiffs' conclusory legal allegations to the contrary.  *García-Catalán*, 734 F.3d at 103.

## VI.    THE MOTION FOR PRELIMINARY INJUNCTION

Having concluded the amended complaint warrants dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court does not address the motion for preliminary injunction Plaintiffs included within the same complaint.

## VII.    CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss with Incorporated Memorandum of Law (ECF No. 9) and accordingly DISMISSES without prejudice

Plaintiffs' First Amended Complaint Including Request for Declaratory and Injunctive Relief (ECF No. 5), inclusive of its request for a preliminary injunction.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of July, 2025.