UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT OLSZEWSKI, JR., et ux., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00209-JAW |
| | ) | |
| BARRY HUTCHINS, *individually and as* | ) | |
| *former selectman*, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR JUDICIAL RECUSAL**

I deny as non-meritorious the plaintiffs' motion for recusal, concluding that no objective, knowledgeable member of the public would find a reasonable basis for doubting my impartiality and that none of the specific grounds for recusal applies to this case.

## I.    BACKGROUND

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a lawsuit against Barry Hutchins, individually and as former selectman, and the town of Dover-Foxcroft, Maine (the town), alleging that Mr. Hutchins and the town (collectively, Defendants) violated their federal and state constitutional rights. *Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 1) (*Compl.*). More specifically, the Olszewskis claimed that Mr. Hutchins and the town violated Mr. Olszewski's rights under the First and Fourteenth Amendments to the United States Constitution, Article One, Section 6-A of the Maine Constitution, the Maine Human Rights Act, and the Maine Tort Claims Act by retaliating against him for

public advocacy. *Id.* at 9. Mr. Olszewski sought compensatory damages and a preliminary injunction, and Ms. Olszewski sought damages for loss of consortium. *Id.* at 10. On August 2, 2024, before the lawsuit had been served on the Defendants, the Olszewskis filed an amended complaint. *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 5) (*Am. Compl.*).

On August 5, 2024, Attorney Jeana M. McCormick of the law firm of Drummond Woodsum entered her appearance on behalf of each Defendant, *Notice of Appearance* (ECF No. 6), and on August 12, 2024, each Defendant waived service of process, *Waiver of Serv.* (ECF Nos. 7, 8). On October 2, 2024, the Defendants filed a motion to dismiss the amended complaint. *Defs.' Mot. to Dismiss* (ECF No. 9). On October 23, 2024, the Olszewskis filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13). On November 6, 2024, the Defendants filed a reply to the Plaintiffs' opposition. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).

On February 19, 2025, Chief Judge Lance Walker, who had been originally randomly assigned the case, issued an order of recusal. *Order of Recusal* (ECF No. 15). On the same day, the case was randomly assigned to me. On July 29, 2025, I issued a seventy-one-page order granting the Defendants' motion to dismiss the federal claims and dismissed without prejudice the supplemental state law claims, *Order on Mot. to Dismiss* (ECF No. 18) (*Dismissal Order*), and on the same day, a judgment of dismissal without prejudice was issued. *J. of Dismissal* (ECF No. 19).

On August 25, 2025, the Plaintiffs filed a motion for reconsideration and for leave to file an amended complaint. *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 and for Leave to Amend the First Am. Compl.* (ECF No. 20) (*Mot. to Recons.*). On September 15, 2025, the Defendants filed their opposition to the motion for reconsideration and motion to amend complaint. *Defs.' Opp'n to Pls.' Mot. for Reconsideration and for Leave to File Second Am. Compl.* (ECF No. 21). On September 28, 2025, the Plaintiffs filed their reply. *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons, and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22).

On November 12, 2025, Attorney Jeana M. McCormick moved to withdraw her appearance on behalf of the Defendants, *Mot. to Withdraw Appearance* (ECF No. 24), which the Magistrate Judge granted the next day. *Order* (ECF No. 25). On November 12, 2025, Attorney Oliver M. Walton of the law firm of Drummond Woodsum entered his appearance on behalf of the Defendants. *Notice of Appearance* (ECF No. 23).

On November 16, 2025, the Plaintiffs moved to disqualify Attorney Walton and the law firm of Drummond Woodsum as counsel for the Defendants. *Mot. to Disqualify Att'y Oliver Walton and Drummond Woodsum* (ECF No. 26). On December 5, 2025, the Defendants opposed the motion to disqualify. *Defs.' Opp'n to Pls.' Mot. to Disqualify* (ECF No. 28).

On December 2, 2025, the Plaintiffs moved for my recusal from this case. *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 27). On December 11,

2025, the Plaintiffs filed a corrected version of their recusal motion.  *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment*** (ECF No. 29) (bold in original entry) (*Pls.' Recusal Mot.*).  On December 23, 2025, the Defendants opposed the Plaintiffs' motion for my recusal.  *Defs.' Opp'n to Pls.' Mot. for Recusal* (ECF No. 30) (*Defs.' Recusal Opp'n*).  On December 28, 2025, the Plaintiffs filed their reply to Defendants' opposition.  *Pls.' Reply to Opp'n to Pls.' Mot. to Recuse Hon. Judge A. Woodcock (sic)* (ECF No. 31) (*Pls.' Recusal Reply*).

## II.    THE PARTIES' POSITIONS

### A.    The Plaintiffs' Motion

#### 1.    General Allegations

The Plaintiffs base their recusal motion on "the appearance of impropriety and actual conflict of interest arising from [my] familial relationship with [my] brother, Timothy Woodcock, a former partner in or equity owner in the Maine law firm of Eaton Peabody."  *Pls.' Recusal Mot.* at 1.  The Plaintiffs explain that the law firm of Eaton Peabody "had a long history of representing and regularly represented the Town of Dover-Foxcroft . . . in legal matters."  *Id.*  Mr. Olszewski alleges that "Eaton Peabody played a role in matters that concerned his complaints of violation of his civil rights by the Selectmen during 2022 and 2023."  *Id.* at 1-2.  Specifically, Mr. Olszewski says that Attorney Jonathan Pottle of Eaton Peabody responded to his request for town records on November 28, 2023.  *Id.* at 2.  The Plaintiffs assert that

Eaton Peabody conferred with Drummond Woodsum on matters relating to Mr. Olszewski's claims against the town going back as far as 2007. *Id.*

### 2. My Assignment to this Case

The Plaintiffs claim that my random assignment to this case on February 19, 2025 was inappropriate because I was "one of four other Judges (and probably more) available for assignment in the Maine District." *Id.* The Plaintiffs assert that "[t]he use of random assignment to Judge Woodcock is troubling where Judges of no ties of family or history of legal practice in or near Piscataquis County (*as opposed to Judge Woodcock, and Judge Walker who recused*) could at the very least prudentially have been assigned." *Id.* at 2-3 (emphasis in original). The Plaintiffs contend that the Court invited problems by "the assignment of a local to the Northern District" and should have assigned a judge who "did not have substantial ties in the Northern District." *Id.* at 3.

### 3. Timothy C. Woodcock, Eaton Peabody, Katahdin Law and the town of Dover-Foxcroft

The Plaintiffs next state that they "recently discovered, that Judge Woodcock's brother, Timothy Woodcock, is a partner or equity owner at Katahdin Law L.L.C. and was formerly a partner or equity owner at Eaton Peabody." *Id.* at 4. They allege that formerly Eaton Peabody and currently Katahdin Law, including Timothy Woodcock, "regularly represented and represent the Town of Dover-Foxcroft in a variety of legal matters, including but not limited to real-estate transactions, advising on legal compliance, drafting ordinances, and ensuring the community regulations comply with state and federal laws." *Id.* at 3-4. The Plaintiffs state that the relationship

5

between Eaton Peabody and Katahdin Law and the town of Dover-Foxcroft is "financially a significant and ongoing and professional and financial relationship between the law firm and the Defendant, the Town of Dover-Foxcroft." *Id.* at 4. They attach an exhibit that reflects payments from the town of Dover-Foxcroft to Eaton Peabody from 2017 through 2025. *Id.*, Attach. 1, *Email from Alsina Brenenstuhl, Town Manager, Dover-Foxcroft to Bob* (Dec. 1, 2025) (*Brenenstuhl Email*).

The Plaintiffs observe that the law firm of Eaton Peabody closed on June 30, 2025, and Attorneys Woodcock and Pottle continued the practice of law in the law firm of Katahdin Law, which, they say, continues to represent the town of Dover-Foxcroft. *Id.* The Plaintiffs footnote that "[w]hether this case or any ramifications of this case relate to the unexpected recent closing of Eaton Peabody is unknown at this time." *Id.* at 4 n.1.

After reviewing the legal standards for judicial recusal, the Plaintiffs assert that there is "an undeniably objective basis for a reasonable person to question [my] impartiality." *Id.* at 6. They cite my brother's financial interest in Eaton Peabody and Katahdin Law, my asserted appearance of impropriety, and the law firm's alleged indirect financial interest in the outcome of this case. *Id.* at 6-8. The Plaintiffs also maintain that Attorney Pottle "can be anticipated to be a highly material witness in this matter." *Id.* at 8.

### 4. The Order of Dismissal and Remand

Finally, the Plaintiffs demand that I vacate the July 25, 2025 order of dismissal and that the case to assigned to a different judge. *Id.* at 10.

6

### B.    The Defendants' Opposition

#### 1.    General Response

The Defendants oppose the motion for recusal and the vacation of the order of dismissal.[1] *Defs.' Recusal Opp'n* at 1-6.  They point out that "[n]either Attorney Pottle nor Attorney Woodcock, nor any attorney or law firm associated with them, has appeared or participated in this litigation." *Id.* at 1.  They also observe that "[t]he presiding judge is not obligated to monitor every client relationship of every lawyer in Attorney Woodcock's law firm and recuse from every case in which any such client may be involved." *Id.*  The Defendants also note that the "Plaintiffs have known since at least 2023 that Attorney Pottle and his firm serve as outside counsel to the Town," and yet, "they waited until after the Court granted Defendant's motion to dismiss – and almost a year after they filed their Amended Complaint – before seeking the recusal of the presiding judge." *Id.* at 2.  They argue that "[t]hat kind of gamesmanship should not be tolerated." *Id.*

#### 2.    Recusal and the Lack of Entry of Appearance

The Defendants refer to the docket in this case and press the point that "as the pleadings and docket make clear, in this litigation, the Town has always been represented by Drummond Woodsum" and "[n]o lawyer from Eaton Peabody or

---

[1]      The Plaintiffs' motion is denominated as "unopposed" on the docket. *Unopposed Mot. for Recusal of Judge Woodcock and Ancillary Relief in the Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 29).  The Defendants clarified that they do not object to the Plaintiffs substituting a new motion to correct page alignment issues in the former motion, but they do object to the motion itself. *Id.* at 1 n.1.

Katahdin Law, including Attorney Pottle, has appeared in this litigation." *Id.* at 3. The Defendants dispute the Plaintiffs' main contention that a judge is required to recuse in a situation where a party to the litigation may be a client of a law firm where the judge has a family connection, "even if the law firm is not participating in the litigation." *Id.*

### 3. Absence of an Interest that Could be Substantially Affected by the Outcome of the Proceeding

Under 28 U.S.C. § 455(b)(5)(iii), to require recusal a judge must "have an interest that could be substantially affected by the outcome of the proceeding." *Id.* at 4. The Defendants maintain that any impact on Katahdin Law from this lawsuit is purely speculative and does not warrant recusal. *Id.* at 4-5.

### 4. Attorney Pottle as a Material Witness

The Defendants are skeptical of the Plaintiffs' claim that Attorney Pottle would be a material witness in this case. *Id.* at 5. They note that the Plaintiffs "have not proffered any non-privileged information . . . that would not be available from another source." *Id.* Moreover, there is no allegation that Attorney Pottle is related to me. *Id.* Finally, even if Attorney Pottle were a material witness, there would be in the Defendants' view no obligation to recuse. *Id.*

### 5. Other Considerations

The Defendants characterize the Plaintiffs' allegations against my impartiality as speculative and based on mere suspicion, which they say should not form the basis of a recusal. *Id.* at 5. They worry that my recusal would reward the Plaintiffs for attempting to "manipulate the system for strategic reasons." *Id.* (citing *United States*

*v. Corbin*, 827 F. Supp. 2d 26 (D. Me. 2011) (quoting *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)).  Finally, the Defendants note a contradiction between the Plaintiffs' concession that an adverse ruling cannot be evidence of bias and their statements that the order on the motion to dismiss "presents a relevant consideration" and "suggests a deep-seated favoritism or antagonism" on my part.  *Id.* at 6.

### C.    The Plaintiffs' Reply

In their reply, the Plaintiffs clarify that they are proceeding only under 28 U.S.C. § 455, not § 144, and therefore no affidavit or certificate is required.  *Pls.' Recusal Reply* at 1.

The Plaintiffs then address the delay in bringing this motion.  *Id.* at 2.  They claim that it was "only since the [July 29, 2025 Order] have grounds necessary to demand recusal been discovered," namely that Attorney Woodcock had "a substantial financial relationship" with Eaton Peabody.  *Id.* at 2.  They explain that Mr. Olszewski "is disabled" and "has taken some time to process this information."  *Id.*

The Plaintiffs acknowledge that my July 29, 2025 decision was "on balance in some respects favorable to Plaintiffs," but they insist that "a lay observer an objective, disinterested, lay observer, fully informed of the facts, whether the Decision is right or wrong, would entertain a significant doubt as to the Judge's impartiality."  *Id.*  The Plaintiffs maintain that Mr. Hutchins criminally threatened Mr. Olszewski and the town was complicit in his conduct, and my failure to mention this threat constitutes a "striking omission" that "suggests bias."  *Id.* 2-3.

9

The Plaintiffs decry the Defendants' argument that Attorney Woodcock has no financial interest that could be impacted by this case as based on faulty logic. *Id.* at 3. The Plaintiffs assert that Mr. Hutchins' and the town's position in this matter followed "egregiously erroneous advice" given by Attorney Pottle about whether the town could "with impunity participate, endorse or acquiesce in Hutchins' continuing threat and conduct toward [Mr. Olszewski]." *Id.* at 3-4. They reiterate their perspective that their case could result in a substantial verdict against the town of Dover-Foxcroft. *Id.* at 4.

The Plaintiffs dismiss the Defendants' argument about their delay, claiming that the Defendants' argument is "incorrect and somewhat ironic after the Court held Plaintiff's complaint in abeyance for some nineteen months." *Id.* at 5. Mr. Olszewski concedes that he had "seen attorney Pottle when addressing the Town," but he asserts that he was "unaware if he was an independent attorney or working for a firm." *Id.* As a result, Mr. Olszewski says they "did not move to recuse Eaton Peabody after the Decision but moved the Court to reconsider and amend the Decision." *Id.*

Mr. Olszewski then writes:

> Plaintiff did not then know, did not know at the time Plaintiff filed his First Amended Complaint, and did not know when Judge John Woodcock assumed control of this case, that attorney Pottle was a partner of Eaton Peabody, that Eaton Peabody was although in name outside effectively in house counsel to the Town, or that Timothy Woodcock was a partner of Eaton Peabody or the brother of Judge John A. Woodcock. When Judge Woodcock was assigned to this case, Plaintiff knew that Pottle, working for Eaton Peabody, had effectively precluded his earlier 2023 Freedom of Access requests to Dover-Foxcroft and in an uncertain capacity had been at some Selectman's meetings.

*Id.* Mr. Olszewski insists that he was unaware until months after the July 29, 2025 order that my ruling would have had a "substantial affect" on "Timothy Woodcock as a partner of Eaton Peabody." *Id.* at 6. Mr. Olszewski alleges in a footnote on information that "Timothy Woodcock . . . continues to act as counsel to Dover-Foxcroft." *Id.* at 5 n.3.

Finally, the Plaintiffs deny the assertion that their motion to recuse is an attempt to manipulate the system. *Id.* at 6. Instead, they blame the Court. *Id.* They say that "it is unlikely the presiding Judge would not know the likelihood of his brother's firm being involved with a municipality and at least make inquiry." *Id.* They maintain that the federal court had available judges "who have not built their practice and careers in the same division and District as a Party." *Id.*

## III.   LEGAL STANDARDS

The Plaintiffs are proceeding under 28 U.S.C. § 455,[2] which provides in pertinent part:

> **(a)** Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> **(b)** He shall also disqualify himself in the following circumstances:
>
>   . . .
>
>> **(5)** He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>>
>>> **(i)** Is a party to the proceeding, or an officer, director, or trustee of a party;

---

[2] There is another statutory provision, 28 U.S.C. § 144, that addresses judicial recusal, but the Olszewskis are not proceeding under that section, and the Court has not discussed it. *See Pls' Recusal Reply* at 1.

**(ii)**    Is acting as a lawyer in the proceeding;

**(iii)**    Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

**(iv)**    Is to the judge's knowledge likely to be a material witness in the proceeding.

Turning first to the general standard of § 455(a), this statute requires recusal if a reasonable person, knowing all the facts, would harbor doubts concerning the judge's impartiality. *Rodruquez-Vilanova v. Stryker Corp.*, 987 F. Supp. 3d 153, 154 (D.P.R. 2013) (citing *Lilieberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860-1 (1988)). This section implicates competing policy interests. On the one hand, "courts must not only be, but must seem to be, free of bias or prejudice." *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998) (citing *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)). "On the other hand, recusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason." *Id.*

Section 455(a) determinations "inevitably turn[] on the facts," and thus, "[c]omparison . . . is an inexact construct" in this context. *Id.* at 28, 31 (internal citation omitted). The First Circuit Court of Appeals has expressed that close questions should be resolved in favor of disqualification. *Id.* at 30. Section 455(a)'s legislative history indicates Congress amended it with in order to shift the balance from one imposing on judges a "duty to sit" to one that resolves close question in favor of disqualification. *See* H.R. REP. NO. 93-1453, at 6355 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355. This legislative history also indicates, however, that

Congress did not intend for the provision to be used by "those who would question [the judge's] impartiality . . . seeking to avoid the consequences of [the judge's] expected adverse decision." *Id.* Rather, "[n]othing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial." *Id.* Litigants are "not entitled to judges of their own choice." *Id.*

In *Rodriguez-Vilanova*, the district court quoted the Seventh Circuit:

> A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

987 F. Supp. 2d at 155 (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (emphasis in original).

In addition to the general standard, § 455(a) creates specific standards, *see* 28 U.S.C. § 455(b)(i-iv), that the Court will discuss separately.

## IV.    DISCUSSION

### A.    The Facts of the Recusal Motion from My Perspective

When *Olszewski v. Hutchins* was randomly assigned to me, there was no hint that I should recuse, and there has not been until the Olszewskis filed their motion to recuse on November 16, 2025. The Olszewskis' 114 paragraph amended complaint refers to his FOAA[3] requests, *Am. Compl.* ¶¶ 23, 24, 25, 80(c), 84(b-c), but does not mention Attorney Pottle's response to one of the requests or any involvement of the

---

[3]     FOAA refers to Maine's Freedom of Access Act, 1 M.R.S. §§ 400-14. *See Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 1, 215 A.3d 812.

law firms of Eaton Peabody or Katahdin Law. *Id.* To my knowledge, I do not know and have never met Robert Olszewski, Jr.,[4] Julie Olszewski, or Barry Hutchins; I have no connections with the town of Dover-Foxcroft, Maine; and I knew nothing about the disputes that formed the bases of the complaint. Other than the fact that Attorneys Andrews Campbell, Jeanna M. McCormick, and Oliver Walton have occasionally appeared before me in their capacities as attorneys and in my capacity as a district judge, I have no direct connections with Attorneys Campbell, McCormick, or Walton. To my knowledge, I do not recall Attorney Wade McCall, cocounsel with Attorney Campbell, having appeared before me.

During my tenure as a federal judge, my brother Timothy C. Woodcock has practiced law in Bangor, Maine. He was a partner in the law firm of Eaton Peabody throughout my time on the federal bench from June 2003 until June 2025, when Eaton Peabody dissolved. At that time, he began practicing law in the law firm of Katahdin Law. To my knowledge, I have never met Attorney Jonathan Pottle, and I do not know his employment history, except I am aware that he practiced law with my brother at Eaton Peabody before it dissolved and now works at Katahdin Law with my brother.

---

[4]    In 2008, a Robert Olszewski filed a lawsuit against Mayo Regional Hospital, *Robert Olszewski v. Mayo Regional Hospital*, 1:08-cv-00268-JAW, and I was assigned the case. However, all the parties' dealings were with Magistrate Judge Margaret Kravchuk, and I do not believe I was called on to issue any rulings. The complaint was initiated on August 11, 2008, and a stipulation of dismissal was filed on December 9, 2009. The Plaintiff in this case, Robert Olszewski, Jr., has not mentioned the prior case in his filings in this one. I am not sure whether the Robert Olszewski in the Mayo Regional Hospital case is the same Robert Olszewski, Jr., who is the plaintiff in this case, but if so, my involvement with the prior case would not be a reason for me to recuse myself from this case.

The United States District Court for the District of Maine maintains a list of individuals, including attorneys, and a list of businesses that are on each judge's recusal list.  My brother and the attorneys with whom he has practiced at Eaton Peabody and Katahdin Law have been on my recusal list from the beginning of my tenure as a federal judge.  Thus, under 28 U.S.C. § 455(b)(ii), if my brother entered an appearance on behalf of a party in federal court litigation in the District of Maine, I would be automatically recused from the case, and, as I just noted, the recusal list has included all lawyers at Eaton Peabody and now Katahdin Law.  If my brother or Attorney Pottle had entered an appearance on behalf of either Mr. Hutchins or the town of Dover-Foxcroft in this litigation, I would have immediately recused myself.

Other than learning from a public record in an occasional lawsuit that my brother, Eaton Peabody, or Katahdin Law represents a particular party in federal lawsuit, I do not know and have never known the clients that Eaton Peabody, Katahdin Law, my brother, or Attorney Pottle represent, and I have never asked them to produce a list of their clients.  Specifically, I did not know until the Olszewskis filed their motion for recusal on November 16, 2025 that Eaton Peabody and/or Katahdin Law generally represented the town of Dover-Foxcroft, and I did not know that Attorney Pottle had anything to do—even remotely—with this case.[5]

---

[5]    In their reply, the Olszewskis assert that my brother represents the town of Dover-Foxcroft. *Pls.' Recusal Reply* at 5 n.3 ("Timothy Woodcock . . . continues to act as counsel to Dover-Foxcroft"). This is news to me and may be a typographical error.  In ruling on this motion, I must accept the Olszewskis' representation that my brother continues to act a Dover-Foxcroft counsel, but, if so, there has been no suggestion that he has had anything to do with this case.

In the Olszewskis' motion, they stipulate that they are not claiming that I communicated privately with my brother about this case and are assured that if such a communication took place, I would have disclosed it. *Pls.' Mot.* at 8. Rest assured, I have never spoken to my brother about this case or to anyone at Eaton Peabody or Katahdin Law, including Attorney Pottle, about this case. In fact, as I have observed, I did not know that Eaton Peabody and/or Katahdin Law had anything to do with the case until the Olszewskis filed their recusal motion, and I have not spoken to my brother or anyone formerly at Eaton Peabody or Katahdin Law about this motion or the case in general since the Olszewskis filed the recusal motion.

### B.    "Acting as a Lawyer in the Proceeding"

Neither my brother nor Attorney Pottle has "act[ed] as a lawyer in this proceeding," so it seems evident that I should not have to recuse myself under this clause. *See* 28 U.S.C. § 455(b)(ii). Mr. Hutchins and the town of Dover-Foxcroft are well represented by highly competent counsel, and I have no reason to believe that my brother or Attorney Pottle rendered any legal advice in this case, other than Attorney Pottle's single letter to Mr. Olszewski in November 2023, which seems very tangentially related to the facts. Neither my brother nor Attorney Pottle has entered an appearance in the matter, and, as I noted earlier, the amended complaint does not mention Attorney Pottle, Eaton Peabody, or Katahdin Law.

In support of their recusal motion, the Olszewskis cite *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977), but *SCA Services* is markedly different on its facts. In *SCA Services*, the district judge's brother was a senior partner of a law firm

that had entered its appearance on behalf of a party in a case pending before the judge. *Id.* at 113. The Olszewskis also cite *Wilkins v. Palomino*, No. 20-cv-03495-PAB-STV, 2023 U.S. Dist. LEXIS 98442 (D. Colo. June 6, 2023), where the district court discussed a situation where the son of a magistrate judge involved in the case had become a member of a law firm representing a party. Neither situation is germane here, because if my brother, Attorney Pottle, or any attorney in Eaton Peabody or Katahdin Law had entered an appearance on behalf of one of the defendants in this case, I would have immediately recused myself.

The Olszewskis cite no case, nor have I found any, where a federal judge has been required to be recused from a case where the parties are represented by counsel other than the law firm of a judge's relative because the relative's law firm acts as general counsel to one of the parties. To meet the Olszewskis' standards for recusal, each federal judge with a relative within the third degree of separation who practices in a law firm within the district (or elsewhere) would have to demand from the relative's law firm a list of its clients in case one of the clients, though independently represented in federal court litigation, might pose a theoretical conflict with the judge.

Furthermore, law firms are bound to protect the confidentiality of their clients' privileged information, and federal courts would be on tenuous ground demanding client lists from the law firms in which a relative of one of the judges practiced law. I am dubious that the standards the Olszewskis would impose on the federal bench

are true legal standards as opposed to ad hoc demands that the Olszewskis have tailored to generate their argument in this motion.

### C.    "Interest that Could Be Substantially Affected by the Outcome of the Proceeding"

The Olszewskis next contend that my brother has an "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(iii). To make this point, the Olszewskis engage in a series of speculations: (1) that they seek damages against the town of Dover-Foxcroft, (2) that they will be successful in their lawsuit, (3) that, if successful, the damage award would be so substantial against the town that it would affect the town of Dover-Foxcroft's finances, (4) that if the town of Dover-Foxcroft were cash-strapped, it would procure fewer legal services from Katahdin Law, and (5) that the reduction in payment to Katahdin Law would affect my brother financially.

Other than the fact that the Olszewskis are suing the town, each of these assumed facts may not happen: (1) the case may not go to trial in federal court, (2) if the case goes forward in federal court, the Olszewskis may not be successful in their lawsuit, (3) if successful, the Olszewskis may be successful against Mr. Hutchins in his personal capacity and not against the town or against Mr. Hutchins in his role as a selectman, (4) if successful against the town, the damage award may not be significant, (5) if the damage award is significant, it may not affect the town's ability to pay for legal services,[6] (6) if the damage award is significant and affects the town's

---

[6]    In Town Manager Brenenstuhl's email, she confirmed that the town of Dover-Foxcroft paid Eaton Peabody annually from 2017 to 2023 a low of $18,636.40 and a high of $47,791,47. *Brenenstuhl Email* at 1-7. To credit the Olszewskis' contention, the damage award would have to be so high that

ability to pay for legal services, the reduction in payments to Katahdin Law may not have a significant impact on the finances of the law firm, and (7) if the damage award is significant and reduces payments for legal services to Katahdin Law, the reduction may not have any impact, much less a significant impact on my brother. *Compare Pashaian v. Eccelston Props.*, 88 F.3d 77, (2nd Cir. 1996) ("It would simply be unrealistic to assume . . . that partners in today's law firms invariably have an interest that could be *substantially affected* by the outcome of any case in which any other partner is involved") (emphasis in original, internal punctuation omitted), *with Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) ("[W]hen a partner in a law firm is related to a judge within the third degree, that partner will always be known by the judge to have an interest that could be substantially affected by the outcome of a proceeding involving the partner's law firm") (internal punctuation omitted).

In *Wilkins*, the district judge quotes a Tenth Circuit case, *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993), that "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" do not satisfy the requirements for removal. *Wilkins*, 2023 U.S. Dist. LEXIS 98442, at *3 (quoting *Cooley*, 1 F.3d at 993). In the words of the First Circuit, "a judge once having drawn

---

the municipality could not pay even these relatively moderate fees. There is no record evidence to support this assertion about the impact of a large damage award on the town fisc.

Nor is there any evidence in this record about whether the town is insured against a damage award, if so, the limits of the coverage, and whether the town's insurer (if there is one) has issued a reservation of rights letter, potentially limiting coverage. Following the Olszewskis' argument, the jury award would not only have to be substantial, but also would have to either vastly exceed available coverage (if there is coverage) or somehow be excluded under its insurance policy. There is nothing in the record on this issue.

19

a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981).

Finally, this statutory section requires that a judge know that the case will have a substantial financial impact on a relative. I did not know of any financial impact whatsoever when I issued the order on the motion to dismiss, because I had no knowledge of the Eaton Peabody's and Katahdin Law's relationship to this case, and I still do not know that this case would have any financial impact on Katahdin Law or my brother.

### D.    "Material Witness"

The Olszewskis assert that Attorney Pottle will be a material witness in this case, and this requires my recusal. *See* 28 U.S.C. § 455(b)(iv). I disagree. "Generally, familiarity—even a judge's friendship with prospective witnesses—does not require a judge's recusal under § 455(a)." *United States v. Salemme*, 164 F. Supp. 2d 86, 104 (D. Mass. 1998). But, here, as I have said, I do not know Attorney Pottle at all, and the amended complaint does not refer to him.

Moreover, here, the only information about Attorney Pottle's proposed testimony appears for the first time in the Olszewskis' recusal motion, where they reveal that on November 28, 2023, Attorney Pottle responded in writing to a FOAA request from Mr. Olszewski for emails from four town selectmen from January 2022 to November 20, 2023. *Pls.' Recusal Mot.*, Attach. 2, *Letter from Att'y Pottle to Robert Olszewski, Jr.* (Nov. 28, 2023). In the letter, Attorney Pottle acknowledged Mr.

Olszewski's request for "several thousand emails," informed him of the town's estimate of the cost of compliance and the likely delay in producing the records, and asked Mr. Olszewski to confirm that he still wished to proceed. *Id.* at 2. In his response, Attorney Pottle suggested to Mr. Olszewski that he "modify your requests to narrow and identify what public record or records you are requesting based on the subject matter(s), event(s), and related time frame(s)." *Id.*

The Olszewskis also maintain that Eaton Peabody and now Katahdin Law have represented the town of Dover-Foxcroft for a long time and that Attorney Pottle attended selectmen meetings. *Pls.' Recusal Mot.* at 1-2. The Olszewskis propose on calling Attorney Pottle as a witness to examine him about "the subjects of what he advised to [*sic*] Board of Selectmen on how to deal with Plaintiff Robert Olszewski's complaints to the Board, including his complaints regarding hazards, expenditures, disability discrimination, and regarding Defendant Hutchins." *Id.* at 8. The Defendants have questioned whether Attorney Pottle has any "non-privileged information" about the "claims at issue in this case that would not be available from another source." *Defs.' Recusal Opp'n* at 5.

The Olszewskis have not provided me with enough information about the evidence in this case to fully comprehend how Attorney Pottle's proposed testimony would affect their claims against the town and Mr. Hutchins and how much of Attorney Pottle's proposed testimony would be privileged. Attorney Pottle's contemplated testimony about his one response to Mr. Olszewski's FOAA request does not appear to "go directly to the issue of liability," nor would the result of the

litigation appear to be "based in large part on the credibility the fact-finder gives to [his] testimony." *Hadler v. Union Bank & Trust Co.*, 765 F. Supp. 976, 979 (D.S. Ill. 1991). The Olszewskis have not been specific enough about his other proposed testimony concerning the legal advice Attorney Pottle supposedly gave the town, but there is a serious question as to whether Attorney Pottle would be allowed to testify about his legal advice to the town in light of the attorney-client privilege and the work product rule. *See* FED. R. EVID. 502.

To reiterate, "[g]enerally, familiarity—or even a judge's friendship with prospective witnesses—does not require a judge's recusal under § 455(a)." *Salemme*, 164 F. Supp. 2d at 104.

> This is the general rule because it is recognized that the public understands that judges are usually long-standing members of the community in which they serve and although they will inevitably encounter witnesses with whom they, or people close to them, have positive or negative experiences, judges can and will ordinarily ignore those experiences and decide the matters before them impartially.

*Id.* at 104-05. This is not to say there may not instances, although rare, where the nature of the judge's relationship with a potential witness would justify recusal. *Id.* at 105 (discussing cases).

Applying these principles, given my attenuated relationship with Attorney Pottle and what I understand to be his limited admissible testimony, I do not find that the record justifies recusal based on the possibility of Attorney Pottle's testimony at trial.

### E.    Timeliness

One issue raised by the chronology of this situation is that the Olszewskis filed their motion to recuse far into the resolution of this case.  The Olszewskis filed their complaint on June 7, 2024, *Compl.* (ECF No. 1), and an amended complaint on August 2, 2024.  *Am. Compl.* (ECF No. 5).  The Defendants filed their motion to dismiss on October 2, 2024, *Defs.' Mot. to Dismiss* (ECF No. 9), the Plaintiffs responded on October 23, 2024, *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13), and the Defendants replied on November 6, 2024.  *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).  Chief Judge Walker recused on February 19, 2025.  *Order of Recusal* (ECF No. 15).  The case was randomly assigned to me on the same day.  I issued a seventy-one-page decision on July 29, 2025.  *Order on Mot. to Dismiss* (ECF No. 18).  The Olszewskis did not file the motion to recuse until November 16, 2025.  *Pls.' Recusal Mot.*

From the day the case was assigned to me, the Olszewskis had nine months to realize that Attorney Jonathan Pottle, the lawyer who wrote Mr. Olszewski on November 20, 2023 was my brother's law partner.  Although Mr. Olszewski excuses his own delay by referring to his disability, this only takes him so far.  One of the considerations in any motion to recuse is whether the litigant has filed the motion to recuse only after a judge has issued a decision adverse to him.  *See In re United States*, 666 F.2d at 694.  In *In re United States*, the First Circuit asked whether the relationships being complained of were "obvious" long before the motion was filed.  *Id.*  Here, the fact that my brother practiced law at Eaton Peabody was not a secret, and

that Attorney Pottle practiced law there was obvious from the letterhead on his November 20, 2023 response to Mr. Olszewski's FOAA request.

In *In re United States*, the First Circuit warned against litigants who proceed forward with a case to "test the court's reaction only later to marshal previously known information in an attempt to get a proverbial second bite at the apple." 666 F.2d at 694. The First Circuit observed that "[e]ven if a litigant were not consciously attempting to manipulate the circumstances to his benefit, the potential waste of judicial resources alone requires that a motion for disqualification be timely filed." *Id.*

In other words, "[i]t is well-established . . . that a party 'seeking disqualification of the judge must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *Salemme*, 164 F. Supp. 2d at 95 (quoting *United States v. Kelly*, 519 F. Supp. 1029, 1049 (D. Mass. 1981), *aff'd sub nom. In re United States*, 666 F.2d at 690). *See also El Fenix de Puerto Rico v. The M/Y Johanny*, 36 F.3d 136, 141 n.6 (1st Cir. 1994) (citing 7 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 63.07 [2.-2] (2d ed. 1993) ("[A] litigant who is aware of a potential ground of recusal should not be permitted to 'sandbag' that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's rulings"). Here, the Olszewskis waited until after they received my ruling, which obviously disappointed them, to demand that I recuse myself from their case, despite publicly available information that my brother has been Attorney Pottle's partner throughout the events in this case.

24

### F.    Random Assignment Procedure at the United States District Court

The Olszewskis' attack on the random assignment of cases in the District of Maine is illogical and ill-considered.  First, the Olszewskis mistakenly assume that the District of Maine is divided into the Northern Division and the Southern Division. *Pls.' Recusal Mot.* at 2-3 ("[I]t is indeed curious that a federal Court . . . would invite problems by assignment of a local to the Northern District rather than to a Judge who did not have substantial ties in the Northern District").  Although the District of Maine was once divided into a Northern Division and Southern Division, Congress did away with the distinction in 1978.  28 U.S.C. § 99, Act of Nov. 2, 1978, Pub. L. 95-573, § 2, 92 Stat. 2458, ("Maine constitutes one judicial district").  Civil cases are assigned district-wide to a judge without consideration as to where the complaint was filed or where the judge has chambers.

Second, Congress has provided that "[t]he business of the court having more than one judge shall be divided among the judges as provided by the rules and orders of the court."  28 U.S.C. § 137.  The District of Maine has stipulated by local rule that judges will be assigned to cases by random assignment.  D. ME. LOC. R. 3(g) ("New cases will be assigned randomly to an available judge who is not recused from hearing the case").  For the Court to have separated out the Olszewskis' case and assigned it in a non-random manner would have violated Local Rule 3(g).

Third, as of February 2025, there were four judges (other than myself) potentially available for reassignment once Chief Judge Walker recused himself, and not surprisingly, each federal judge in Maine has connections throughout the state.

To break the local rule of random assignment, there would have had to have been a very good reason, and, as I have discussed, there was no reason to do so; nothing about the complaint suggested any conflicts that would have precluded my assignment.

### G.    Unfavorable Ruling

On July 29, 2025, I issued a seventy-one-page order on the Defendants' motion to dismiss. *Dismissal Order* at 1-71. Although I dismissed the federal claims against the Defendants, I did not rule on the merits of the state claims and declined to exercise supplemental jurisdiction over the state claims. *Id.* at 68. As a consequence, the Olszewskis were free to proceed in state court with their state claims if they chose to do so.

The Olszewskis, however, were clearly very disappointed with my July 29, 2025 dismissal order, and on August 25, 2025, they filed a motion for reconsideration, describing the opinion as "plainly wrong." *Mot. to Recons.* at 3. They assert that I "finesse[d] the relevant question." *Id.* at 9. They maintain that the "integrity of the entire Decision" was undermined. *Id.* at 11-12. They also sought to amend their complaint to "plead more fully the retaliatory First Amendment violation." *Id.* at 7.

In their motion to recuse, the Olszewskis first "accept that this ruling does not constitute a basis for bias or partiality in itself." *Pls.' Recusal Mot.* at 3. But in the very next sentence, they contradict themselves:

> However, the circumstances of Judge Wood[c]ock's unreasonable and arbitrary finesse of the highly criminal threat by Defendant Hutchins against Plaintiff Robert Olszewski's life and mental well being suggests a 'deep-seated favoritism or antagonism' which, while it may not make

fair judgment impossible (cf. *Liteky*, 510 U.S. at 555), presents a relevant consideration.

*Id.* Then, in their reply, the Olszewskis dispute that they are claiming that I should recuse myself because of my decision. *Pls.' Recusal Reply* at 2 ("Defendants[] argue that Plaintiffs' Motion . . . is premised on the Decision dismissing the case. This is incorrect"). But, once again, they attack the decision, saying that "a lay observer an objective and disinterested, lay observer, fully informed of the facts, whether the Decision is right or wrong, would entertain a significant doubt as to the Judge's impartiality." *Id.* They describe the order as a "remarkable finesse." *Id.* They end by saying that the "nature and logic of the Decision, right or wrong, when combined with" other factors, "confirms reasonable question as to the impartiality of the presiding judge." *Id.* at 3.

On November 18, 2025, the First Circuit addressed, once again, whether a judicial decision could properly provide the ground for recusal. In *United States v. Medoff*, 159 F.4th 107 (1st Cir. 2025), the First Circuit observed that "as the Supreme Court explained in *Liteky*, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Medoff*, 2025 U.S. App. LEXIS 30134 at *38 (quoting *Liteky*, 519 U.S. at 555). "Almost invariably, [such rulings] are proper grounds for appeal, not for recusal." *Id.* (quoting *Liteky*, 519 U.S. at 555).

The Olszewskis cannot have it both ways. They cannot disclaim any suggestion that I should recuse myself based on my decision and then insinuate that my decision was so erroneous that it reflects bias and I should recuse myself on that basis. I agree with the Olszewskis when they say that my July 29, 2025 decision

cannot be grounds for recusal. Whatever else the Olszewskis may think about the decision, they cannot say that I failed to give the motion and their responses thorough and detailed consideration. I make no claim of judicial infallibility, and, if the Olszewskis appeal the decision, the First Circuit will review the order and assess its soundness. But I reject the Olszewskis' repeated implications that the content of the July 29, 2025 order reflects any bias or partiality on my part.

## H.    Whether My Impartiality Might Reasonably Be Questioned

I return to the general standard that a judge should recuse himself or herself "whenever his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). I simply cannot credit the Olszewskis' first contention that I should have recused myself before I issued my July 29, 2025 dismissal order, or that I should vacate the order. As this order demonstrates, before issuing the July 29, 2025 order, I had no basis whatsoever to believe there was any reason for my recusal, and, in my view, there is no reason for me to vacate it based on the content of the Olszewskis' motion for recusal.

I am wholly unconvinced that my brother's practice of law at Eaton Peabody and Katahdin Law in which the law firms apparently generally represented the town of Dover-Foxcroft but not in this case provides grounds for recusal. Lacking any evidence that either Eaton Peabody or Katahdin Law have a direct financial stake in this litigation, the Olszewskis have hypothesized a farfetched, indirect stake, relying on multiple unlikely and unproven speculations. I conclude that no "objective, knowledgeable member of the public would find a reasonable basis for doubting [my] impartiality." *Medoff*, 2025 U.S. App. LEXIS 30134, at *37-38 (quoting *In re Boston's*

28

*Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (quoting *In re United States*, 666 F.2d at 695).

## V.    CONCLUSION

I DENY as non-meritorious Plaintiffs' Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment** (ECF No. 29).  I DISMISS as moot Plaintiffs' Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 (ECF No. 27).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026