UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT OLSZEWSKI, JR., et ux., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:24-cv-00209-JAW |
| ) | |
| BARRY HUTCHINS, *individually and as* ) | |
| *former selectman*, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION TO DISQUALIFY ATTORNEY OLIVER WALTON AND DRUMMOND WOODSUM**

Because the plaintiffs have not shown a violation of the ethical rules nor any actual prejudice, the court denies the plaintiffs' motion to disqualify defendants' attorney and the law firm serving as counsel for defendants.

**I.   BACKGROUND**

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a lawsuit against Barry Hutchins, individually and as former selectman, and the town of Dover-Foxcroft, Maine (the town), alleging that Mr. Hutchins and the town (collectively, Defendants) violated their federal and state constitutional rights. *Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 1) (*Compl.*). More specifically, the Olszewskis claimed that Mr. Hutchins and the town violated Mr. Olszewski's rights under the First and Fourteenth Amendments to the United States Constitution, Article One, Section 6-A of the Maine Constitution, the Maine Human Rights Act, and the Maine Tort Claims Act by retaliating against him for public advocacy. *Id.* at 9.   Mr. Olszewski sought compensatory damages and a

preliminary injunction, and Ms. Olszewski sought damages for loss of consortium. *Id.* at 10. On August 2, 2024, before the lawsuit had been served on the Defendants, the Olszewskis filed an amended complaint. *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 5) (*Am. Compl.*).

On August 5, 2024, Attorney Jeana M. McCormick of the law firm of Drummond Woodsum entered her appearance on behalf of each Defendant, *Notice of Appearance* (ECF No. 6), and on August 12, 2024, each Defendant waived service of process, *Waiver of Serv.* (ECF Nos. 7, 8). On October 2, 2024, the Defendants filed a motion to dismiss the amended complaint. *Defs.' Mot. to Dismiss* (ECF No. 9) (*Defs.' Mot. to Dismiss*). On October 23, 2024, the Olszewskis filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13). On November 6, 2024, the Defendants filed a reply to the Plaintiffs' opposition. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).

On February 19, 2025, Chief Judge Lance Walker, who had been originally randomly assigned the case, issued an order of recusal. *Order of Recusal* (ECF No. 15). On the same day, the case was randomly assigned to this Judge. On July 29, 2025, the Court issued a seventy-one-page order granting the Defendants' motion to dismiss the federal claims and dismissing without prejudice the remaining state claims, *Order on Mot. to Dismiss* (ECF No. 18) (*Dismissal Order*), and on the same day, a judgment of dismissal without prejudice was issued. *J. of Dismissal* (ECF No. 19).

Between August and December of 2025, Plaintiffs filed a motion for consideration and for leave to file an amended complaint[1], a motion to disqualify counsel, and a motion to disqualify the presiding judge.[2] This order concerns the second motion. *Mot. to Disqualify Att'y Oliver Walton and Drummond Woodsum* (ECF No. 26) (*Pls.' Disqualification Mot.*).

On November 12, 2025, Attorney Jeana M. McCormick moved to withdraw her appearance on behalf of the Defendants, *Mot. to Withdraw Appearance* (ECF No. 24), which the Magistrate Judge granted the next day. *Order* (ECF No. 25). On November 12, 2025, Attorney Oliver M. Walton of the law firm of Drummond Woodsum entered his appearance on behalf of the Defendants. *Notice of Appearance* (ECF No. 23).

On November 16, 2025, the Plaintiffs moved to disqualify Attorney Walton and the law firm of Drummond Woodsum as counsel for the Defendants. *Pls.' Disqualification Mot.* On December 5, 2025, the Defendants opposed the motion to

---

[1] On August 25, 2025, the Plaintiffs filed a motion for reconsideration and for leave to file an amended complaint. *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 and for Leave to Amend the First Am. Compl.* (ECF No. 20). On September 15, 2025, the Defendants filed their opposition to the motion for reconsideration and motion to amend complaint. *Defs.' Opp'n to Pls.' Mot. for Reconsideration and for Leave to File Second Am. Compl.* (ECF No. 21). On September 28, 2025, the Plaintiffs filed their reply. *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons, and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22).

[2] On December 2, 2025, the Plaintiffs moved for my recusal from this case. *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 27). On December 11, 2025, the Plaintiffs filed a corrected version of their recusal motion. *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment*** (ECF No. 29) (bold in original entry). On December 23, 2025, the Defendants opposed the Plaintiffs' motion for my recusal. *Defs.' Opp'n to Pls.' Mot. for Recusal* (ECF No. 30). On December 28, 2025, the Plaintiffs filed their reply to Defendants' opposition. *Pls.' Reply to Opp'n to Pls.' Mot. to Recuse Hon. Judge A. Woodcock (sic)* (ECF No. 31).

disqualify. *Defs.' Opp'n to Pls.' Mot. to Disqualify* (ECF No. 28) (*Defs.' Disqualification Opp'n*). The Plaintiffs did not file a reply.

## II. THE PARTIES' POSITIONS

### A. The Plaintiffs' Motion

The Plaintiffs argue that Drummond Woodsum cannot represent both Mr. Hutchins, in his individual and official capacity, and the town of Dover-Foxcroft because the parties have materially different and adverse positions. *Pls.' Disqualification Mot.* at 5. In support of the contention that the Defendants are adverse, the Plaintiffs point to the possibility of divergent interests and the "reasonably foreseeable" differences in strategy for each client. *Id.* at 6.

### B. The Defendants' Opposition

The Defendants oppose the Olszewskis' motion, arguing that the Olszewskis "fail to cite or address the correct legal standard to disqualify counsel, and they cannot meet the applicable standard." *Defs.' Disqualification Opp'n* at 1. Applying the first prong of the applicable standard, the Defendants argue that their continued representation by Drummond Woodsum "will not result in any violation of an ethical rule" as no rule prohibits "the joint representation of co-defendants in litigation." *Id.* Applying the second prong, the Defendants argue the "Plaintiffs have not shown any conceivable prejudice – let alone concrete harm – to themselves from [Drummond Woodsum's] joint representation of Mr. Hutchins and the Town." *Id.* at 3.

4

### III.  LEGAL STANDARDS

When determining whether disqualification is warranted, this Court follows the Maine Rules of Professional Conduct, adopted by the Supreme Judicial Court of Maine.  *See* D. ME. LOC. R. 83.3(d); *Concordia Partners, LLC v. Ward*, No. 2:12-CV-138-GZS, 2012 U.S. Dist. LEXIS 109540, at *1 (D. Me. Aug. 6, 2012).  Thus, this Court applies Maine law.

> In Maine, the Law Court has held that disqualification of an attorney is appropriate only where the moving party produces evidence supporting two findings: (1) "continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of a particular ethical rule" and (2) continued representation by the attorney would result in "actual prejudice" to the party seeking that attorney's disqualification.  *Morin v. Maine Educ. Ass'n*, 2010 ME 36, [¶ 9-10,] 993 A.2d 1097, 1100.  As the party moving for disqualification, Defendant "has the burden of showing the grounds for disqualification." *Casco N. Bank v. JBI Assocs. Ltd.*, 667 A.2d 856, 859 (Me. 1995).  Any order disqualifying an attorney must include "express findings of that ethical violation and resulting prejudice."  *Morin*, [2010 ME 36, ¶ 11, 993 A.2d 1097].

*Concordia Partners*, 2012 U.S. Dist. LEXIS 109540 at *1-2; *see also Sea Salt, LLC v. Bellerose*, No. 2:18-CV-00413-JAW, 2020 U.S. Dist. LEXIS 84072, at *2-3 (D. Me. May 13, 2020) (citing same standard); *In re Zak*, No. 2:17-MC-00192-JHR, 2017 U.S. Dist. LEXIS 222937, at *7 (D. Me. Nov. 19, 2017) (same); *Doe v. Reg'l Sch. Unit No. 21*, No. 2:11-CV-25-DBH, 2013 U.S. Dist. LEXIS 16700, at *2-3 (D. Me. Feb. 7, 2013) (same).

#### A.  **Applicable Rules of Professional Responsibility**

To prevail on a motion for disqualification, the moving party must provide evidence of "an affirmative violation of a particular ethical rule" under the Maine Rules of Professional Conduct.  *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097.

Rule 1.10 of the Maine Rules of Professional Conduct provides, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] 1.7 . . . ." M.R. Prof. Conduct 1.10(a). Rule 1.7, which covers conflicts-of-interest with current clients, provides, in relevant part, as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest. A concurrent conflict-of-interest exists if:
>
> (1) the representation of one client would be directly adverse to another client, even if representation would not occur in the same matter or in substantially related matters; or
>
> (2) there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict-of-interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and
>
> (2) each affected client gives informed consent, confirmed in writing.

M.R. Prof. Conduct 1.7. Rule 1.7 thus defines a concurrent conflict-of-interest, but also provides a means by which clients can consent notwithstanding the conflict-of-interest.

### IV. DISCUSSION

Under Maine law, the Plaintiffs, as the moving party, bear the burden to produce evidence supporting first, that Drummond Woodsum's representation of the

6

Defendants "results in an affirmative violation of a particular ethical rule" and second, that Drummond Woodsum's continued presence would result in "actual prejudice" to the Plaintiffs. *Morin*, 2010 ME 36, ¶¶ 9-10, 993 A.2d 1097. Because the Plaintiffs have not shown a violation of the ethical rules nor any actual prejudice, the Court denies the Plaintiffs' motion to disqualify Attorney Walton and Drummond Woodsum as counsel for the Defendants.

### A.   Drummond Woodsum's Representation Presents No Ethical Violation

Drummond Woodsum's continued representation of the Defendants violates no ethical rule. On the contrary, it is expressly authorized by the rules. Rule 1.7 of the Maine Rules of Professional Conduct covers conflicts-of-interest with current clients, declaring "a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest" and defining a concurrent conflict of interest as follows:

> (1)   the representation of one client would be directly adverse to another client . . .; or
>
> (2)   there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client . . . .

M.R. Prof. Conduct 1.7(a)(1)-(2). Rule 1.7 thus defines a concurrent conflict-of-interest but also provides a means by which clients can consent notwithstanding the conflict-of-interest. The conflict can be waived, save some inapplicable exceptions, where "(1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and (2) each affected client gives informed consent, confirmed in writing." *Id.* at 1.7(b)(1)-(2).

7

Under Rule 1.7, both here and generally, parties can consent to joint representation in civil matters. *See id.* at 1.7, cmt. (23) ("[C]ommon representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met"). As the Defendants point out, "[c]ourts across the country have regularly agreed that joint defense may be proper in § 1983 claims against municipalities and individual municipal officials." *Defs.' Disqualification Mot.* at 4-5, 5 n.2 (citing cases). In general, courts have not disqualified the same counsel from representing a municipality and a municipality's employee. *Waggoner v. Marsh*, No. 25-cv-00254-JFH-SH, 2025 U.S. Dist. LEXIS 148922, at *4-11 (N.D. Ok. Aug. 4, 2025); *Nolan v. City of N.Y.*, 754 F. Supp. 3d 548, 552 (S.D.N.Y. 2024); *Billewicz v. Town of Fair Haven*, No. 5:22-cv-73, 2022 U.S. Dist. LEXIS 164427, at *8-9 (D. Vt. Aug. 11, 2022); *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2017 U.S. Dist. LEXIS 38058, at *5-9 (D. Ariz. Mar. 16, 2017); *Granberry v. Byrne*, 2011 U.S. Dist. LEXIS 118293, at *12 (E.D. Pa. Oct. 13, 2011) ("[A]s a matter of policy, the joint defense of individual officers/actors and their employing governmental agencies in § 1983 actions remains a common and accepted practice within the Third Circuit").

Even if there is a potential conflict between the town of Dover-Foxcroft and Mr. Hutchins, based on the Plaintiffs' claims against Mr. Hutchins acting in his personal as opposed to official capacity, this potential is "insufficient for disqualification" when the Defendants have pursued a "unified theory of defense." *Rascon v. Brookins*, 2017 U.S. Dist. LEXIS 38058, at *6 (D. Ariz. Mar. 16, 2017); *Vargas v. City & Cnty. of Honolulu*, No. 19-00116-LEK-WRP, 2020 U.S. Dist. LEXIS 272868, at *9 (D. Hi. Dec.

8

10, 2020). As the district court in *Rascon* wrote, "[e]ven circuits following strict rules regarding *Monell*[3] liability disqualification require disqualification of counsel representing both an individual officer and the municipal employer in § 1983 cases only where counsel acts in a way that is actually against the officer's interest." In *Waggoner*, the district court observed that "[u]ntil Plaintiffs demonstrate that these potential conflicts have matured into actual ones, the Court declines to employ such a drastic measure as disqualifying counsel and depriving the defendants of their representatives of choice." Furthermore, to require that "governmental entities and their individual employees obtain separate counsel in all such cases would unnecessarily complicate the litigation process at the unwarranted expense of taxpayers." *Granberry*, 2011 U.S. Dist. LEXIS 118293, at *13.

Here, both the town and Mr. Hutchins have presented a "unified theory of defense." On October 2, 2024, defense counsel filed a motion to dismiss on behalf of both Defendants on the same grounds. *See Defs.' Mot. to Dismiss* at 1-19. Even if a conflict in joint representation could perhaps appear if the case progressed further, for example if it neared trial, the general rule is that a court should not disqualify counsel unless and until the potential conflict hardens into an actual conflict. Here, given the fact that the Court granted the motion to dismiss for both Defendants, the possibility that the possible conflict will in fact become a real conflict is remote and speculative.

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

9

The Plaintiffs' first argument to the contrary is that Drummond Woodsum's representation of Mr. Hutchins "in his individual personal capacity and in his official capacity is inherently conflicted because the potential defenses are materially adverse and mutually exclusive." *Pls.' Disqualification Mot.* at 5. That is, in the hypothetical where the "Town will defend that Hutchins conduct was *ultra vires*" and therefore and "*actual or implicit approval*" of Mr. Hutchins conduct and therefore a "breach of fiduciary duty to the citizens by the Town." *Id.* (alteration original). The Defendants state that this argument "assumes the merits of Plaintiffs' claims, which Defendants vigorously dispute" and is a speculative "assertion of an ethical violation." *Defs.' Disqualification Mot.* at 6. On the facts before the Court, there is no showing that the Defendants' interests diverge, and the Plaintiffs offer nothing more than speculative argumentation.

Second, the Plaintiffs argue "it is reasonably foreseeable that strategy in this case, may differ greatly for each client" which they further argue is a presumed conflict under Rule 1.7. *Id.* The Plaintiffs are wrong. Not only do the Plaintiffs raise a particularly speculative issue—that Drummond Woodsum may have a different strategy for each Defendant in the case—that is not a clear "affirmative violation of a particular ethical rule," it is also a misstatement of the Rule. *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097. Even if there were a conflict of interest due to an adverse interest or material limitation, the clients can consent to joint representation. *See* M.R. Prof. Conduct 1.7(b)(1)-(2). *See Rascon,* 2017 U.S. Dist. LEXIS 38058, at *8 ("Defendants are presumed to be appraised of the potential conflict").

10

Likewise, the Plaintiffs' argument that Drummond Woodsum's concurrent representation "necessarily involves use of privileged information obtained from clients who have materially different and adverse positions" fails for the same reasons. *Pls.' Disqualification Mot.* at 5. As discussed, the Court rejects the contention that Mr. Hutchins and Dover-Foxcroft have materially different or adverse interests and the Court considers the Plaintiffs argumentations entirely speculative, rather than a clear "affirmative violation of a particular ethical rule." *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097.

For the foregoing reasons, the Court concludes that the Plaintiff has not demonstrated that continued representation of Defendants by Drummond Woodsum results in an affirmative violation of any rule.

### B.     Drummond Woodsum's Representation Does Not Result in Actual Prejudice to the Plaintiffs

Drummond Woodsum's continued representation of the Defendants does not result in actual prejudice to the Plaintiffs. "The Maine Law Court has held that 'the moving party must [also] point to the specific, identifiable harm' he will suffer absent disqualification." *Concordia Partners*, 2012 U.S. Dist. LEXIS 109540 at *21 (citing *Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097).

Here, the Plaintiffs sole claim of prejudice is that Drummond Woodsum's joint representation "may . . . prejudice Plaintiffs" when it comes "to possible motions to attach assets and effects of insurance coverage on the merits and as applicable to defense, in respect to mediation, settlement negotiations, etc." *Pls.' Disqualification Mot.* at 7. The Court takes Plaintiffs argument to be that Drummond Woodsum's

11

joint representation on behalf of both the town of Dover-Foxcroft, Maine and Mr. Hutchins, individually and as former selectman of the town, potentially makes it harder for the Plaintiffs to recover money—either by prevailing on any of the remaining state claims or through a successful settlement.

Not only is Plaintiffs vague and singular mention of "prejudice" speculative rather than a specific and identifiable harm, but it is also a conceivable outcome even if both Mr. Hutchins and the town of Dover-Foxcroft had separate counsel. In other words, a potentially less favorable litigation payout is possible with or without disqualification. Furthermore, the Plaintiffs appear to be under the misimpression that the Defendants have filed crossclaims against each other. *Pls.' Disqualification Mot.* at 7 (stating the case "involves the assertion of a claim by one client against another client represented by the same lawyer in the same actual pending litigation"). However, as the Defendants pointed out, "[n]o cross-claims have been asserted between Mr. Hutchins and the Town, nor is there currently any reasonable basis to anticipate such claims being made." *Defs.' Disqualification Opp'n* at 7. The Plaintiffs do not face actual prejudice just because the Defendants' interests are aligned.

Thus, the Court alternatively concludes that the Plaintiffs' request for disqualification is denied because the Plaintiffs failed to satisfy the actual prejudice prong of *Morin*.

V. **CONCLUSION**

The Court DENIES Plaintiff's Motion to Disqualify Attorney Oliver Walton and Drummond Woodsum (ECF No. 26).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026