UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT OLSZEWSKI, JR., et ux.,       )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )        1:24-cv-00209-JAW
                                     )
BARRY HUTCHINS, *individually and as* )
*former selectman*, et al.,          )
                                     )
            Defendants.              )

**ORDER ON MOTIONS FOR RECONSIDERATION AND TO AMEND
COMPLAINT**

The court rejects the plaintiffs' Federal Rule of Civil Procedure 59(e) motion to amend or alter judgment in which the plaintiffs demanded that the court reconsider its order dismissing their case under 42 U.S.C. § 1983 against a town selectman in both his individual and official capacities and against the town. The court concludes that the plaintiffs have not established that the court's dismissal was based on a manifest error of law or fact or that reconsideration is necessary to prevent a manifest injustice.

**I.    BACKGROUND**

**A.    Procedural History**

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a complaint alleging that Barry Hutchins, individually and as former selectman of the town of Dover-Foxcroft, and the town of Dover-Foxcroft (the town) (jointly, the Defendants) violated the First and Fourteenth Amendments to the United States Constitution, Article I of the Maine Constitution, the Maine Civil Rights Act (MCRA)

(Count One), 42 U.S.C. § 1983 (Count Two), the Maine Human Rights Act (MHRA) (Counts Three, Four, and Five), and are liable for intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven), and defamation and invasion of privacy (Count Eight). *Compl. Including Req. for Declaratory and Injunctive Relief* at 9-17 (ECF No. 1) (*Compl.*). On August 2, 2024, Plaintiffs filed an amended complaint, revising their allegations to assert violations of 42 U.S.C. § 1983 (Count One), the First and Fourteenth Amendments to the U.S. Constitution, Article I, Section 6-A of the Maine Constitution, and the MCRA (Count Two), the MHRA (Counts Three, Four, and Five), and raising allegations of intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven),[1] and defamation and invasion of privacy (Count Eight). *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* at 10-20 (ECF No. 5) (*Am. Compl.*).

On October 2, 2024, the Defendants filed a motion to dismiss the complaint. *Defs.' Mot. to Dismiss* (ECF No. 9). On October 23, 2024, the Plaintiffs filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13) (*Pls.' Opp'n to Mot. to Dismiss*). On November 6, 2025, the Defendants filed their reply. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14) (*Defs.' Mot. to Dismiss Reply*). On February 19, 2025, Chief Judge Lance E. Walker recused himself from this case, and the case was randomly assigned to Judge John Woodcock. *Order of Recusal* (ECF No. 15). On July 29, 2025, this Court issued a seventy-one-page

---

[1] The Plaintiffs later withdrew Count VII, the negligent infliction of emotional distress count. *Pls.' Opp'n to Defs.' Mot. to Dismiss* at 19 (ECF No. 13).

decision, granting the motion to dismiss as to the federal claims and dismissing the state claims without prejudice after declining to exercise supplemental jurisdiction. *Order on Mot. to Dismiss* (ECF No. 18) (*Order*). The Clerk entered a judgment of dismissal that same day. *J. of Dismissal* (ECF No. 19).

On August 25, 2025, the Plaintiffs moved for reconsideration and moved to file a second amended complaint. *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 Granting Dismissal and for Leave to File Am. Compl.* (ECF No. 20) (*Pls.' Mot.*); *Pls.' Mot.*, Attach. 1, *Pls.' Second Am. Compl. Including Req. for Declaratory and Injunctive Relief* (*Second Am. Compl.*). On September 15, 2025, the Defendants opposed the Plaintiffs' motions. *Defs.' Opp'n to Pls.' Mot. for Recons. and for Leave to File Second Am. Compl.* (ECF No. 21) (*Defs.' Opp'n*). On September 28, 2025, the Plaintiffs filed their reply to the Defendants' opposition. *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons. and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22) (*Pls.' Reply*).

**B.    The July 29, 2025 Order on Motion to Dismiss**

### 1.    The Facts Alleged in the Amended Complaint[2]

On July 29, 2025, after an extended discussion of the Olszewskis' federal claims, the Court dismissed the Olszewskis' amended complaint, declining to exercise supplemental jurisdiction over their many state-law based claims, dismissing them without prejudice. *Order* at 1-71. The Olszewskis' amended complaint describes in

---

[2]    Here, the Court is attempting to be synoptic, describing generally the allegations in the amended complaint without citation to specific paragraphs. In its July 29, 2025 order, each allegation is followed by a citation to the specific paragraph in the amended complaint. *See Order* at 3-17.

detail a long-running, intense, and nasty clash largely between Mr. Olszewski and Barry Hutchins, who for most of the time was a member of the town of Dover-Foxcroft Board of Selectmen. Mr. Olszewski has a mental disability caused by a motor vehicle accident in 1989 that makes it difficult for him to converse and communicate in real time and causes him to become irritable, frustrated, and agitated in certain situations, including conversations in public with public officials.

Although there was something of a history between Mr. Olszewski and the town, the immediate conflict began in January 2022 when Mr. Olszewski petitioned the town government about impassable roads, which he thought restricted emergency services. About this time, Mr. Olszewski met with Mr. Hutchins who was then a selectman for the town. The two began communicating about the town roads and matters escalated with Mr. Hutchins complaining to several town officials in March 2022 that Mr. Olszewski was unstable, a danger, and threat to the community. By April 2022, Mr. Hutchins had publicly accused Mr. Olszewski of harassing him and sending him aggressive emails.

Beginning April 13, 2022, Mr. Olszewski sent Mr. Hutchins a FOAA request and later sent the same request and other FOAA requests to the town. Mr. Hutchins responded to the FOAA request by threatening to have Mr. Olszewski jailed and subsequently attempting to do so. Mr. Hutchins also aggressively responded to Mr. Olszewski's FOAA request on Facebook Messenger with vulgarity and warning him that Mr. Hutchins would pursue criminal charges against him.

On April 27, 2022, Mr. Olszewski petitioned the Board of Selectmen to terminate Mr. Hutchins, and at the close of the hearing, Mr. Hutchins aggressively moved toward Mr. Olszewski. The dispute between Mr. Olszewski and Mr. Hutchins continued at the May 9, 2022 Selectmen Meeting, and spilled out into the parking lot. In May 2022, Mr. Olszewski complained to the Board that Mr. Hutchins was denying his First Amendment rights, and Mr. Hutchins responded that he was within his own First Amendment rights to say what he pleased outside town meetings.

The dispute persisted. At the June 6, 2022 Board meeting, Mr. Olszewski presented seven complaints against Mr. Hutchins, but after that meeting, Mr. Olszewski retreated from involvement and stopped attempting to involve himself in town affairs because he thought he was being provoked and threatened by Mr. Hutchins. Even so, on June 10, 2022, Mr. Hutchins wrote a couple of nasty emails to Mr. Olszewski, demeaning his mental health issues.

On June 11, 2022, Mr. Olszewski contacted the Dover-Foxcroft police to complain about Mr. Hutchins's conduct, alleging that it constituted disability abuse. Officer Ober of the Dover-Foxcroft Police Department investigated the complaint. Even though Mr. Hutchins admitted to Officer Ober that he knew Mr. Olszewski had mental disabilities and he was trying to get into Mr. Olszewski's head, Officer Ober denied that Mr. Hutchins's conduct was abuse and posited that it might amount to harassment.

On June 13, 2022, Mr. Olszewski petitioned the Maine District Court in Dover-Foxcroft alleging that Mr. Hutchins had engaged in a continuing course of conduct to

harass and injure him in retaliation for his exercise of First Amendment and civil rights and accused Mr. Hutchins of trying to break him down due to his disability. Just before a June 30, 2022 court hearing, Mr. Hutchins filed his own petition for protection from abuse against Mr. Olszewski. At the close of the hearing, the presiding judge imposed a no-contact provision against Mr. Olszewski, barring him from attending meetings of the Select Board or going to the town office for the period of the harassment order. On January 19, 2023, the presiding judge mooted all motions going forward.

On December 13, 2022, Mr. Olszewski went to the town office and discussed the court order with Police Chief Matthew Grant to see if he could attend an upcoming Selectmen's meeting. Mr. Olszewski was particularly concerned about a "No Recording" sign on the town office front door and feared it would interfere with his ability to record town meetings and interact with town officials, given his disability. The town subsequently took the position that the town office was not a public forum, and it disallowed private audio and video recording of any town business in the town office. Also on December 13, 2022, a Facebook profile appeared that falsely accused Mr. Olszewski of being a pedophile. Mr. Olszewski says that a Christopher Johnson created the Facebook profile, but he thinks Mr. Hutchins was behind the posting.

On March 6, 2023, Mr. Olszewski filed a petition with the Maine Human Rights Commission against the town of Dover-Foxcroft and Mr. Hutchins and sent notice of tort claims against each. Subsequently, Chief of Police Seth Burns together with Mr. Hutchins sought to reopen the mooted harassment action and to subject Mr.

Olszewski to a contempt proceeding based on his December 13, 2022 visit to the town office.

The no-contact order expired on September 1, 2023.[3]  Mr. Olszewski attended the October 23, 2023 Selectmen's meeting.  When Mr. Olszewski spoke at the meeting, he was interrupted by Selectwoman Jane Conroy, who imposed a five-minute speaking rule.  At the meeting, Selectwoman Conroy stated that Mr. Olszewski was threatening her and said that if Mr. Olszewski said anything about her actions, she would sue him.

## 2. The Court's Decision

The Olszewskis' Amended Complaint contained eight counts.  *Am. Compl.* ¶¶ 60-107.  The Court focused its attention on the two federal counts, dismissing each of the state-law based counts for initiation, if the Olszewskis chose to do so, in state court.  Count One alleged a violation of 42 U.S.C. § 1983 and Count Two violations of the United States Constitution, the Maine Constitution, and the Maine Civil Rights Act.  More specifically, Count One alleged that the town and Mr. Hutchins violated Mr. Olszewski's "rights under the First and Fourteenth Amendments of the United States Constitution."  *Am. Compl.* ¶ 63.  The Olszewskis also point to the Court's stated assumption that his raising of local grievances to the town board was a protected activity, *Order* at 61, and its conclusion that it need not address whether

---

[3]    In paragraph 44 of the amended complaint, the Olszewskis allege that on January 19, 2023, Judge Faircloth "'mooted all motions going forward' effectively concluding the matter on January 19, 2023." *Am. Compl.* ¶ 44.  In paragraph 56, the Olszewskis allege that the "protection order ended on September 1, 2023." *Id.* ¶ 56.  The Olszewskis do not explain this apparent contradiction, but whether the no contact order ended on January 19, 2023 or September 1, 2023 does not affect this Court's ruling.

the alleged constitutional violation took place under color of state law, *id.* at 67, the Olszewskis maintain that these judicial statements reveal that the Court failed to apply the correct standard for review of a motion to dismiss.

## II.    THE PARTIES' POSITIONS

### A.    The Plaintiffs' Motions

In their motions, the Olszewskis ask this Court to reconsider its decision under Federal Rule of Civil Procedure 59(e) and to allow them to amend their complaint under Federal Rule of Civil Procedure 15(a)(2). *Pls.' Mot.* at 1.

First, the Olszewskis say that the Court failed to obey the directive to accept their allegations as true in determining whether the factual allegations support the reasonable inference that the Defendants were liable for the alleged misconduct. *Id.* at 2. They give one example, where the Court wrote, "[e]ven taking Mr. Olszewski at his word" which they say betrays an "erroneous legal approach." *Id.* The Olszewskis also point to the Court's stated assumption that his raising of local grievances to the town board was a protected activity, *Order* at 61, and its conclusion that it need not address whether the alleged constitutional violation took place under color of state law, *id.* at 67, the Olszewskis maintain that these judicial statements reveal that the Court failed to apply the correct standard for review of a motion to dismiss. *Pls.' Mot.* at 2-3.

Second, the Olszewskis argue that the Court committed error by failing to address "the central issue of qualified immunity." *Pls.' Mot.* at 3-4 (citing *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833 (1997), *Foote v. Ludlow Sch. Comm.*,[4] 128 F.4th 336 (1st Cir. 2025); *Green v. Thomas*,[5] 734 F. Supp. 3d 532 (S.D. Miss. 2024), *aff'd in part and reversed in part* 129 F.4th 877 (5th Cir. 2025)).

Third, the Olszewskis say that the Court erred in failing to address their claim that the town and Mr. Hutchins violated Mr. Olszewski's substantive due process rights, saying that the Court should not have required them "to use the magical word 'substantive due process.'" *Id.* at 4-7. The Olszewskis maintain that the Court should have construed their amended complaint liberally to allege a substantive due process claim as well as "new Fourth and Fifth Amendment claims not plead except by brief." *Id.* at 6-7.

Fourth, the Olszewskis ask for leave to amend their amended complaint to "plead more fully the retaliatory First Amendment violation." *Id.* at 7-12. They complain that the Court's characterization of Mr. Hutchins's threats is too "tepid" and "totally dilutes and excuses a potentially [criminal] and continuing threat." *Id.* at 11.

Fifth, the Olszewskis maintain that the amended complaint as it exists "if accepted as true" provides "strong grounds to establish motivation by Defendants to conceal wrongdoing and to retaliate against Plaintiff." *Id.* at 12. They point to the "temporal proximity" between Mr. Olszewski's protected speech and Mr. Hutchins's statement that he was unstable and a threat. *Id.* They also aver that the Court's

---

[4]    The Plaintiffs cite *Feet v. Ladle School Committee*, but the volume and page lead to *Foote v. Ludlow School Committee*, which the Court assumes to be the intended case.

[5]    The Plaintiffs cite *Green v. Thomas*, No. 32-3-CV-126-CWR-ASH, pp 41-62, affirmed in part no 24-60314 (5th Cir. 2025). The Court found the case of *Green v. Thomas*, 734 F. Supp. 3d 532 (S.D. Miss. 2024), *aff'd in part and reversed in part* 129 F.4th 877 (5th Cir. 2025), which the Court cited in the text.

decision "neglects to credit Plaintiff's uncovering mismanagement of $200,000 public funds during the same time period as his charging of road maintenance violations, as a factor likely to result in retaliation." *Id.* at 13-14.

Sixth, the Olszewskis criticize the Court's reliance on the harassment order "as establishing ground for 'no contact' rather than a silencing of Plaintiff," arguing that the Court "ignores that Defendants obtained a Protection from Harassment proceedings without regard to their obligations under First Amendment by making the Town Hall the place of employment of the Selectmen and Selectwomen's place of employment as well as the fact that a companion Order was issued against Hutchins and the Town." *Id.* at 14. The Olszewskis say that "[t]o the extent not clearly indicated in pleadings, Plaintiff would establish this fact on Amendment." *Id.*

Seventh, the Olszewskis contend that the order is flawed because it concluded that the change in town policy was due not to retaliation against Mr. Olszewski but to its determination that the town office was not a public forum. *Id.* at 15-16.

Eighth, the Olszewskis claim that whether the town office is a public forum is a factual, not a legal issue. *Id.* at 16.

Finally, Ms. Olszewski argues that she should have been allowed to proceed with her loss of consortium claim, and to the extent it requires greater specificity, she should be allowed to amend the complaint to be more specific. *Id.* at 16-17.

## B.    The Defendants' Opposition

In the Defendants' opposition to the Olszewskis' motions, the Defendants contend that the Olszewskis have failed to establish "an intervening change in

controlling law, a clear legal error, or newly discovered evidence" that "warrants modification of the judgment." *Defs.' Opp'n* at 2. The Defendants maintain that the Olszewskis have failed to meet the standards for a Rule 59(e) motion because they have failed to identify "an intervening change in controlling law" or "newly discovered facts previously unknown to them." *Id.* at 3. Thus, they assert that the only ground for the Olszewskis' Rule 59(e) motion is "clear error." *Id.* The Defendants dispute the Olszewskis' contention that the Court failed to view their first amended complaint in "their preferred way." *Id.* at 3-4. They reject the Olszewskis' assertion that the Court should have considered a substantive due process claim that the Olszewskis failed to plead or adequately present. *Id.* at 4. The Defendants dismiss the Olszewskis' complaints about the Court's failure to address qualified immunity, noting that because the Court concluded that they had failed to properly allege a constitutional violation, qualified immunity did not apply. *Id.* at 5-6. Finally, the Defendants say that Ms. Olszewski cannot "contest the Court's observation that there are no factual allegations in the amended complaint that support [her] claim." *Id.* at 6.

Regarding the Olszewskis' request for leave to file an amended complaint, the Defendants proffer that Rule 15(a) "simply does not apply following entry of a judgment that has not been vacated under some other rule or on appeal." *Id.* at 7 (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006), *Pushor v. Mt. Washington Observatory, Inc.*, No. 2:17-cv-354-NT, 2018 WL 3478892, at *2 (D. Me.

11

July 19, 2018) and *Quirion v. United States*, No. 1:05-cv-00006-JAW, 2012 WL 5903818, at *2 (D. Me. Nov. 26, 2012)).

### C.    The Plaintiffs' Reply

In their reply, the Olszewskis reiterate their view that the Court should grant the motion to amend the complaint. *Pls.' Reply* at 1. They argue that justice requires the Court to allow the amendment and maintain there would be no prejudice to the Defendants. *Id.*

Next, the Olszewskis press their contention that the Court should reconsider its order of dismissal to prevent a "manifest injustice" and pursuance of the "interests of justice." *Id.* at 2. They argue that the order of dismissal "does not square with the law governing decision of a Rule 12(b)(6) Motion." *Id.* They again point out that the Court used the language, "[e]ven taking Mr. Olszewski at his word," which they reiterate reveals a "[b]egrudging concession" about the Plaintiff's averments, the "opposite of what the law demands." *Id.* They argue that if the Court had taken Mr. Olszewski at his word, it would have "accepted Plaintiffs' averments that Hutchins, from March 19, 2022 forward made false public posts and statements, . . . filed false and perjurious complaints, . . . culminating in provocation and threats to break him down and blow apart *a person he know was, and targeted because he was, mentally disabled.*" *Id.* at 3 (emphasis in original). The Olszewskis also criticize the Court's description of Mr. Hutchins's threats as an "unfortunate remark," thereby substituting its own judgment for the facts. *Id.*

Regarding causation, the Olszewskis distinguish *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012), a case cited by the Defendants, stressing that "where there is a choice between a reasonable inference favorable to Plaintiffs and an inference that is unfavorable the Court must draw the favorable inference." *Pls.' Reply* at 4.

Turning to municipal immunity, the Olszewskis say that the Defendants' argument contradicts itself because they assert that it was not necessary for the Court to decide municipal immunity, but that municipal immunity provides an affirmative defense to their claims. *Id.* at 5-6.

Finally, the Olszewskis maintain that the Court erred in dismissing Ms. Olszewski's loss of consortium claim. *Id.* at 6.

## III.    LEGAL STANDARDS

### A.    Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides:

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.

Fed. R. Civ. P. 59(e). "[A] motion 'asking the court to modify its earlier disposition of the case because of an allegedly erroneous legal result is brought under Federal Rule of Civil Procedure 59(e).'" *United States v. $23,000 in United States Currency*, 356 F.3d 157, 165 n.9 (1st Cir. 2004). Rule 59(e) "includes motions for reconsideration." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2012 ed.). "There are four basic grounds upon which a Rule

59(e) motion may be granted." *Id.* They are: (1) the correction of a manifest error of law or fact upon which the judgment is based, (2) newly discovered or previously unavailable evidence, (3) the prevention of a manifest injustice, and (4) an intervening change in controlling law. *Id.* As the Court reads the Plaintiffs' motion, it rests primarily on manifest error of law or fact and prevention of manifest injustice grounds. *Pls.' Mot.* at 1-17.

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Salmon v. Lang*, 57 F.4th 296, 323 (1st Cir. 2022) (quotation omitted); *accord Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) ("Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected"). "To prevail on such a motion, 'a party normally must demonstrate either that new and important evidence, previously unavailable, has surfaced or that the original judgment was premised on a manifest error of law or fact.'" *Caribbean Mgmt. Grp., Inc. v. Erikon LLC*, 966 F.3d 35, 44-45 (1st Cir. 2020) (quoting *Ira Green, Inc. v. Mil. Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014)).

## B.    Post-Judgment Motions to Amend Complaints

In their motion for reconsideration, the Olszewskis ask the Court for leave to amend their complaint. With their motion for reconsideration, the Olszewskis filed a motion to amend their complaint. "[A] district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set

14

aside or vacated pursuant to Federal Rule of Civil Procedure 59 or 60." *Guilfoile v. Shields*, 913 F.3d 178, 195 n.17 (1st Cir. 2019) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998)). If the Olszewskis had filed a standalone motion to amend without filing a motion for reconsideration, the motion to amend would have been procedurally defective. *Willis v. Vericel Corp.*, No. 23-cv-10830-NMG, 2024 U.S. Dist. LEXIS 64195, at *1-2 (D. Mass. Apr. 8, 2024) (describing a standalone post-judgment motion to amend as "procedurally defective").

The Court views the Olszewskis' motion to amend complaint in two ways. First, it has considered the motion to amend as intertwined with the Olszewskis' arguments for reconsideration, and next, it has assumed that the Olszewskis are filing the motion to amend complaint on the assumption that the Court will grant their motion for reconsideration. At the same time, if the Court denied the motion for reconsideration, the motion to amend would fall of its own weight.

## IV.    DISCUSSION

### A.    The Motion for Reconsideration

#### 1.    Failure to Accept the Plaintiffs' Allegations and Reasonable Inferences as True

In their motion and reply, the Plaintiffs repeatedly contend that the Court failed to obey the admonition of Rule 12(b)(6) because it failed to accept the Plaintiffs' allegations as true and draw reasonable inferences from them. Simply put, the Plaintiffs are wrong. First, in its opinion, the Court correctly quoted the first of the "two-step analysis" the First Circuit requires of a district court to rule on a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6), including the obligation to accept the complaint's factual allegations:

> This is a "two-step analysis. *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *García-Catalán* [*v. United States*], 734 F.3d [100,] 103 [1st Cir. 2013]) (quoting *Morales-Cruz* [*v. Univ. of P.R.*], 767 F.3d [220,] 224 [(1st Cir. 2012)].

*Order* at 56. Thus, to credit the Plaintiffs' argument, the Court would have to conclude that despite knowing the correct standard for ruling on Rule 12(b)(6) motions, the Court either deliberately or unconsciously applied a different standard, refusing to accept the Plaintiffs' allegations as true. The Court did no such thing.

The Plaintiffs' chief issue on this point is the Court's use of the phrase, "[e]ven taking Mr. Olszewski at his word," when discussing Mr. Olszewski's First Amendment retaliation claim. *Id.* at 63. Here, as the Court noted in its order, the Court was discussing whether Mr. Olszewski's charge that he raised issues of municipal concern and "in response to this protected activity," Selectman Hutchins "retaliated in various ways, including by threatening to have Mr. Olszewski jailed, refusing to give Mr. Olszewski certain emails he requested as part of his MHRC complaint, sending him aggressive e-mails and messages through online platforms, obtaining a protection from harassment order, and imposing a 'no recording' policy at the Town Office." *Id.* at 59. Thus, as the Court wrote, it construed Mr. Olszewski's allegation as a charge that "Defendants retaliated against [him] for exercising his First Amendment rights, through various actions intended to deter, stop, and chill the Plaintiff's speech." *Id.* at 58-59.

16

In the order, the Court quoted First Circuit caselaw that allows claims of retaliation for the exercise of First Amendment rights under 42 U.S.C. § 1983. *Id.* at 59. The Court then discussed the requirement that a plaintiff in a such a retaliation claim must establish that his speech was protected and that there was "a causal connection between the alleged protected speech and the allegedly retaliatory response." *Id.* at 60 (quoting *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013)). The Court observed that to prove causation between the speech and the retaliation, a plaintiff must "show[] that the plaintiff's conduct was a 'substantial' or 'motivating' factor in bringing about the allegedly retaliatory action." *Id.* (quoting *Goldstein*, 719 F.3d at 30). The Court further quoted the United States Supreme Court's interpretation in *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) and *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006) that held that the retaliatory animus prong must be the "but-for" cause of the plaintiff's injuries. *Id.*

Applying these principles to the facts alleged in the amended complaint, the Court wrote first that it was assuming but not deciding that Mr. Olszewski's raising of local grievances was a protected activity under the First Amendment. *Id.* at 61. The Olszewskis criticize this language, saying that the Court "appears to question" whether Mr. Olszewski's grievances were protected activity. *Pls.' Mot.* at 2-3. But the Court plainly meant exactly the opposite. In their motion to dismiss, the Defendants seem to acknowledge that some of Mr. Olszewski's comments were about local matters, but they also maintained that "the law does not require that a member of the public have unlimited access to Town government, or any particular person in

17

Town government." *Defs.' Mot. to Dismiss* at 8. Given the potential issue as to the extent to which Mr. Olszewski's comments were protected speech, the Court was merely clarifying that it was not reaching that issue and instead, consistent with its Rule 12(b)(6) obligations and Mr. Olszewski's allegations, was treating Mr. Olszewski's comments as protected speech. The sentence the Plaintiffs now protest was therefore in favor of the Plaintiffs, not in derogation of their claims.

Next, the Plaintiffs focus on the "[e]ven taking Mr. Olszewski at his word" phrase in the order. Again, context matters. In the amended complaint, Mr. Olszewski alleged that Mr. Hutchins had claimed that Mr. Olszewski had sent him over 400 threatening and aggressive emails and at the same time conceded that Mr. Hutchins had received a protection from harassment order against him. *Compare Am. Compl.* ¶ 18, *with* ¶¶ 45-46. Mr. Olszewski claimed that Mr. Hutchins's allegation of four hundred emails was false. *Am. Comp.* ¶ 18. The allegation that Mr. Hutchins lied when he claimed that Mr. Olszewski sent him hundreds of threatening and aggressive emails was potentially contradicted by the fact that a judge had issued a protective order in favor of Mr. Hutchins. Here, the Court was merely assuring Mr. Olszewski that, even though some allegations in the amended complaint could be viewed as equivocal or contradictory, the Court was taking him at his word that Mr. Hutchins had lied about receiving hundreds of emails from him, just as Rule 12(b)(6) requires.

In sum, on this issue, the Court concludes that the Olszewskis are wrong.  The Court was aware of its obligation to accept the allegations in their amended complaint as true and it strictly adhered to this fundamental legal requirement.

### 2.    Qualified Immunity

In its order, the Court determined that the Olszewskis failed to state a federal cause of action against the town of Dover-Foxcroft or Barry Hutchins without regard to whether the principles of qualified immunity applied to them.  As the Court concluded that it was not necessary to reach the issue of qualified immunity to decide the motion, the Court did not reach qualified immunity.  The Court is unclear why it erred in failing to discuss a non-dispositive issue and render an advisory and unnecessary opinion.

### 3.    Substantive Due Process

In the Olszewskis' motion, they argue that the Court should have addressed their claim that the Defendants violated their substantive due process rights.  *Pls.' Mot.* at 4-7.  Conceding that they did not use the "magical word," the Olszewskis characterize the failure of the Court to rule on their substantive due process claim as an elevation of form over substance.  *Id.* at 4.  They also object to the Court's interpretation of their assertion of Fourth and Fifth Amendment claims in their responsive memorandum as erroneously restricting their well pled averments and impermissibly restricting the scope of § 1983.  *Id.* at 7.

Here, neither the Plaintiffs' eighteen-page complaint nor their twenty-two-page amended complaint contains the phrase, substantive due process, *Compl.* at 1-18; *Am. Compl.* at 1-22, and the Defendants' original motion to dismiss did not

mention substantive due process. *Defs.' Mot. to Dismiss* at 1-20. In a footnote in their motion to dismiss, the Defendants noted that the allegations in the amended complaint "refer specifically to a violation of Mr. Olszewski's rights to freedom of expression and to petition" but observed that "the reference to his Fourteenth Amendment rights is simply because the Fourteenth Amendment adopted and applied the First Amendment to the states." *Id.* at 7 n.3.

In the Olszewskis' response, however, they confirmed that they alleged First Amendment violations in their amended complaint but also asserted that they alleged "First, Four, Fifth, and Fourteenth Amendments, the Maine Constitution, and the Maine Civil Rights Act, and the Maine Hu[m]an Rights Act. Plaintiff does not just rely on the First Amendment." *Pls.' Opp'n to Mot. to Dismiss* at 7. The Olszewskis described their substantive due process claim as based on "acts as horrendous as the coercive threats of Hutchins." *Id.* They say that Mr. Hutchins's actions "should shock and does shock the conscience and offend any 'sense of justice.'" *Id.* at 8 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435-36 (1957)).

In their reply, the Defendants objected to the inclusion of theories of liability not alleged in the amended complaint. *Defs.' Mot. to Dismiss Reply* at 1. They said that the amended complaint makes only "conclusory references to the Fourteenth Amendment in relation to the Plaintiff's speech and petitioning activity." *Id.* at 2. Quoting the standards for a substantive due process claim as set forth in *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008), they maintained that the allegations in

20

the first amended complaint do not state a substantive due process violation. *Defs.'*
*Mot. to Dismiss Reply* at 2.

"It is blackletter law that a plaintiff is the 'master of the claim' and may make
strategic decisions about its framing and purpose." *United States v. Newman*, No.
2:22-cv-00373-JAW, 2025 U.S. Dist. LEXIS 131866, at *15 (D. Me. July 11, 2025);
*Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*, 734 F.3d 28, 36 (1st Cir. 2013)
("The plaintiff is the 'master of the claim'"). In other words, "it is the party suing, not
the party sued, who enjoys the right to frame the claims asserted in a complaint."
*Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011). Here, both the Court and the
Defendants relied on what the Olszewskis alleged as theories for recovery in their
amended complaint, not the theories they posited in their memorandum to deflect a
pending motion to dismiss.

The Olszewskis have not explained why in evaluating the motion to dismiss
the complaint, the Court should have accepted the newly propounded theories in their
legal memorandum not found in their amended complaint. Allegations in a complaint
are meant "to 'give the defendant fair notice of what the . . . claim is and the grounds
on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting
*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, it has long been the rule that
assertions in a lawyer's memorandum are not the same as allegations in a complaint.
*Ryan v. Newark Grp., Inc.*, 2025 U.S. Dist. LEXIS 267720 (D. Mass. Dec. 30. 2025);
*Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) ("allegations in a lawyer's brief
or legal memorandum are insufficient, even under the relatively relaxed prima

facie standard, to establish jurisdictional facts"); *see Gulf Oil Ltd. P'Ship v. Petro. Mktg. Grp.*, 308 F. Supp. 3d 453, 462 n.8 (D. Mass. 2018) (disregarding plaintiff's assertions made in its brief when no similar allegations appeared in the complaint); *Folan v. Santander Consumer USA Inc.*, No. 1:25-cv-11341-JEK, 2025 WL 1707231, at *3 n.8 (D. Mass June 18, 2025) (declining to consider assertions raised only in plaintiff's reply to defendant's opposition brief and not alleged in the complaint); *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 366 n.5 (D.P.R. 2015) ("[T]he plaintiffs' oppositions introduce a plethora of new allegations and legal theories.  But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss").

### 4.    Amended Complaint

Even assuming the Court could have intuited a substantive due process claim from the sparse allegations in the Olszewskis' response, the Court is not convinced that Mr. Hutchins' aggressive and vulgar emails are sufficient to establish their new claim of a violation of substantive due process.  In their reply to the Olszewskis' opposition to their motion to dismiss, the Defendants quote the First Circuit's formulation of a substantive due process claim in *Clark v. Boscher*: the plaintiffs must establish "that they suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." *Defs.' Mot. to Dismiss Reply* at 2 (quoting *Clark*, 514 F.3d at 102).

The Olszewskis correctly cite the recent First Circuit case of *Wadsworth v. Nygren*, 129 F.4th 38, 52 n.8 (1st Cir. 2025), for the proposition that non-physical conduct could shock the conscience.  But the First Circuit also noted in *Wadsworth*

that it has "yet to encounter non-physical conduct that rises to that level." *Id.* The *Wadsworth* Court cited *Souza v. Pina*, 53 F.3d 423 (1st Cir. 1995), where a district attorney was alleged to have driven a citizen to suicide by publicly and repeatedly accusing him of being the serial murderer of local women, and *Pittsley v. Warish*, 927 F.2d 3 (1st Cir. 1991), where police officers told little children that they would never see their mother's live-in partner again and refused to allow them to hug and kiss him goodbye when they arrested him. In neither case did the First Circuit find that the conduct shocked the conscience. Like the First Circuit in *Wadsworth*, *Souza*, and *Pittsley*, the Court is skeptical that Mr. Hutchins's statements to Mr. Olszewski meet the high standard the law demands for a non-physical substantive due process claim.

### 5.    Temporal Proximity and the Harassment Order

In their motion, the Olszewskis point to the temporal proximity among Mr. Olszewski's protected speech, Mr. Hutchins's nasty emails, and the town's actions in barring his presence at the town office as prima facie evidence that the Defendants' actions were in retaliation for his protected speech. *Pls.' Mot.* at 12-15. Although the amended complaint is not a model of clarity, the Plaintiffs allege that Mr. Olszewski began to bring matters of public concern, such as impassable road conditions, to the attention of the town selectmen in January 2022. *Am. Compl.* ¶ 13. On March 19, 2022, Mr. Hutchins responded by asserting that Mr. Olszewski was "unstable and clearly showing himself as a threat and a danger and threat to the community" and continued to badger Mr. Olszewski. *Id.* ¶ 15. At the same time, Mr. Hutchins asked Mr. Olszewski for reports confirming his allegations about poor road material, and Mr. Olszewski provided the reports to Mr. Hutchins. *Id.* ¶ 17.

Matters escalated in April 2022 with Mr. Olszewski charging that the town manager had paid Elwood Edgerly, the Chair of the Board of Selectmen, over $200,000 in grant money and that the town had spent in excess of $10,000 of taxpayer money for cakes, pastries, and party supplies for personal celebrations.  *Id.* ¶ 23. Mr. Olszewski also made FOAA requests for town records during this time, which the town and Mr. Hutchins failed to respond to.  *Id.* ¶¶ 19, 21.

During this period, Mr. Hutchins became more aggressive in his responses, falsely claiming at an April 11, 2022 town meeting that Mr. Olszewski had sent him over 400 "threatening and aggressive emails," *id.* ¶ 18, threatening in a vulgar email dated April 13, 2022 to pursue criminal charges against Mr. Olszewski, *id.* ¶ 24, and attempting to get the Chief of Police to arrest Mr. Olszewski for sending the FOAA request.  *Id.* ¶ 25.  At the May 9, 2022 selectmen meeting, Mr. Olszewski publicly demanded Mr. Hutchins's resignation, and Mr. Hutchins moved aggressively toward him at the meeting and attempted to provoke a physical confrontation in the parking lot.  *Id.* ¶¶ 28-29.  In May, Mr. Olszewski accused Mr. Hutchins of violating his First Amendment rights and Mr. Hutchins responded that he had his own First Amendment rights.  *Id.* ¶¶ 30-31.  Then on June 10, 2022, Mr. Hutchins wrote an extremely aggressive email to Mr. Olszewski, saying that he likes to get into the minds of weak people and "break them down little by little at a time until I am ready to completely blow them apart."  *Id.* ¶ 32.

Things came to a head when Mr. Olszewski and Mr. Hutchins filed competing protection from harassment petitions against each other in the Maine District Court

in June 2022. Mr. Olszewski says that he filed his petition on June 13, 2022 and that Mr. Hutchins filed his two days before the protection from abuse hearing. *Id.* ¶¶ 39, 41. The amended complaint says that Judge Faircloth of the Maine District Court presided over the June 30, 2022 hearing. *Id.* ¶¶ 43-45. The amended complaint described the result of the dueling protection from harassment petitions:

> At the request of Hutchins, on behalf of himself and Dover-Foxcroft, the court imposed a no contact provision, which legally barred Plaintiff from attending meetings of the Select Board or going to the Town Office at all during the time period of the harassment order. While Plaintiff was not allowed in the Town Office because of the order, The Town made no provision for Plaintiff to conduct Town office business, vote in elections, or attend Town Select Board Meetings. The omission on the part of The Town effectively barred Plaintiff from all town business including the right to vote.

*Id.* ¶ 45. In response to Judge Faircloth's apparent ruling in favor of Mr. Hutchins and the town, the Olszewskis alleged that Judge Faircloth had a conflict of interest and should have recused herself from the proceeding because she had a professional relationship with Attorney Benjamin Cabot, who was representing Mr. Hutchins. *Id.* ¶ 43. The Olszewskis also alleged that Judge Faircloth's no contact order was the direct and proximate result of Mr. Hutchins' "false testimony and allegations that Defendant had been ordered or noticed not to harass or have contact with Hutchins." *Id.* ¶ 46. Mr. Olszewski alleged that in June 2022, he "retreated from involvement and ceased his vigorous attempts to be involved in Town affairs and attending of Select Board meetings." *Id.* ¶ 55. On January 19, 2023, Judge Faircloth mooted all motions going forward, effectively concluding the matter. *Id.* ¶ 44.

25

Before Judge Faircloth's January 19, 2023 dismissal, the next alleged event in the amended complaint took place on December 13, 2022, when Mr. Olszewski went to the town office and complained that Judge Faircloth's no contact order prevented him from coming to the town office and attending selectmen meetings. *Id.* ¶ 47.[6] Mr. Olszewski wished to attend an upcoming selectmen meeting because he wished to voice his opinions about a proposal to forbid recording selectmen meetings that was on the agenda at the next meeting. *Id.* ¶ 47. Mr. Olszewski's short visit to the Town Office in December 2022 precipitated a criminal investigation of Mr. Olszewski. *Id.* ¶ 52.

After the January lifting of the no contact order and in retaliation for Mr. Olszewski's filing a Maine Human Rights Act complaint against Mr. Hutchins, Mr. Olszewski alleged that in March 2023, the Chief of Police connived with Mr. Hutchins to renew criminal charges against Mr. Olszewski. *Id.* ¶ 51-52. But it is unclear from the complaint whether any new criminal charges were actually instituted against Mr. Olszewski. Next in September 2023, again after the no contact order had been lifted, the Board of Selectmen imposed a five-minute speaking limit at a public meeting when Mr. Olszewski attempted to speak. *Id.* ¶ 56.

## 6. The July 29, 2025 Order and the Allegations in the Amended Complaint

In ruling on its July 29, 2025 order of dismissal, the Court was faced with a somewhat inchoate and sprawling set of allegations involving a large cast of

---

[6]     Mr. Olszewski also says that on December 13, 2022, he was falsely labeled a pedophile by a man named Christopher Johnson, and Mr. Olszewski says that Mr. Hutchins was the source of Mr. Johnson's allegations. *Am. Compl.* ¶ 47.

individuals from the town of Dover-Foxcroft.  These included all the members of the Board of Selectmen, the Chief of Police, the Town Manager, and several Dover-Foxcroft police officers.  *Id.* ¶ 4.  But the heart of the complaint was the bad blood between Mr. Olszewski and Mr. Hutchins.

Here, the amended complaint amply reflected Mr. Hutchins' exceedingly rude and nasty emails to Mr. Olszewski, including one that Mr. Olszewski interpreted as a threat of physical violence.  There was certainly evidence of excessive animosity between Mr. Hutchins and Mr. Olszewski, and Mr. Hutchins' language is obviously deplorable as an elected public official.  But the Court focused on what the complaint revealed as to why Mr. Hutchins acted so egregiously against Mr. Olszewski.  Here, the amended complaint alleged that Mr. Olszewski and Mr. Hutchins faced off in Maine State District Court before Judge Faircloth on June 30, 2022, and the amended complaint alleges that the result of the evidentiary hearing was that Judge Faircloth issued a no contact order against Mr. Olszewski.  The amended complaint failed to mention that Judge Faircloth issued a similar no contact order against Mr. Hutchins.

From the Court's perspective, there were two consequences from the Faircloth order.  The first is that it broke the causation link between Mr. Olszewski's First Amendment claims and Mr. Hutchins' nasty emails.  Having determined that Mr. Olszewski's actions against Mr. Hutchins merited a no contact order and without evidence that Mr. Hutchins' actions against Mr. Olszewski did the same, the Court had little choice but to conclude that there was no probative evidence that Mr. Hutchins had retaliated against Mr. Olszewski for his exercise of First Amendment

27

rights. To the contrary, from the allegations in the amended complaint, which the Court accepted as true, it was Mr. Olszewski alone who had merited a no contact order following a full evidentiary hearing.

The second effect of the no contact order was that what followed from late June 2022 to at least January 2023 and perhaps September 2023 was the result of the no contact order, not the result of Mr. Hutchins' First Amendment retaliation. For the period following January 2023 or September 2023, when the no contact order was lifted, the allegation that the Chief of Police initiated a criminal investigation of Mr. Olszewski did not on its face state a complaint against the Board of Selectmen or Mr. Hutchins, since there is no allegation that they controlled the law enforcement function. More significantly, as the Court understands the allegation against the Police Chief, the reason for the investigation was Mr. Olszewski's potential violation of the no contact order, not his criticisms of the town. The final allegation that the Board illegally limited presentations to five minutes at a meeting in September 2023 reflects the Board's control of a public meeting, not limited to Mr. Olszewski but applicable to the general public, and the claim of a First Amendment violation from a time limit on all public presentations, including Mr. Olszewski, is unpersuasive.

### 7.    Town Office as Public Forum

The Olszewskis complain that the town considered his presence at the town office on December 13, 2022 and the town's adoption of a non-recording policy as violations of his First Amendment rights. They repeat their position in their motion for reconsideration. The Court reviewed its discussion of this issue in its dismissal order, *Order* at 63, including its footnote 12, and has nothing to add. *See McBrearity*

*v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79, 90-93 (D. Me. 2022) (discussing restrictions imposed by a school board); *Carlow v. Mruk*, 425 F. Supp. 2d 225, 247-48 (D.R.I. 2006) (discussing a prohibition against videotaping the meeting of a township planning commission).

### 8.    Loss of Consortium

Ms. Olszewski asks the Court to reconsider its dismissal of her loss of consortium claim.  The Court declines to change the dismissal because there is a better rational for dismissal of her claim than her failure to specify her loss.  Although a loss of consortium claim is independent under Maine law and may be brought and settled separately, it is also "derivative because it arises from the same act that gave rise to the underlying claim and is therefore subject to the same rules and limitations." *Steele v. Botticello*. 2011 ME 72, ¶ 17, 21 A.3d 1023.  Once the Court determined that Mr. Olszewski's federal claims failed, Ms. Olszewski's loss of consortium claim also failed for her federal claims.  *Grant v. Foster Wheeler*, 2016 ME 85, ¶ 14 n.5, 140 A.3d 1242.

### B.    The Motion to Amend Complaint

Embedding within their motion for reconsideration, the Olszewskis reveal for the first time that instead of issuing a no contact order against them only, Judge Faircloth issued a no contact order against Mr. Hutchins and the town as well:

> Plaintiff, granted petition to amend, would show the Order was against the Town and Hutchins also.

29

*Pl.'s Mot.* at 14 (citing [*Second*] *Am. Compl.* ¶ 44, *Dover Foxcroft DVDC PA* 22-0035, *DVDC PA* 22-0039).[7]  The new allegation is set forth in paragraph 43 of the Plaintiffs' second amended complaint:

> On June 13, 2022, Plaintiff then petitioned the Maine District Court in Dover-Foxcroft alleging that Hutchins, a Selectman for the Town, engaged in a continuing course of conduct to harass and injure Plaintiff and to retaliate against him for the exercise of his First Amendment and civil rights with particular expressed intent to break Plaintiff down due to his disability.  Plaintiff was granted an order prohibiting Defendant Hutchins from harassing him.  Dover-Foxcroft Maine District Court, DVDC 22-0035.

*Second Am. Compl.* ¶ 43.

The Court agrees that it would have been helpful background if the Olszewskis had revealed in their original or amended complaint that Judge Faircloth had issued no contact orders against both Mr. Olszewski and Mr. Hutchins.  From their original allegations, it appeared that having presided over an evidentiary hearing concerning the dispute between Mr. Olszewski and Mr. Hutchins, Judge Faircloth had ruled in favor of Mr. Hutchins and against Mr. Olszewski and issued a no contact order solely against Mr. Olszewski.  *Am. Compl.* ¶¶ 45-46.  The Court's interpretation was buttressed by the Olszewskis' claim that Judge Faircloth should have recused herself because of her professional relationship with Attorney Benjamin Cabot, an allegation consistent with Mr. Olszewski's dissatisfaction with Judge Faircloth's ruling.  *Am. Compl.* ¶ 43.

---

[7]     The Olszewskis cite the wrong paragraph of the second amended complaint, but the Court found the relevant allegation in the proposed amended complaint not at paragraph 44, but at paragraph 43.

If the Olszewskis had correctly presented the Faircloth order in their amended complaint, the Court would not have concluded that Judge Faircloth had ruled in favor of Mr. Hutchins and against Mr. Olszewski in her June 2022 order, and it would not have relied on this fact in making its decision on the motion to dismiss. Although the ruling would have been closer, it would not have changed the result. The Court is still not convinced that it erred when it dismissed their lawsuit.

The first problem is that after an evidentiary hearing in June 2022, Judge Faircloth concluded that both Mr. Olszewski and Mr. Hutchins merited mutual no contact orders. What the Court still faces is a set of allegations that Mr. Olszewski, as a concerned citizen of Dover-Foxcroft, made a series of inquiries about the conduct of town affairs and was met with an extraordinary barrage of vulgar invective from one of the members of the Board of Selectmen. While the Court has expressed its emphatic disapproval of Mr. Hutchins's language, the Court is not convinced that rude, even vulgar language from an elected leader to a citizen provides the basis for a § 1983 claim, particularly after a state judge, upon hearing the countervailing allegations, effectively ruled both were responsible for their separate roles in the dispute.[8]

The second problem is that, as the Court understands the Olszewskis' allegations, the gravamen of their complaint is that Mr. Hutchins and the town took actions against Mr. Olszewski in retaliation for his exercise of his First Amendment

---

[8] The Court expressly did not rule on the adequacy of the Olszewskis' state claims. *Order* at 67-69. The Olszewskis are free, if they wish to do so, to file a complaint in state court with the same factual allegations unconstrained by the restrictions federal law imposes on § 1983 claims.

rights.  Apart from Mr. Hutchins's aggressive emails, the amended complaint claims that the town retaliated against Mr. Olszewski by (1) initiating a no recording policy in December 2022, *Am. Compl.* ¶ 47, (2) barring him from town business after the no contact order, *id.* ¶ 47, (3) beginning a Chief of Police investigation against him in March 2023, *id.* ¶ 51, and (4) attempting to silence him at a Board of Selectmen meeting on October 23, 2023 by imposing a five-minute speaking rule.  *Id.* ¶ 56.

But the Court has concluded that the imposition of generally applicable no recording and five-minute speaking limitations policies do not amount to a violation of First Amendment rights, and furthermore, based on the allegations in the amended complaint, the no contact order was the cause of both Mr. Olszewski's lack of access to the town office and the Chief's criminal investigation of him for violating the no contact order.  The bottom line is that the allegations in the second amended complaint, if allowed, would not change the Court's ruling.  Thus, although the Court considered the new allegations in the second amended complaint in ruling on the motion for reconsideration, the Court concluded that the Olszewskis failed to demonstrate that the Court should grant relief under their Federal Rule of Civil Procedure Rule 59(e) motion, both with and without the allegations in the proposed second amended complaint.  Once the Court concluded that the Rule 59(e) motion should not be granted, the Plaintiffs' motion to amend their complaint necessarily failed.

## V.    CONCLUSION

The Court DISMISSES without prejudice Robert Olszewski, Jr. and Julie Olszewski's Motion to Reconsider Order and Judgment Dated July 29, 2025 and for Leave to File Amended Complaint (ECF No. 20).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026